UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEOPHALIS (BINKY) WILSON, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | No. 2:21-cv-02057 |
| CITY OF PHILADELPHIA; ET AL., | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

## [PROPOSED] ORDER

AND NOW, this ____day of _____, 2022, upon consideration of Defendants City of Philadelphia, Frank Margerum, Richard Harris, and Kevin Hollinshead's Partial Motion to Dismiss, and any response thereto, it is hereby ORDERED that the Partial Motion is GRANTED. Plaintiff's claims against retired Detective Frank Margerum and retired Officer Kevin Hollinshead are DISMISSED.

Plaintiff's claims against retired Detective Richard Harris are disposed of as follows:

- Count I, Fourteenth Amendment malicious prosecution, is DISMISSED;

- Count II, withholding of evidence, is DISMISSED;

- Count II, failing to conduct a constitutionally adequate investigation, is DISMISSED;

- Count III, withholding of evidence, is DISMISSED;

-  Count IV, failure to intervene, is DISMISSED; and

- Count IX, intentional or reckless infliction of emotional distress, is time barred and DISMISSED.

Plaintiff's claims against the City of Philadelphia are disposed of as follows:

- Counts I, II, and III are DISMISSED;

- Count VII is DISMISSED to the extent that the claims against the City of Philadelphia arise out of the claims for which qualified immunity attaches (i.e., Count I, Malicious Prosecution in violation of the Fourteenth Amendment; Count II: Withholding of Evidence and Failing to Conduct a Constitutionally Adequate Investigation; Count III: Withholding of Evidence; Count IV: Unconstitutional Failure to Intervene); and

- Counts VIII and IX are DISMISSED to the extent they are brought against the City of Philadelphia.


_____

**JUDGE JOHN MILTON YOUNGE**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEOPHALIS (BINKY) WILSON | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | No. 2:21-cv-02057 |
| CITY OF PHILADELPHIA; ET AL., | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

## DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, City of Philadelphia, Frank Margerum, Richard Harris, and Kevin Hollinshead file this Partial Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6). In support of this motion, Defendants incorporate the attached memorandum of law. The Court should grant the motion for the reasons more fully explained in the accompanying memorandum.

WHEREFORE, Moving Defendants respectfully request that this Court grant the Motion and dismiss, in whole as to Defendants Retired Detective Frank Margerum and Retired Officer Kevin Hollinshead, and in part as to Defendant Retired Detective Richard Harris and the City of Philadelphia, and dismiss the portions of Plaintiff's Complaint with prejudice under Rule 12(b)(6) as detailed in the incorporated memorandum of law.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
DIANA CORTES, CITY SOLICITOR

Dated: February 7, 2022

/s/ *Danielle E. Walsh*
DANIELLE E. WALSH (PA ID No. 312438)
Deputy City Solicitor
Affirmative & Special Litigation
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 686-0464
*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEOPHALIS (BINKY) WILSON | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | No. 2:21-cv-02057 |
| CITY OF PHILADELPHIA; ET AL., | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT**

## I.  **INTRODUCTION**

Plaintiff Theophalis (Binky) Wilson has filed suit, contending that he served twenty-eight years in prison for three murders he did not commit, and alleging that the reason for his conviction was unconstitutional actions by law enforcement officers employed by the Philadelphia Police Department and prosecutors from the Philadelphia District Attorney's Office.  Plaintiff generally contends that PPD officers and detectives failed to pursue active leads, allowing the investigation into the three shooting deaths to go quiet until another individual, James White, gave allegedly false information implicating Plaintiff in the three homicides.  *See generally* Am. Compl., ECF No. 37.  By his nine-count Amended Complaint, Plaintiff seeks to hold all defendants liable for a myriad of federal and state law claims, as follows:

- Count I: Malicious Prosecution, in Violation of the Fourth and Fourteenth Amendments, against all Defendants
- Count II: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating Evidence, Withholding Material Exculpatory and Impeachment Evidence, and Deliberately Failing to Conduct a Constitutionally Adequate Investigation, in Violation of the Fourth and Fourteenth Amendments, against all Defendants
- Count III: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating and Coercing Evidence and Withholding Material Exculpatory and Impeachment Evidence in Violation of the Fourth and Fourteenth Amendments, against all Defendants
- Count IV: Unconstitutional Failure to Intervene, against all PPD Officers and Supervisors
- Count V: Civil Rights Conspiracy, against all PPD Officers and Supervisors
- Count VI: Supervisory Liability Claim, against all PPD Officers and Supervisors, and former District Attorney Abraham
- Count VII: *Monell* Claim, Unconstitutional Customs, Policies, and Practices, against City of Philadelphia
- Count VIII: Malicious Prosecution under Pennsylvania state law, against all Defendants
- Count IX: Intentional or Reckless Infliction of Emotional Distress under Pennsylvania state law, against all Defendants

Moving Defendants, former Detectives Frank Margerum and Richard Harris, former Officer Kevin Hollinshead (collectively, "Officer Defendants"), and the City of Philadelphia, now move to dismiss Plaintiff's claims, in whole or in part, as follows.

