**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THEOPHALIS (BINKY) WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. 2:21-cv-02057-JMY |
| | ) | |
| **CITY OF PHILADELPHIA, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**[PROPOSED] ORDER**

AND NOW, this 14th day of March, 2022, upon consideration of Defendants Frank Jastrzembski and Manuel Santiago's Motion for Limited Stay, and Plaintiff's Memorandum in Opposition thereto, it is hereby ORDERED that the Motion is DENIED. Plaintiff's claims against Defendants Jastrzembski and Santiago will continue without delay.

_____

Judge John Milton Younge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THEOPHALIS (BINKY) WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. 2:21-cv-02057-JMY |
| | ) | |
| **CITY OF PHILADELPHIA,** | ) | |
| **PENNSYLVANIA; FORMER** | ) | |
| **DISTRICT ATTORNEY LYNNE** | ) | |
| **ABRAHAM; FORMER ASSISTANT** | ) | |
| **DISTRICT ATTORNEY DAVID** | ) | |
| **DESIDERIO, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' FRANK
JASTRZEMBSKI AND MANUEL SANTIAGO'S MOTION FOR LIMITED STAY**

Plaintiff Theophalis (Binky) Wilson ("Plaintiff" or "Wilson"), by and through his

attorneys, hereby submits his response to Defendants Frank Jastrzembski and Manuel Santiago's

("Defendants") Motion for Limited Stay.

**<u>INTRODUCTION</u>**

The fundamental issue here is whether Defendants' criminal conduct in an unrelated case

allows them to circumvent the obligation to answer the complaint and discovery in this action. For

the reasons detailed below, the equities strongly favor a denial of Defendants' motion to stay. First,

Defendants conveniently ignore the most critical fact at issue: that their criminal charges have no

connection and are not related to Plaintiff's civil suit. Second, Plaintiff would be substantially

prejudiced if his case were delayed indefinitely (as Defendants request). Indeed, Plaintiff has

already waited 30 years for justice and the fact that Defendants have committed misconduct in

other cases, for which they are now indicted, should not protect them from participating in this

action. Third, the claims against Defendants here are limited to their conduct in Plaintiff's criminal

case. While the Defendants' misconduct in other cases may support Plaintiff's *Monell* claim against the City (e.g., the City had knowledge of but deliberately turned a blind eye to misconduct), it has no bearing on Plaintiff's claims against Defendants, which focus solely on their conduct in Plaintiff's case. Finally, Defendants have not identified a single discovery request or question that would implicate their criminal charges or would require their invocation of the Fifth Amendment. Accordingly, any argument that their Fifth Amendment rights "may" or "could" be implicated at some undetermined point in the future is speculative and fails to meet their burden to prove a "clear case of hardship or inequity in being compelled to proceed." For these reasons, Defendants' motion should be denied.

## FACTUAL OVERVIEW

On May 4, 2021, Plaintiff Theophalis Wilson ("Plaintiff") filed this 42 U.S. § 1983 action against numerous former Philadelphia police officers and prosecutors and the City of Philadelphia for misconduct resulting in his 28-year-long wrongful conviction and incarceration for the murders of Kevin Anderson, Gavin Anderson, and Otis Reynolds. *See* Exhibit A. Plaintiff alleges in his complaint that Defendant Officers and Prosecutors fabricated inculpatory evidence, misrepresented or suppressed exculpatory evidence, and maliciously prosecuted Plaintiff for three murders he did not commit. *Id.* In addition, Plaintiffs brought a separate claim under *Monell* (Count VII) against the City of Philadelphia. *Id.*

The allegations in this case relate solely to Defendants' alleged misconduct during the criminal investigation and prosecution of Theophalis Wilson. Plaintiff alleges that Defendant Jastrzembski conducted an interview with Kerry Simmons, an eyewitness who saw the assailant of the Gavin Anderson murder, and disregarded his credible and consistent accounts, despite the fact that Simmons repeatedly told Jastrzembski he recognized the shooter as someone he had seen