1

## II.    FACTUAL BACKGROUND[1]

Plaintiff's 330-paragraph Amended Complaint is distilled here to the limited, salient points for purposes of the instant motion.  By way of brief context, three individuals, Kevin Anderson, Gavin Anderson, and Otis Reynolds, were shot and killed within a two-mile radius of each other on or around September 25 and September 26, 1989.  Am. Compl., ECF No. 37, ¶ 3, 52-54, 69-70, 75-76.  During the initial investigation of these murders, officers determined that the victims were all likely associated with the Jamaican Shower Posse, a gang that was feuding over drug territory with another operation, the Junior Black Mafia.  *Id.* ¶¶ 3-5, 89-90, 92.  Notwithstanding the investigative steps taken and potential leads developed, no suspects were arrested for two years.  *See id.* ¶¶ 53-85, 121-40.  After that time, an informant named James White was allegedly coerced into implicating Plaintiff in these murders, including by providing Plaintiff's name and identifying him in a series of photographs.  *See id.* ¶¶ 142-167.  Plaintiff alleges that he was convicted of the three murders as a result of James White's identification, and that no other evidence connected him with the crimes.  *See id.* ¶¶ 4, 12, 141, 167.  Plaintiff contends that twenty-three individuals and/or entities are individually and collectively responsible for his alleged wrongful prosecution, conviction, and incarceration.  *See generally* Am. Compl.

With regard to former detective Frank Margerum, Plaintiff presents only two factual contentions.  Specifically, Plaintiff alleges that: (1) former Detective Margerum was requested by others to "check with federal authorities on possible warrants for Steplight and his associates, including possible indictments that could serve as the basis for an arrest or search warrant[,] *id.* ¶

---

[1] For purposes of this Motion to Dismiss only, as they must, Moving Defendants accept the facts as pleaded to be true.  *Cudjoe v. Dep't of Veterans' Affairs*, 426 F.3d 241, 244 (3d Cir. 2005); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Moving Defendants do not concede that all the allegations in the Amended Complaint are supported by a factual basis, following a reasonable investigation.

105; and (2) that former Detective Margerum was again contacted by others, and that he was requested to provide "background information on the names provided by Eglam" and "any known activities of the Victims in the New York area[,]" *id.* ¶ 130.  Beyond the implicit conclusion that former Detective Margerum provided information in response to these requests for specific information, there is no allegation of any other action he took with regard to the investigation into the three murders, or with regard to the ensuing homicide prosecution.  *See generally* Am. Compl.  Former Detective Margerum's actions, as alleged, took place in the first investigation, during which time Plaintiff was not identified as a suspect.  *See id.* ¶¶ 105, 130, 140.

Likewise, the factual allegations against former Officer Kevin Hollinshead are equally sparse.  Plaintiff contends that on September 26, 1989, after a 911 call came out for a person with a gun near 3102 West Berks Street in Philadelphia, "[o]fficers Hollinshead and Farrell responded" *id.* at ¶ 57, and the call was determined to be unfounded.  Some time later that evening, the same 911 caller reported persons stripping a car at 3401 West Berks Street and "[o]fficers Hollinshead and Farrell were dispatched."  *Id.* at ¶ 72.  Upon the officers' arrival, "the men stripping the car ran."  *Id.*  Plaintiff further contends that when former Officer Hollinshead was later interviewed he reported that "after the first two calls, he 'drove by' 32nd and Berks with Officer Farrell, but did not see Kevin Anderson's body lying there until hours later that morning."  *Id.* at ¶ 74.  Former Officer Hollinshead's actions, as alleged, much like former Detective Margerum's, took place in the first investigation, long before Plaintiff was identified as a suspect.  *See id.* ¶¶ 57, 72, 74, 140.  There are no further allegations of any actions taken by former Officer Hollinshead.

Moving defendants, former Detective Frank Margerum, former Detective Richard Harris, former Officer Kevin Hollinshead, and the City of Philadelphia, now move to dismiss the Amended Complaint, in whole or in part, for the reasons that follow.