2

around the neighborhood and insisted that if shown a photo, he could identify him. *Id.* at ¶¶ 79-83. Further, this information was never disclosed to Plaintiff during his criminal trial. *Id.* at ¶ 207. Next, Plaintiff alleges that Defendant Santiago interviewed Sherrie Young, whose number was found in Gavin Anderson's pocket at the time of his death, and learned that the three victims were friends, were living together, and were all involved in the same criminal enterprise (the Jamaican Shower Posse). Again, this information was never disclosed to Plaintiff during his criminal trial. *Id.* at ¶¶ 89-91, 207. Both Santiago and Jastrzembski suppressed exculpatory evidence of alternative suspects in the triple homicide, deliberately failed to investigate multiple leads, disregarded credible witness statements, dismissed connections to likely suspects, and conspired with prosecutors and the other Defendants to wrongfully convict Plaintiff for crimes he did not commit. ¶¶ 299-301.

The criminal charges against Defendants Jastrzembski and Santiago relate solely to their alleged misconduct during the criminal investigation and prosecution of Anthony Wright. On August 1, 2021, three months after Plaintiff filed this action, Defendants Jastrzembski and Santiago were indicted and charged with perjury and false swearing in connection with their sworn testimony relating to Wright's 1993 conviction for rape and murder. *See generally* Exhibit B and C. After DNA testing proved that another man, not Wright, committed the rape and murder, Wright was granted a new trial in 2016. Ex. B, p. 6. Wright was acquitted on all charges and later filed a civil lawsuit against the Defendants. *Id.* at pp. 7-8. A grand jury found that Santiago coerced Wright into initialing and signing a false confession and that Jastrzembski did not find the victim's clothing in Wright's bedroom as he had falsely testified. *Id.* at pp. 2, 6. Further, the grand jury found that the Defendants then lied about their actions at the 2016 re-trial and in the 2017 civil suit depositions. *Id.* at pp. 6-13. Additionally, the grand jury found that their 2017 deposition testimony

3

contradicted 2016 testimony, in regard to Wright's DNA results. *Id.* at pp. 14-18. Although a preliminary hearing has been scheduled for April 12, 2022, no trial date has been set. *See* Exhibit C.

## ARGUMENT

A stay of a civil action pending completion of ongoing criminal proceedings "is an extraordinary measure." *DeVita v. Sills*, 422 F.2d 1172, 1181 (3rd Cir.1970). And such an extraordinary remedy is "not favored." *Forrest v. Corzine,* 757 F. Supp. 2d 473, 476 (D.N.J. 2010) (citing *Landis v. N. Am. Co*., 299 U.S. 248, 254, (1936)). Although a court has the discretion to stay a case if the interests of justice so require, (*U.S. v. Kordel*, 397 U.S. 1, 12 n. 27 (1970)), "a party seeking a stay bears the burden of establishing that it is needed." *DiPalma v. Medical Mavin*, No. 95-8094, 1998 U.S. Dist. LEXIS 1375, at *2 (E.D.Pa. Feb. 9, 1998). Indeed, the moving party seeking a stay "must make out a clear case of hardship or inequity in being compelled to proceed." *Anthony v. City of Philadelphia*, No. CIV. A. 00-5905, 2001 WL 118964, at *2 (E.D. Pa. Feb. 9, 2001). Additionally, courts have universally recognized that "[c]riminal defendants have no generalized due process rights to stay proceedings in a related civil action." *Id.* at *3.

In their Motion, Defendants cite *Walsh Sec. v. Cristo Property Mgmt.*, 7 F. Supp.2d 523, 526 (D.N.J. 1998) for the six factors a court should consider when determining whether a stay of a civil suit should be granted. However, it bears noting that *Walsh*, as well as every single case cited by Defendants in their Motion*,* is distinguishable on one key point, as discussed in detail below: the criminal and civil actions in those cases were **related, if not identical**. That is not the case here, and accordingly, an analysis of the *Walsh* factors is unnecessary to deny Defendants' Motion. *See generally Anthony v. City of Philadelphia*, No. 00-5905, 2001 U.S. Dist. LEXIS 1176 (E.D. Pa. Feb. 9, 2001) (denying defendants' motion to stay plaintiff's civil rights case arising

from plaintiff's arrest, even though the case arose from the same set of facts as a pending criminal prosecution of the plaintiff).