III.   **LEGAL STANDARD**

To survive a motion to dismiss pursuant to 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff's claims are "plausible" if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The complaint must present factual allegations that are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a court must accept the allegations in the complaint and all reasonable inferences that can be drawn from them as true and view them in the light most favorable to the plaintiff for purposes of a Rule 12(b)(6) motion, it "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

IV.   **ARGUMENT**

At the outset, Plaintiff's claims against Defendants Frank Margerum and Kevin Hollinshead, fail for the simple reason that he fails to allege sufficient facts to establish the Defendants had personal involvement in any of Plaintiff's alleged harms.  Beyond that, a myriad of the claims that Plaintiff seeks to bring against the Officer Defendants are legally insufficient.  For the federal claims, the Officer Defendants are entitled to qualified immunity on many of them because the allegedly violated constitutional right was not clearly established at the time of the investigation and prosecution at issue in this case.  Notably, Plaintiff cannot pursue his malicious prosecution procedural due process, his withholding of evidence, his inadequate investigation, or his failure to intervene claims against the Officer Defendants because the constitutional rights animating those claims were not clearly established at the time of the investigation and conviction, and the defendant is thus entitled to qualified immunity.  For the

state claims, one of the two claims brought against the Officer Defendants, that of intentional infliction of emotional distress, is barred by the applicable statute of limitations.

Turning to Plaintiff's claims against the City, many of those fail for the same reasons. In particular, the City cannot be liable under a *Monell* theory for alleged violations of constitutional rights that were not clearly established at the time of the identified harm. And while the City is named as an inclusive defendant in counts I-III for alleged constitutional harms, the City cannot be liable for those claims other than through the *Monell* claim pled in count VII. To the extent Counts I-III are brought against the City, they should be dismissed. Turning to the state law claims, under the Pennsylvania Political Subdivision Tort Claims Act, the City cannot be held liable for the alleged intentional torts. Counts VIII and IX should thus be dismissed as a matter of law.

These myriad deficiencies, both factual and legal, are addressed *seriatim*.

### A.  *Plaintiff's Claims Against Retired Detective Frank Margerum and Retired Officer Kevin Hollinshead Fail Because Plaintiff Fails to Plead Facts Establishing Their Personal Involvement in Any of Plaintiff's Alleged Harms*

A "defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Stated another way, liability for a civil rights claim cannot be imputed vicariously. *Evancho v. Fisher*, 425 F.3d 347, 353 (3d Cir. 2005). Instead, an individual defendant must have personal involvement in the alleged constitutional violation. *Id.*

Here, Plaintiff seeks to hold retired Detective Margerum and retired Officer Hollinshead liable for federal, constitutional claims of malicious prosecution, fabrication of evidence, withholding of evidence (in Counts II and III), deliberately failing to conduct a constitutionally-

adequate investigation, failure to intervene, civil rights conspiracy, and supervisory liability, as well as state law claims of malicious prosecution and intentional infliction of emotional distress. But, as detailed above, only two (2) paragraphs of Plaintiff's three hundred and thirty (330) paragraph Amended Complaint contain any factual allegations regarding actions by retired Detective Margerum.  And those allegations are simply that Defendant Margerum collected and shared information that other individuals requested during the initial investigation.  Am. Compl. ¶¶ 105, 130.  Similarly, only three (3) paragraphs of Plaintiff's Amended Complaint contain any factual allegations regarding actions taken by retired Officer Hollinshead.  Plaintiff merely alleges that on September 26, 1989 Defendant Hollinshead responded to two 911 calls near the area that Kevin Anderson's body was eventually found, and that during that time he did not see Kevin Anderson's body.  Am. Compl. ¶¶ 57, 72, 74.

These actions by retired Detective Margerum and retired Officer Hollinshead were taken during the first investigation, and there is no contention that retired Defendants Margerum and Hollinshead were in any way involved with the investigation that ultimately led to the identification or prosecution of Plaintiff for murder.  *See id.* ¶¶ 140-269.  As the Amended Complaint contains no factual allegations connecting retired Detective Margerum or retired Officer Hollinshead with the investigation, arrest, and prosecution of Plaintiff, it fails to state a claim that Defendants Margerum or Hollinshead were personally involved in any, let alone all, of the claimed harms.