Regardless, in the event the Court finds an analysis of these factors helpful, Plaintiff will address the factors in the same order as Defendants. However framed, these factors weigh heavily against a stay.

### A.  The Issues in the Criminal and Civil Cases Do Not Overlap.

As Defendants own cited case succinctly states: "If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc*., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). To be clear, the crimes with which Defendants are charged do not overlap with their wrongful conduct here, because the Wright and Wilson cases are factually and legally unrelated. Defendants conveniently ignore this critical fact, and in doing so disregard its importance to the remaining factors – a fatal omission. Further, Defendants have failed to identify any discovery request or question that would provide a basis for invoking their Fifth Amendment rights for fear of incrimination in the *Wright* case. Additionally, Defendants have not and cannot provide support for their novel claim that one allegation <u>directed to another defendant</u> is a basis for avoiding answering a 330-paragraph Complaint.

Indeed, the Wright and Wilson cases share only the superficial coincidence that Defendants were officers involved in a wrongful conviction case – a clearly insufficient basis to show "overlap." In fact, the *Wright* case involves the criminal conviction of Anthony Wright for a 1991 rape and murder. After a re-trial and subsequent acquittal, Wright filed a 2016 civil suit, wherein it was alleged that Santiago coerced a confession of the suspect, Wright, while Jastrzembski planted the victim's clothing in Wright's bedroom to bolster the confession, resulting in Wright's

wrongful conviction. *See* Exhibit B. In contrast, this action involves Plaintiff Wilson's criminal conviction for a 1989 triple homicide. After being exonerated in 2020, Plaintiff filed this civil suit alleging that Defendant Santiago suppressed and withheld exculpatory and impeaching information of a witness relating to the victims' criminal activities and gang relations, (Exhibit A*, ¶¶* 89-91, 207), while Defendant Jastrzembski disregarded, suppressed, and withheld exculpatory information from Kerry Simmons regarding the actual perpetrator. *Id.* at ¶¶ 79-83, 207, 299-301. These two cases have nothing in common apart from the fact that Defendants were Philadelphia police officers at the time and investigated the cases – among several others.

Even the Defendants acknowledge that no overlap exists here, as they argue only that "there is **potential** for significant overlap…due to the nature of the issues presented in this matter and the criminal charge pending in the <u>Wright</u> Matter…." Motion, p. 4 (emphasis added). This conclusory assertion, with no factual or legal support, is insufficient to stay this case. Similarly, that the "the District Attorney's office **may** attempt to utilize any statements or testimony made by moving defendants in this matter as evidence in the <u>Wright</u> Matter" (Motion, p. 4) (emphasis added) is a speculative and unconvincing argument, because "[t]he risk of self-incrimination is greatest when significant overlap exists between civil and criminal matters and criminal charges have been filed against the defendant." *Barker v. Kane*, 149 F. Supp. 3d 521, 529 (M.D. Pa. 2016). Indeed, "[t]he Fifth Amendment privilege against self-incrimination is personal to the defendant." *Pelzer v. City of Philadelphia*, No. CIV.A. 07-0038, 2007 WL 1377662, at *3 (E.D. Pa. May 7, 2007) (citing *Saunders v. City of Philadelphia,* No. 97-3251, 1997 WL 400034, at *11 (E.D. Pa. July 11, 1997)). Further, "[t]his privilege can only be invoked in response to particular questions that would tend to incriminate an individual." *Id.* (citing *DiPalma*, 1998 U.S. Dist. LEXIS 1375, at *5). Yet, there is no indication in Defendants Motion regarding what specific discovery or question they believe

requires the invocation of the privilege (apart from direct questioning about the Wright case, which has not occurred). Regardless, because no overlap exists between the Wilson and Wright cases (let alone with the narrow perjury and false swearing counts Defendants are charged with) the risk of self-incrimination by answering the Complaint and/or discovery in this action is non-existent. In fact, Defendants' failure to answer Plaintiff's complaint weighs against them on this issue, as it "impedes the Court's ability to discern the extent to which the legal and factual issues in the instant case are related to" the indictments. *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. CIV.A. 01-5530, 2002 WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002); *see also Soroush v. Ali*, No. 09-3703, 2009 WL 3467897, at *2 (E.D. Pa. Oct. 28, 2009).