Moving Defendants specifically address the supervisory liability claim, by way of example.  Although civil right liability cannot be imputed vicariously, *Evancho*, 425 F.3d at 353, supervisory liability can be imposed where the plaintiff

> (1) identif[ies] the specific supervisory practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the

supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001); *see also McGee v. Thomas*, 16-5501, 2018 WL 347578 (E.D. Pa. Jan. 10, 2018) (dismissal of supervisory liability claims appropriate where supervising practice is unidentified and would-be supervisors' liability stated in only conclusory terms).  It is insufficient to simply argue the alleged constitutional violation would not have occurred if the supervisor had done more.  *Brown*, 269 F.3d at 216.  Instead, "the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference."  *Id.*  Consideration of the framework applicable to stating a claim for supervisory liability reveals that, much like the other claims brought against retired Detective Margerum and retired Officer Hollinshead, the paucity of factual allegations regarding his conduct cannot make out such a claim.

The same analysis applies to Plaintiff's state law intentional tort claims.  To be held liable for an intentional tort, an actor must have engaged in the alleged tortious conduct.  *See, e.g.*, *Gagliardi v. Lynn*, 446 Pa. 144, 148 n.2 (1971) (reciting elements of false imprisonment liability to include that "*an actor*" is the one who "*acts*" to bring about the required elements of the tort).  Here, no such allegation is made in the expansive Complaint.[2]

In sum, Plaintiff's sparse factual allegations regarding retired Detective Margerum and

---

[2] Moving Defendants further note that even had Plaintiff alleged any of the Officer Defendants' personal involvement in any intentional infliction of emotional distress, such a claim is barred by the applicable statute of limitations. In Pennsylvania, personal injury actions "founded on negligent, intentional, or otherwise tortious conduct," as well as actions for false imprisonment, false arrest, and malicious prosecution, are subject to a two-year statute of limitations.  42 Pa. Cons. Stat. Ann. § 5524(1), (7).  Defendant Margerum and Defendant Hollinshead's alleged involvement in the investigation into the three murders, ended two years before Plaintiff was even identified as a suspect, let alone arrested and prosecuted.  And Defendant Harris's alleged involvement ended with the investigation, prosecution, and conviction of the Plaintiff in 1993.  Plaintiff seeks to bring this claim long past the expiration of the statute of limitations, and it should be dismissed.

retired Officer Hollinshead fail to establish their personal involvement in any of the alleged

constitutional or tort harms.  For this reason, all claims against retired Detective Margerum and

retired Officer Hollinshead should be dismissed.

> ### B. Plaintiff's Fourteenth Amendment Malicious Prosecution, Withholding of Evidence (Counts II and III), Failure to Conduct a Constitutionally Adequate Investigation, and Failure to Intervene Claims Should be Dismissed Because the Officer Defendants are Entitled to Qualified Immunity

In addition to failing to allege facts establishing Defendant Margerum and Hollinshead's

personal involvement in any alleged constitutional harm, several of the claims that Plaintiff seeks

to pursue implicate rights that were not clearly established at the time of the investigation into

the murders of Kevin Anderson, Gavin Anderson, and Otis Reynolds, and Plaintiff's subsequent

prosecution for those murders.  Should the Court not dismiss retired Detective Margerum and

retired Officer Hollinshead for their lack of personal involvement, it should dismiss the

following counts for the alternate reason that the Officer Defendants are all entitled to qualified

immunity.

In Count I, Plaintiff alleges that he was subjected to malicious prosecution, in violation of

the Fourteenth Amendment.  Am. Compl., Count I.  As noted above, Count II of the Amended

Complaint is an omnibus claim for due process violations arising out of "fabricating evidence,

withholding material exculpatory and impeachment evidence, and deliberately failing to conduct

a constitutionally adequate investigation."  Am. Compl., Count II.  Though aggregated under the

rubric of alleged due process violations, each of these claims requires proof of different elements

and is subject to different analyses.  For purposes of qualified immunity, only the withholding of

evidence claim (a *Brady* violation) and the constitutionally inadequate investigation claim are at

issue.  Plaintiff's Count III appears to contain a duplicative claim for withholding of evidence,

and is subject to the same analysis. Am. Compl., Count III.  Plaintiff also, in Count IV, alleges

that the Philadelphia Police Department officers, detectives, and supervisors are liable for failing

to intervene to "to prevent his malicious prosecution and deprivation of liberty without due process of law[.]" *Id.* ¶ 296.  Because these rights were not clearly established during the time period at issue, the Officer Defendants are entitled to qualified immunity and dismissal of these claims.

Qualified immunity shields public officials from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotations omitted).  A right only qualifies as clearly established if its "contours . . . are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted) (emphasis added).  Moreover, a right must be clearly established "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  District courts must give serious consideration to qualified immunity arguments made in motions to dismiss, because qualified immunity provides defendants "an entitlement not to . . . face the . . . burdens of litigation." *See Rehiel*, 738 F.3d at 571.  "Accordingly, any claim of qualified immunity must be resolved at the earliest possible stage of the litigation." *Id.* (internal quotations omitted) (reversing district court's denial of a motion to dismiss based on qualified immunity after the district court stated that such immunity "may be clarified by discovery").