Moreover, all of the cases Defendants cite are distinguishable on this key issue, as the parallel criminal and civil proceedings in each case arise out of the same underlying facts or issues– **which is not the case here**.[1] Defendants' position that these cases overlap would dramatically extend the limited purpose of a stay, and would effectively eliminate any civil suit with a Defendant who happens to be charged with an unrelated crime. The fact that Jastrzembski and Santiago seem to have repeatedly committed misconduct in several criminal investigations over their tenure with the Philadelphia Police Department should not work to their advantage, especially

---

[1] *See Walsh Sec. v. Cristo Property Mgmt.,* 7 F.Supp.2d 523 (D.N.J. 1998) ("There is no dispute that the civil and criminal cases here involve many of the same issues **arising out of these real estate transactions**."); *Terruso-Crespo v. Atl. Cty. Just. Facility,* No. CV2115288CPOSAK, 2022 WL 263432 (D.N.J. Jan. 28, 2022) ("there are significant similarities and overlap between the civil and criminal matters. **It is undisputed that the cause of action in both matters stems from Terruso's in-custody death**."); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech*., Inc., 886 F. Supp. 1134 (S.D.N.Y. 1995)("**the wrongful conduct alleged in both cases is the same…**"); *Med. Inv. Co. v. Int'l Portfolio, Inc*., No. CIV.A. 12-3569, 2014 WL 2452193, at *4 (E.D. Pa. May 30, 2014) ("Defendant argues—and plaintiffs do not dispute—**that the criminal and civil cases involve common factual and legal issues**."); *McCullers v. Commonwealth of Pennsylvania*, No. 5:15-CV-3732, 2016 WL 3551624, at *13 (E.D. Pa. June 30, 2016) ("Here, there is significant overlap between the cases as the **focus of each surrounds Altemos' decision to fire at McCullers on July 17, 2014**."); *In re Adelphia Commc'ns Sec. Litig*., No. 02-1781, 2003 WL 22358819 (E.D. Pa. May 13, 2003)("**The consolidated Adelphia securities actions have a significant overlap of issues with the Rigas Defendants' criminal case**…both cases allege that the Rigas Defendants made material omissions and misstatements regarding certain co-borrowing arrangements, which were used by the Rigas Defendants to purchase Adelphia stock….both cases allege that the Rigas Defendants improperly commingled funds and used Adelphia assets for their own purposes.").

when there is no factual overlap between the Wright matter and this action. Because this factor is the most important and acts as a threshold to determine whether the court needs to consider the remaining factors, and because the facts and issues in the parallel civil and criminal proceedings do not overlap and are not related, this factor should be fatal to Defendants' Motion.

### B.  The Status of the Case Also Favors Plaintiff

Defendants have been indicted criminally in the Court of Common Pleas of Philadelphia County. If the civil and criminal matters had overlapping similar facts and issues, Defendants being indicted may favor supporting a stay. However, as discussed above – and which is not disputed – the Wright and Wilson cases are factually unrelated. Defendants have no risk of self-incrimination by answering discovery and deposition questions that do not refer, regard, and/or relate to incriminating themselves or setting forth their defense strategy in their criminal matter. Further, these criminal indictments occurred months after this civil suit was filed. *See* Exhibits A, B, and C. Although a preliminary hearing is presently scheduled for Defendants' criminal case on April 12, 2022, no trial date has been set. Because of this, Defendants request an indefinite stay that could last months or years. Additionally, Defendants admit that "some or none of the charges may move forward" at the April 2022 hearing, (Motion, p. 5), and thus a stay of their obligation to answer the complaint and pending discovery in this unrelated action is premature. Nonetheless, based upon the lack of overlap or factual connection to the Defendants' criminal charges or the Wright case, as well as the other reasons noted above, this factor does not support Defendants' motion for a stay.