> 1. *A Malicious Prosecution Claim Sounding in the Fourteenth Amendment Is Still Not Clearly Established, Entitling the Officer Defendants to Qualified Immunity*

Defendants Margerum, Hollinshead, and Harris first addresses the malicious prosecution claim brought pursuant to the Fourteenth Amendment in Count I.  This Court has recognized several times that whether or not a procedural due process right against malicious prosecution exists remains an unsettled area of law. *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 380-82 (E.D. Pa. 2018).  Consistent with the requirement that entitlement to qualified immunity

is predicated upon the clear notice that conduct will violate a particular constitutional right, the lack of a clear statement of law by the Third Circuit Court of Appeals regarding whether a malicious prosecution claim can be grounded in the Fourteenth Amendment means that the Officer Defendants are entitled to qualified immunity on this claim, and it should be dismissed. *Id.*; *Lewis v. City of Philadelphia*, No. 19-2847, 2020 WL 1683451, at *5-8 (E.D. Pa. Apr. 6, 2020) (collecting cases within the Circuit that conclude there is no clearly established procedural due process right against malicious prosecution).

> 2. *The Attachment of* Brady *Disclosure Obligations to Police Officers Was Not Clearly Established Until 2005, Entitling the Officer Defendants to Qualified Immunity from this Claim*

Turning next to the "withholding of evidence" claim in Counts II and III, this claim arises out of *Brady* obligations that attach to police officers.  In considering the application of qualified immunity to a *Brady* claim arising out of a 1997 investigation, this Court found that "the state of the law regarding the *Brady* obligations of police officers" "was not so clearly established that every reasonable official would have understood that what he was doing violated that obligation[.]"  *Lewis*, 2020 WL 1683451, at *10.  Indeed, the attachment of *Brady* disclosure obligations to police officers, and the potential for liability as a result of failure to comply, was not clearly established until the Third Circuit Court of Appeals' decision in *Gibson v. Superintendent of New Jersey Dep't of Law & Public Safety – Division of Police*.  411 F.3d 427, 443 (3d Cir. 2005).  There, the Appellate Court expressly noted that "[e]ven in 2000, this Court was only able to *assume* that police officers 'have an affirmative duty to disclose exculpatory evidence to an accused if only by informing the prosecutor that the evidence exists.'"  *Id.* at 444 (*quoting Smith v. Holtz*, 210 F.3d 186, 197 n.14 (3d Cir. 2000)) (emphasis in original).

In *Gibson*, the Circuit considered how the Supreme Court's explication of the *Brady* obligations of prosecutors in *Kyles v. Whitley*, 514 U.S. 419 (1995) – by which the Supreme Court determined that prosecutors were responsible for the production of any *Brady* material

contained in police files – applied in the context of, or attached to, police officers.  *Gibson*, 411 F.3d at 442-44.  In *Kyles*, the Supreme Court instructed that "the individual *prosecutor* has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.  But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."  514 U.S. 419, 437-48 (1995).  The *Gibson* court relied on the prosecutor/police officer distinction when it noted that "the related duty of the police to disclose information to the prosecutor was not widely addressed until later [than the *Kyles* decision issued.]"  *Gibson*, 411 F.3d at 444.

Interpretation of the Third Circuit's express direction in *Gibson*, and the import of *Kyles*, has been somewhat varied across district courts in the Third Circuit.  Notably, in *Thomas v. City of Philadelphia*, the court considered an argument regarding the application of qualified immunity where the alleged *Brady* violation occurred in 1993.  290 F. Supp. 3d 371 (2018).  The court both cited *Gibson* for the proposition that police offices' *Brady* obligations became clearly established 1995, *id.* at 384, and treated *Gibson* as the first extension of the *Kyles* holding to police officers, *id.* at 387 ("the passage demonstrates that *Gibson* extended the holding of *Kyles*—from knowledge of evidence imputed to the *prosecutor*, to a "related" obligation on the part of the *officer*." (emphasis in original)).  Both *Pierre v. Treasury Department*, No. 18-3443, 2019 WL 2121369, at *6 (D.N.J. May 14, 2019) and *Thorpe v. City of Philadelphia*, No. 19-5094, 2020 WL 5217396, at *11 (E.D. Pa. Sept. 1, 2020) cited *Thomas* for the former proposition, that *Brady* disclosure obligations of police officers were clearly established in 1995, without reference to the latter analysis or the express language of *Gibson*.  By contrast, the *Lewis* opinion cited above engaged substantively with the controlling authority, *Gibson*, to conclude that a police officer's *Brady* disclosure obligations were not clearly established until 2005.  The

Court in *Gilyard v. Dusak* came to the same conclusion, No. 16-2986, 2018 WL 2144183, at *4-5 (E.D. Pa. May 8, 2018), as it did in *Outlaw v. City of Philadelphia*, No. 21-1290, 2021 WL 3471168, at *5-6 (E.D. Pa. Aug. 6, 2021).