### C.  The Plaintiff's Interest in Proceeding Expeditiously Would be Prejudiced

"Justice delayed is justice denied." *Gaur v. Gonzalez*, 124 F. App'x 738, 743 (3d Cir. 2005) (citing William Gladstone, famed British political leader, 1809–1898)) This legal maxim

could not be more true in this case, where Plaintiff was wrongfully arrested, convicted, and incarcerated for almost three decades for a triple homicide that he did not commit solely on the basis of government misconduct. As courts have repeatedly held, "it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities.'" *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. CIV.A. 01-5530, 2002 WL 31111766, at *3 (E.D. Pa. Sept. 18, 2002) (quoting *Sterling National Bank v. A–1 Hotels International, Inc*., 175 F. Supp 2d. 573, 575 (2nd Cir.2001)); *Soroush v. Ali*, No. 09-3703, 2009 WL 3467897, at *2 (E.D. Pa. Oct. 28, 2009); *see also Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc*., 486 F.Supp. 1118, 1119 (S.D.N.Y.1980) (stating that because the "defendant's conduct also resulted in a criminal charge against him should not be availed of him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim").

Incredibly, it appears Defendants are arguing this factor weighs in their favor because Plaintiff was wrongfully convicted (and wrongfully incarcerated) for so long. (Motion, p. 5). Such an argument is audacious and has the opposite effect as intended. Because Plaintiff was wrongfully incarcerated for over 28 years, documents and memories may now be lost, and most defendants are deceased. It follows then that the Defendants' earnest participation in discovery – as two of the only living Officer Defendants – is critically important. Additionally, despite Defendants' statement to the contrary, substantive discovery has already begun. Indeed, Plaintiff has produced over 19,000 pages of documents, the City of Philadelphia has produced over 34,000 pages of documents, and Plaintiffs have propounded Requests for the Production of Documents and Interrogatories to Defendants Jastrzembski and Santiago, the City, the prosecutor defendants, and the other Defendant Officers. Accordingly, Plaintiff would suffer substantial prejudice in delaying

the discovery of facts and information forming the basis for his suit, that only Defendants may have. Moreover, because Plaintiff had to wait over 28 years from the date of his wrongful conviction to file this complex civil suit, with numerous parties and numerous counts, he "had a right to expect an expeditious resolution." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 478 (D.N.J. 2010).

For the above reasons, this factor unquestionably weighs in Plaintiff's favor. *Id.* ("The stay will undoubtedly serve to delay the ultimate resolution of what is expected to be a complex case…A stay of all or a portion of the case based merely on Camden's prediction that it may be prejudiced in its defense will impede this goal.")

### D.  The Burden on Defendants is Minimal, if Any Exists.

In its Motion, Defendants only advance the conclusory argument that they "cannot offer any testimony about the circumstances of this matter for fear that the District Attorney might attempt to use the circumstances of this incident as evidence against them in the <u>Wright</u> Matter," and that "if the proposed limited stay as to moving defendants is not permitted, moving defendants will be forced to choose between surrendering their Fifth Amendment rights or forfeiting their opportunity to present a defense to the pending civil suit, which seeks, *inter alia*, potentially ruinous punitive damages." (Motion, p. 5) With no factual basis for these conclusions, such bare assertions are insufficient to weigh in favor of a stay. This is especially true here, since the Fifth Amendment privilege against self-incrimination "can only be invoked in response to particular questions that would tend to incriminate an individual." *Id.* (citing *DiPalma*, 1998 U.S. Dist. LEXIS 1375, at *5). Defendants fail to identify a single discovery request that could even arguably warrant an invocation of the Fifth Amendment privilege as to their indictments, as they cannot. Further, Defendants fail to explain why they should be allowed to escape their obligation to answer

a 330-paragraph complaint simply because one allegation – asserted only against the City under Plaintiff's *Monell* claim – mentions the Wright case as an example. Ex. A, ¶ 242.