To reiterate, the Third Circuit in *Gibson* forthrightly acknowledged that *Brady* obligations were not expressly determined to attach to police officers at the time of the investigation and prosecution of Plaintiff, an investigation and prosecution that predated even the issuance of the *Kyles* opinion. This Court should be guided by that controlling authority, which instructs that the attachment of *Brady* disclosure obligations to police officers was not clearly established until 2005. Because that right was not clearly established until long after the investigation and prosecution out of which Plaintiff's claim arises, the Officer Defendants are entitled to qualified immunity and this claim should be dismissed. *Gibson*, 411 F.3d at 443; *Lewis*, 2020 WL 1683451, at *10.

> 3. *The Third Circuit Has Not Recognized a Failure to Investigate Claim, Let Alone Established that Such a Due Process Right to an Investigation was Clearly Established*

Plaintiff also brings a claim for "deliberately failing to conduct a constitutionally adequate investigation" in Count II of his Amended Complaint. Am. Compl. Count II. But no such right exists, let alone is clearly established, entitling the Officer Defendants to qualified immunity and dismissal of this claim.

The Third Circuit Court of Appeals has not recognized a cause of action arising out of an allegedly deficient investigation, largely because there is "no constitutional right to a police investigation." *Whitehead v. City of Philadelphia*, No. 13-2167, 2014 WL 657486, at *6 (E.D. Pa. Feb. 19, 2014). In *Wright v. City of Philadelphia*, the Court noted that "[i]t certainly remains to be seen whether there is an independent cause of action under the Fourteenth Amendment . . . for failing to conduct a constitutionally adequate investigation," and expressly declined to affirmatively recognize such a right, notwithstanding the invitation by plaintiff to do so. 229 F.

Supp. 3d 322, 332 n.3 (E.D. Pa. 2017).  Applying this principle – that no such constitutional right or claim had yet been recognized by the Third Circuit Court of Appeals – the Court in *Thomas v. City of Philadelphia* found that the defendant detectives were entitled to qualified immunity because, given the lack of any express statement that such a right or claim existed at the time of writing, it could not be said that the right was clearly established decades prior.  290 F. Supp. 3d 371, 386 (E.D. Pa. 2018).  Guided by this authority, the Court in *Outlaw v. City of Philadelphia* similarly concluded that qualified immunity attached to such a claim.  *Outlaw*, 2021 WL 3471168, at *6-7.

Consistent with the Court's decisions in *Wright*, *Thomas*, and *Outlaw*, the Officer Defendants are entitled to qualified immunity from Plaintiff's claim of a constitutionally inadequate investigation, and this claim should be dismissed.

> ### 4.   *A Constitutional Obligation to Intervene in an Investigation Is Not Clearly Established, Entitling the Officer Defendants to Qualified Immunity from Plaintiff's Failure to Intervene Claim*

In Count IV of his Amended Complaint, Plaintiff seeks to hold the Philadelphia Police Department officers, detectives, and supervisors liable for failing to intervene to "to prevent his malicious prosecution and deprivation of liberty without due process of law[.]"  Am. Compl. ¶ 296.  However, even as of 2017, this Court has recognized that failure to intervene claims have been brought "almost exclusively" in the context of excessive use of force.  *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 672 (E.D. Pa. 2017), *aff'd*, 756 F. App'x 165 (3d Cir. 2018) (citing Third Circuit Model Jury Instruction (Civil) § 4.6.2 (2015) ("A defendant can in appropriate circumstances be held liable for failing to intervene to stop a beating.")).

In *Ekwunife*, this Court expressly declined to rely upon out-of-circuit caselaw from 2011 in which a failure to intervene claim was recognized in the context of unconstitutional interrogations.  245 F. Supp. 3d at 672.  In doing so, the Court refused to expand the claim to cover allegations that a district attorney failed to correct information used to arrest and detain an

innocent man.  *Id.*  Relying on *Ekwunife*, the Court in *Thorpe* similarly found that "it was not sufficiently clear that reasonable officers would have understood that failing to intervene when confronted with another's fabrication and withholding of evidence" would violate the plaintiff's constitutional rights.  2020 WL 5217396, at *11; *see also Outlaw*, 2021 WL 3471168, at *7.