Additionally, there is "no rule or equitable principle (that we know of) that protects a defendant in a pending criminal prosecution from the disclosure, by another person in a separate civil action, of evidence which may later become a part of the prosecution's case against him." *United States v. American Radiator & Standard Sanitary Corp.*, 388 F.2d 201, 204 (3d Cir. 1969). Indeed, it is only "[w]here an individual is subject both to criminal prosecution and to a civil lawsuit **arising out of the same facts** 'he faces the difficult choice of asserting his Fifth Amendment rights at the risk of losing the civil trial, or waiving these rights to defend himself in civil proceedings at the risk of incriminating himself.' *Soroush v. Ali*, No. 09-3703, 2009 WL 3467897, at *3 (E.D. Pa. Oct. 28, 2009) (*quoting State Farm*, 2002 WL 3111176 at *3). As explained in Section A, *supra*, Plaintiff's action is unrelated and does not overlap with the Wright case or, more importantly, with the Defendant's criminal charges, and thus Defendants have no greater burden than other Defendants in regard to this case. Accordingly, this factor also weighs in favor of Plaintiffs.

### E.  The Interest of the Court Favors Plaintiff

The Court has an interest in the efficient management of its docket. *Soroush v. Ali*, No. 09-3703, 2009 WL 3467897, at *3 (E.D. Pa. Oct. 28, 2009). Defendants do not dispute this interest and argue only that their potential future Fifth Amendment assertions may require further motion practice. Without more, this speculative argument is meritless. And, as noted above, this case is not factually or legally connected or related to the Defendants' indictments (and thus no Fifth Amendment issues will likely arise). Regardless, any Fifth Amendment invocations can only be made and analyzed in light of specific questions or requests –which Defendants **do not identify**

11

**here.** Further, "[c]ourts must be mindful that a policy of issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration." *United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 811 F.Supp. 802, 808 (E.D.N.Y.1992). Indeed, staying this multi-count, multi-party, complex civil suit, even only in regard to Defendants Jastrzembski and Santiago, would complicate the Court's management of this case – not simplify it. Indeed, without participation of two of the four known living Defendant Officers, Plaintiff's ability to obtain discoverable information relating to his wrongful conviction is effectively restricted. Defendants offer no alternative or mechanism to resolve these issues, nor any acceptable reason why they cannot answer discovery unrelated to their criminal case. Because this case does not relate to or overlap with Defendants' criminal charges in any way, this Court's interest in expeditiously resolving Plaintiff's claims against Defendants weighs in favor of denying the stay.

### F.  The Public Interest Favors Plaintiff

As Defendants admit, a stay of this action would impact the public interest in resolving this wrongful conviction case against allegedly bad government actors. As a matter of fact, "the public interest in deterring civil rights abuses weighs in favor of denying the stay." *Pelzer v. City of Philadelphia*, No. CIV.A. 07-0038, 2007 WL 1377662, at *3 (E.D. Pa. May 7, 2007) (citing *Anthony*, 2001 U.S. Dist. LEXIS 1176, at *6); *see also Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)). That Defendants committed other acts of misconduct in other cases for which they are now criminally liable does not – and should not – further the public interests inherent in the resolution of this civil rights action. Indeed, it would be perverse to allow the fact that they are criminally charged with other abuses of their office to delay justice for

the abuses that Wilson has suffered for over 28 years and continues to suffer to this day. This factor clearly favors Plaintiff.

## **CONCLUSION**

For the foregoing reasons, and in the interest of justice, Defendant's motion for limited stay should be denied.


Date:  March 14, 2022                              Respectfully submitted,

By:/s/ *Alana M. McMullin*
     Michael J. Abrams (Admitted *Pro Hac Vice*)
     Kimberly K. Winter (Admitted *Pro Hac Vice*)
     Alana McMullin (Admitted *Pro Hac Vice*)
     LATHROP GPM LLP
     2345 Grand Boulevard, Suite 2200
     Kansas City, MO 64108
     Telephone: (816) 292-2000
     michael.abrams@lathropgpm.com
     kim.winter@lathropgpm.com
     alana.mcmullin@lathropgpm.com

     and

     Francesco P. Trapani
     KREHER & TRAPANI LLP
     Two Penn Center Plaza
     1500 John F. Kennedy Blvd., Suite 900
     Philadelphia, PA  19102
     Telephone: (215) 907-7289
     frank@krehertrapani.com

     ***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2022, I caused a true and correct copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants Frank Jastrzembski and Manual Santiago's Motion for Limited Stay to be served via CM/ECF filing upon counsel for all parties.

<u>/s/ *Alana M. McMullin*</u>
One of the Attorneys for Plaintiff

14