As concluded by the *Ekwunife*, *Thorpe*, and *Outlaw* courts, a constitutional obligation to intervene in an investigation was not clearly established at the time of the investigation and arrest of Plaintiff.  Qualified immunity thus applies to the Officer Defendants, and this claim should be dismissed.

### C.  Plaintiff Fails to Establish Part of his <u>Monell</u> Claim Against the City

Moving Defendants first note that Plaintiff's claims against the City incorrectly attribute municipal liability to the City where the actions at issue are attributable to the District Attorney's Office ("DAO").  *See, e.g.*, Am. Compl. ¶¶ 232, 233 (discussing the "the City of Philadelphia's DA's Office").  Instead, as parties to litigation, the City and the DAO are separate and independent entities.  *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d. 694, 710 (E.D. Pa. 2015) (citing 16.P.S. § 7701–7742); *Quintana v. City of Philadelphia*, No. 17-0996, 2017 WL 3116265, at *4 (E.D. Pa. July 21, 2017).  Instead, exposure to *Monell* liability flows from the policies, practices, or customs of the Police Department alone.

Moving Defendants also note that Plaintiff incorrectly seeks to rely upon representations made by the Conviction Integrity Unit during the post-conviction litigation of his claims.  *See, e.g.*, Am. Compl. ¶¶  222, 223, 321 (characterizing such representations as admissions).  Those representations are not binding on the parties to this litigation.  "Judicial admissions are admissions in pleadings, stipulations, etc. which do not have to be proven in the same litigation." *Phila. Reinusrance Corp. v. Employers Ins. of Wausau*, 61 F. App'x 816, 819 (3d Cir. 2003) (quoting *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956)) (quotation and alteration marks omitted). "When *a party* has admitted to a fact," the admission is "binding for

14

the purpose of the case in which the admissions are made . . ." *See id.* (emphasis added).  But the parties to the post-conviction litigation were the Commonwealth of Pennsylvania and the then-defendant, now Plaintiff.

Turning to the substance of his municipal liability claim, in Count VII of his Complaint, Plaintiff alleges that the City of Philadelphia is responsible for all alleged constitutional violations by its employees.  Compl. ¶¶ 311-322.  Such a claim arises out of the municipal liability framework established in *Monell v. Department of Social Services of New York City,* 436 U.S. 658 (1978), and subsequent decisional law.

While Count VII is an omnibus contention of municipal liability, it implicates all the theories of liability expressed in Counts I-VI.  However, properly considered as being comprised of several claims of municipal liability, Plaintiff cannot sue the City for violations of rights that were not clearly established at the time of the events at issue.  Practically speaking, and as detailed further below, this means that Plaintiff's *Monell* claims for Fourteenth Amendment malicious prosecution (via Count I); withholding of evidence (via Count II and also Count III), failure to conduct a constitutionally adequate investigation (via Count II), and failure to intervene (Count IV) should be dismissed.

Plaintiff's federal claims against the City cannot proceed unless he pleads deliberate indifference on the part of the City.  *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010).  Deliberate indifference "is a *stringent* standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations and quotations omitted) (emphasis added); *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (noting that it is "difficult" for a plaintiff to establish deliberate indifference).

In *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007), a police officer commanded his canine to bite and hold a suspect without first giving the suspect a warning.  *Id.*

at 388.  The district court "concluded that [the officer] had used excessive force . . . by commanding [his dog] to . . . bite and hold, without first providing a warning." *Id.* at 388-389. However, the court held that the officer "was protected by qualified immunity, because the right to a warning was not clearly established at the time of the incident." *Id.* at 389.

On appeal, the Eighth Circuit, sitting en banc, held that the municipality which employed the officer could not be sued under § 1983.  *Id.* at 388.  The court noted that the Fourth Amendment right in question was not clearly established at the time of the incident, and then stated: "[W]e agree with the Second Circuit and several district courts that a [municipality] cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established." *Id.* at 393 (citing several cases).  The Eighth Circuit reasoned that a municipality "cannot properly be said to have exhibited . . . *deliberate* indifference to constitutional rights that were not clearly established." *Id.* at 394.  The Sixth Circuit reached this same conclusion in dismissing the municipal liability claim in *Arrington-Bey v. City of Bedford Heights*. 858 F.3d 988, 995 (6th Cir. 2017) (holding a municipality could not be liable because the plaintiff's constitutional rights were not clearly established at the time of the underlying incident); *see also Bustillos v. El Paso County Hospital District*, 891 F.3d 214, 222 (5th Cir. 2018) (holding same).

Consistent with the appellate courts in *Szabla, Bustillos,* and *Arrington-Bey*, this Court should dismiss the Fourteenth Amendment malicious prosecution claim brought against the City in Count I of Plaintiff's Amended Complaint.  As stated above, the law regarding the Fourteenth Amendment and malicious prosecution was not clearly established at the time of Plaintiff's arrest and conviction.  Given the murky state of the law, Plaintiff cannot allege or establish that the City exhibited deliberate indifference towards his purported Fourteenth Amendment right to be free of malicious prosecution, for a municipality "cannot properly be said to have exhibited . . . *deliberate* indifference to constitutional rights that were not clearly established" in the first place.

16

*Szabla*, 486 F.3d at 394 (emphasis in original). Therefore, Plaintiff's Fourteenth Amendment malicious prosecution claim against the City fails as a matter of law. *See Thomas*, 290 F. Supp. 3d at 387 (following *Szabala* and holding that "[b]ecause the rights at issue in the claims for Fourteenth Amendment malicious prosecution . . .were not clearly established . . . the Court dismisses the *Monell* count as to these claims").

The same result, dismissal of the *Monell* claim, is warranted for Plaintiff's withholding of evidence, inadequate investigation, and failure to intervene claims. As detailed above, those claims implicate rights or constitutional obligations that were not clearly established at the time of the alleged conduct. Just as the City could not be deliberately indifferent to a Fourteenth Amendment right that was not clearly established, so too it cannot have been deliberately indifferent to *Brady*, investigation, or intervention obligations that were not clearly established at the time of the operative events. *See, e.g.*, *Lewis*, 2020 WL 1683451, at *12-13 (dismissing claims against the City for withholding of evidence and Fourteenth Amendment malicious prosecution because those rights were not clearly established at the time of the investigation, arrest, and prosecution at issue in the case); *Outlaw*, 2021 WL 3471168, at *7-8 (same). These claims should be dismissed.

### D. Plaintiff Cannot Pursue his State Law Claims Against the City of Philadelphia

Plaintiff purports to bring his state law claims – for malicious prosecution and intentional infliction of emotional distress – against the City of Philadelphia. *See* Am. Compl. ¶¶ 323-330. However, Plaintiff fails to state any such claim because the Pennsylvania Political Subdivision Tort Claims Act generally bars individuals from suing municipalities. 42 Pa. Cons. Stat. § 8541. The Act only permits a plaintiff to bring a negligence claim against a Pennsylvania municipality if one of the eight exceptions to the general immunity from liability, exceptions which are set forth in § 8542 of the Tort Claims Act, applies to his case. 42 Pa. Cons. Stat. § 8542(b)

(permitting eight types of negligence suits, such as suits involving "vehicle liability").  As for intentional torts, Pennsylvania municipalities, including the City, are immunized from intentional tort claims of false arrest, false imprisonment, and malicious prosecution. *See Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *2 (E.D. Pa. September 23, 2015) (dismissing such claims against, *inter alia*, the City based on its immunity). Given the clear applicability of this Pennsylvania statutory immunity to the state law claims brought against the City here, the Court should dismiss Counts VIII and IX as raised against the City.

## V.     <u>CONCLUSION</u>

For all of the foregoing reasons, all claims against Defendants Frank Margerum and Kevin Hollinshead should be dismissed, Counts IV, IX should be dismissed against Defendant Richard Harris, and Counts I, II, III, VIII, and IX should be dismissed as against the City. Furthermore, Counts I, II, and III against Defendant Richard Harris and Count VII against the City should be narrowed to those theories of liability that arise out of constitutional rights which were clearly established at the time of the alleged harms.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
DIANA CORTES, CITY SOLICITOR

Dated: February 7, 2022                    /s/ *Danielle E. Walsh*
                                           DANIELLE WALSH (PA ID No. 312438)
                                           Deputy City Solicitor
                                           Affirmative & Special Litigation
                                           CITY OF PHILADELPHIA LAW DEPARTMENT
                                           1515 Arch Street, 15th Floor
                                           Philadelphia, PA 19102
                                           Phone: (215) 686-0464
                                           *Counsel for Defendants City of Philadelphia, Frank*
                                           *Margerum, Richard Harris, Kevin Hollinshead*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2022, I caused a true and correct copy of the foregoing Defendants' Motion to Dismiss and accompanying Memorandum of Law and Exhibits to be served via CM/ECF filing upon counsel for all parties.


<u>/s/ *Danielle E. Walsh*  </u>
Danielle E. Walsh, Deputy City Solicitor


Dated: February 7, 2022