```
                UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THEOPHALIS WILSON,            .
                             . Case No. 2:21-cv-02057-JMY
              Plaintiff,     .
                             .
        vs.                  .
                             . 601 Market Street
CITY OF PHILADELPHIA,        . Philadelphia, Pennsylvania 19106
PENNSYLVANIA, et al,         .
                             . Tuesday, March 22, 2022
              Defendants.    . 10:00 a.m.
. . . . . . . . . . . . . . .
CHRISTOPHER WILLIAMS,        .
                             . Case No. 2:21-cv-05268-JMY
              Plaintiff,     .
                             .
        vs.                  .
                             .
CITY OF PHILADELPHIA,        .
et al,                       .
              Defendants.    .
. . . . . . . . . . . . . . .
```

```
               TRANSCRIPT OF HEARING ON MOTIONS
             BEFORE THE HONORABLE JOHN M. YOUNGE
                UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

```
For the Plaintiff:       Francesco P. Trapani, Esq.
(21-cv-02057)            KREHER & TRAPANI, LLP
                         Two Penn Center Plaza
                         1500 John F. Kennedy Boulevard
                         Philadelphia, Pennsylvania 19102


(Appearances Continued)

Audio Operator:          Electronically Recorded
                         by A. Follmer, Deputy Clerk

Transcription Company:   RedDoor Legal Services, LLC
                         44 Valley Forge Road
                         Bordentown, N.J. 08505
                         (973)985-3668
                         www.reddoorlegalservices.com
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:  (Continued)

For the Plaintiff:          Michael J. Abrams, Esq.
(21-cv-02057)               LATHROP & GAGE L.C.
                            2345 Grand Boulevard
                            Suite 2800
                            Kansas City, Missouri 64108


For the Plaintiff:          John Shannon Marrese, Esq.
(21-cv-05268)               HART, MCLAUGHLIN & ELDRIDGE
                            22 West Washington Street #1600
                            Suite 1600
                            Chicago, Illinois 60602

For Defendants City of
Philadelphia, Margerum,
Hollinshead, and Harris:    Danielle E. Walsh, Esq.
                            CITY OF PHILADELPHIA LAW DEPARTMENT
                            1515 Arch Street, 15th Floor
                            Philadelphia, Pennsylvania 19102

For Defendants Jastzembski
and Santiago:               Nicholas A. Cummins, Esq.
                            BENNETT, BRICKLIN & SALTZBURG, LLC
                            Centre Square West Tower
                            1500 Market Street, 32nd Floor
                            Philadelphia, Pennsylvania 19102

For Defendants Abraham
and Desiderio:              Joshua W. Brownlie, Esq.
                            MARSHALL, DENNEHEY, WARNER, COLEMAN
                             & GOGGIN, PC
                            2000 Market Street, Suite 2300
                            Philadelphia, Pennsylvania 19103

INDEX

                                                            Page

ARGUMENT BY MR. CUMMINGS                                      19

ARGUMENT BY MR. ABRAMS                                        37

ARGUMENT BY MR. MARRESE                                       42

ARGUMENT BY MS. WALSH                                         47

ARGUMENT BY MR. BROWNLIE                                      49

FURTHER ARGUMENT AND COLLOQUY                                 49

```
 1              (Proceedings commence at 10:00 a.m.)

 2                   THE CLERK:  21 United States -- cv-2057.

 3                   THE COURT:  Good morning.

 4                   PARTICIPANTS:  Good morning, Your Honor.  Good

 5       morning, Your Honor.

 6                   THE COURT:  Would counsel please identify

 7       yourselves for the record, starting with the plaintiff.

 8                   MR. ABRAMS:  Good morning, Your Honor.  Michael

 9       Abrams and Frank Trapani on behalf of plaintiff.

10                   THE COURT:  Frank?

11                   MR. ABRAMS:  Trapani.

12                   THE COURT:  Trapani.  Thank you.

13                   Defense?

14                   MR. CUMMINGS:  Good morning, Your Honor.  This is

15       Nicholas Cummings on behalf of Defendants Frank Jastzembski

16       and Manuel Santiago.  This is our motion here today.

17                   THE COURT:  And you are?

18                   MS. WALSH:  And good morning, Your Honor.  Danielle

19       Walsh on behalf of the City of Philadelphia.  We're also

20       entered for Defendants Margerum, Defendant Hollinshead, and

21       Defendant Harris.

22                   THE COURT:  All right.  And sir, you are?

23                   MR. BROWNLIE:  Good morning, Your Honor.  Joshua

24       Brownlie on behalf of Defendants Abraham and Desiderio.

25                   THE COURT:  All right.  To your knowledge, are all
```

1  defendants represented here?

2        MS. WALSH:  No, Your Honor.

3        THE COURT:  What defendants are not represented

4  here today?

5        MS. WALSH:  Your Honor, we have a little bit of a -

6  -

7        THE COURT:  I'm saying about the estate issue and -

8  -

9        MS. WALSH:  Yes.

10        THE COURT:  But other than that part, are there any

11  defendants who are not represented?

12        MS. WALSH:  The majority of the defendants were not

13  represented, Your Honor, are all -- in the posture that we

14  have the estates of the defendants and we have -- the

15  majority of the defendants in this case are actually estates

16  defendants.

17        There is an additional defendant, Your Honor, Frank

18  Greer, who is alive and is unrepresented.  The City is in the

19  process of obtaining conflict counsel for that defendant.

20  Because of the number of defendants involved in this case,

21  we're in an unusual posture where all of the conflict counsel

22  we have retained are currently representing other defendants.

23  So the City is actually going to return a process to retain

24  additional counsel on this case.

25        THE COURT:  All right.  Sir, who -- you just walked

1    in.

2              MR. MARRESE:  Yes, Your Honor.

3              THE COURT:  Do you work for any of the -- either of

4    these parties?

5              MR. MARRESE:  I do not.

6              THE COURT:  Are you a part of my eleven o'clock

7    hearing.

8              MR. MARRESE:  Yes, sir.

9              THE COURT:  Come on down.  Do you represent a

10   defendant?

11             MR. MARRESE:  I actually represent the plaintiff --

12             THE COURT:  Good.

13             MR. MARRESE:  -- Christopher Williams.

14             THE COURT:  I want you here, too.

15             MR. MARRESE:  Okay.

16             THE COURT:  I considered combining these, and I

17   said, huh, maybe I can delay the ten o'clock hearing long

18   enough to get you here.

19        (Laughter)

20             THE COURT:  But since you had the courtesy to come

21   on time, you are -- who -- are you a counsel for Mr.

22   Christopher Williams?

23             MR. MARRESE:  Yes, Your Honor.

24             THE COURT:  All right.  That's Civil Action 21-cv-

25   5268.  There is a similar motion at eleven o'clock regarding

1    some of the same defendants to stay discovery in that case.

2    Please identify yourself for the record.

3            MR. MARRESE:  John Marrese, Your Honor, of Hart,

4    McLaughlin & Eldridge for Christopher Williams.

5            THE COURT:  All right.  Do you know these

6    gentlemen?

7            MR. MARRESE:  I just met them.

8            MR. ABRAMS:  We just met.

9            THE COURT:  Huh.

10            THE CLERK:  Sir, would you please repeat your name?

11            MR. MARRESE:  Yes.  It's John Marrese, —a-r-r-e-s-

12    e.

13            THE CLERK:  Thank you.

14            THE COURT:  All right.  You all may be seated and

15    we'll talk about the motion that brings us here today.

16            The Court has considered whether or not it's

17    advisable to combine these cases for discovery purposes, not

18    for trial, but for discovery purposes, since there seems to

19    be a great deal of overlap between them.  I won't say that

20    until after we hear the bases of the motion.

21            And I say that because, Counsel, Mr. Cummings,

22    you've made the identical motion in both cases --

23            MR. CUMMINGS:  Yeah, they're --

24            THE COURT:  -- saying virtually the same thing.

25            MR. CUMMINGS:  They're substantially similar.

1    That's correct, Your Honor.

2            THE COURT:  And since you've made the same motion

3    in some cases saying substantially the same thing, it says to

4    me that maybe the cases should be combined for -- or

5    consolidated for discovery purposes, so I don't have to have

6    continuously different hearings about what seems to be almost

7    the same issue.

8            Before we get started, I'm going to ask Mr. Abrams,

9    since this is -- you're respondent on this motion, but you

10    did bring the case -- to, for the record, tell us what this

11    case is about and how it involves these defendants.  I'm

12    going to ask this attorney to say the same thing, and then

13    I'm -- we'll go to what the motion is.

14            But there's a substantial amount of overlap, and

15    it's very difficult for the Court to continuously look from

16    page to page, what are we talking about here.  And these

17    cases seem to have some overlap, but I'm not sure exactly how

18    much.

19            MR. ABRAMS:  Your Honor, our client, Theophalis

20    Wilson, his now -- his name is now Falal (phonetic) Wilson --

21    was wrongfully convicted --

22            THE COURT:  Has he officially changed his name?

23            MR. ABRAMS:  I believe so.  He's either in the

24    process of or it's officially been changed, but it hasn't

25    been changed in the pleadings yet, so --

1          THE COURT:  All right.

2          MR. ABRAMS:  -- Theophalis Miller for -- Theophalis

3     --

4          THE COURT:  Well, until --

5          MR. ABRAMS:  -- Wilson --

6          THE COURT:  -- he changes it legally, we're going

7     to go with what his name is legally and what is in the

8     paperwork.

9          MR. ABRAMS:  Yes, Your Honor.

10          Mr. Wilson was convicted of being involved in the

11     murders of three individuals, Kevin Anderson, Gavin Anderson,

12     and Otis Reynolds, in September of 1989.  And he wrongfully

13     served 28 years for a crime that he did not commit.

14          In short, we -- you know, we have an eighty-two

15     page petition that's highly detailed.  But in short, Your

16     Honor, it's our allegation that he was wrongfully convicted

17     as a result of several wrongdoings of the defendants,

18     including failure to provide Brady material and various other

19     allegations and wrongdoings.

20          Does Mr. Wilson know Mr. Williams?

21          MR. ABRAMS:  Yes.

22          THE COURT:  Is it the same case?

23          MR. ABRAMS:  I -- Your Honor, I have --

24          THE COURT:  In other words, was he arrested for the

25     same thing, for --

```
1              MR. ABRAMS:  I have not --

2              THE COURT:  Was he wrongfully -- are you alleging

3    that he was wrongfully convicted of murdering the same people

4    that Mr. Williams was -- alleges he was wrongly convicted of

5    being involved with?

6              MR. ABRAMS:  Your Honor, I have not studied the

7    Williams case, and so I can't --

8              THE COURT:  That seems --

9              MR. ABRAMS:  -- I cannot speak --

10             THE COURT:  That seems astounding.  You filed them

11   almost simultaneously.  These cases are almost like bookends.

12   They came almost -- you haven't studied it?

13             MR. ABRAMS:  I'm familiar -- well, I think we filed

14   first, Your Honor.  So, if they're similar, they may have

15   been --

16             THE COURT:  I don't think a month went by, though.

17             MR. ABRAMS:  Right.  Well, we did file first.

18             THE COURT:  I'm saying, between the --

19             MR. ABRAMS:  You know --

20             THE COURT:  Between the cases being filed, they're

21   very similar, very -- you know, in almost the same time

22   frame.  It's astounding that you're saying there's absolutely

23   no connection between them.

24             MR. ABRAMS:  Oh, no.  Your Honor, they're --

25             THE COURT:  Between the litigations, I'm saying.
```

1           MR. ABRAMS:  Right.  We have not -- in fact, we

2    have not -- plaintiff's counsel for Williams and I have never

3    spoken.  In fact, the first time we spoke --

4           THE COURT:  Do you mean this case -- these cases

5    represent great minds just thinking the same thing?

6           MR. ABRAMS:  Well, if you want to address --

7           THE COURT:  No.  I'm asking -- I ask you.  I said

8    are you saying great minds just happened to have --

9           MR. ABRAMS:  Well, Your Honor, we filed --

10          THE COURT:  You know what?

11          MR. ABRAMS:  We filed --

12          THE COURT:  We're going to -- we're going to sue 57

13   people about what happened to our client, and this gentleman,

14   in a parallel universe, had almost the eureka idea to sue the

15   same people for the same thing.

16          MR. ABRAMS:  Judge, we filed this case first, I

17   believe.

18          THE COURT:  I understand.

19          MR. ABRAMS:  Yeah.

20          THE COURT:  I say --

21          MR. ABRAMS:  So --

22          THE COURT:  I just -- I said but in such proximity,

23   and you're saying there's no connection --

24          MR. ABRAMS:  We --

25          THE COURT:  -- between them.

```
 1              MR. ABRAMS:  We did not coordinate.  There's
 2    obviously -- there is a factual connection between the two.
 3    I can't speak to it in specifics, as to all of the factual
 4    coincidences or the factual connections between Wilson and
 5    Williams.  Perhaps counsel for --
 6              THE COURT:  Well, I'm going to give him his --
 7              MR. ABRAMS:  Yeah.
 8              THE COURT:  His actual time is for eleven o'clock,
 9    so --
10              MR. ABRAMS:  Okay.
11              THE COURT:  -- he probably was not ...
12          (Laughter)
13              MR. ABRAMS:  All right.  Well, I -- you --
14              THE COURT:  He probably was not prepared to speak
15    this early, so I'm not going to put him on the spot yet.
16              MR. ABRAMS:  And Your Honor, I wasn't prepared to
17    speak on the question that you've raised about consolidating
18    --
19              THE COURT:  I understand.
20              MR. ABRAMS:  -- the two cases.
21              THE COURT:  Like I'm going to ask you all to think
22    about it.
23              MR. ABRAMS:  Yeah.
24              THE COURT:  I didn't say I was going to do it.  But
25    just the fact that -- just the things that you've said thus
```

1    far suggest that there is overlap, and that perhaps we should

2    keep them close, if, for no other reason, to make sure we

3    don't have a lot of duplication of efforts.

4              MR. ABRAMS:  Yeah, Your Honor, that may -- I think

5    that makes sense on a lot of levels.

6              I understand that there are some factual

7    differences between the cases.  I can't -- again, I wasn't

8    prepared to speak to --

9              THE COURT:  Well, what's --

10             MR. ABRAMS:  -- to all --

11             THE COURT:  -- interesting --

12             MR. ABRAMS:  -- the different --

13             THE COURT:  -- is that the same two defendants are

14   being sued in his cases, and they're -- and these same two

15   defendants have filed the identical motion in the Williams

16   case.

17             MR. ABRAMS:  Right.  And so it may make sense that

18   there's not a duplication of depositions of the same folks.

19   We'd have to obviously make some kind of arrangements, in

20   terms of time for those depositions.

21             THE COURT:  Well, as I said, after we hear the

22   motion, we'll talk about that.  But I wanted to at least give

23   you all something to think about going forward.

24             MR. ABRAMS:  Understood.

25             THE COURT:  But give me something to go on as it

1    relates to the -- I know it's an eighty-two-page complaint.

2    But the essence of the claim is not just that your client was

3    wrongfully convicted, but that something happened and, in the

4    investigation of that, your client was identified, he was

5    arrested, he was convicted --

6            MR. ABRAMS:  Right.

7            THE COURT:  -- and you say wrongfully convicted.

8            MR. ABRAMS:  Right.  He --

9            THE COURT:  What -- give me -- give the Court some

10   understanding of --

11           MR. ABRAMS:  Right.

12           THE COURT:  -- where this case started and what

13   this case is about.

14           MR. ABRAMS:  He --

15           THE COURT:  For instance, did the plaintiff know

16   the alleged victims?

17           MR. ABRAMS:  No, not at all, Your Honor.  In fact,

18   our client, Mr. Wilson, was not arrested until two years

19   after the murder.  It resulted from an informant, who was

20   incarcerated, who was forced to give a -- was forced to

21   identify our client, Mr. Wilson, as someone who was involved

22   with the murders.

23           Mr. Wilson -- there is no evidence other than the

24   fact that this informant said that Mr. Wilson was part of the

25   group that murdered the three individuals.

1          THE COURT:  Stop one second.

2          Can you stand, sir?

3          MR. MARRESE:  Yes, Your Honor.

4          THE COURT:  Your case, does it involve the same

5     decedents?

6          MR. MARRESE:  Yeah, in part.  So Christopher

7     Williams was a codefendant of Theophalis Wilson in the case

8     involving the murder of three individuals, sometimes it's

9     loosely referenced as a "triple murder" because they were

10    killed in close proximity, both location-wise in the City and

11    time-wise, in the same evening; Gavin Anderson, Kevin

12    Anderson, and Otis Reynolds.  Mr. Wilson and Mr. Williams

13    were codefendants in that case.

14         THE COURT:  So it's your contention that the same

15    informants, what have you, were forced, two years later,

16    after the murders, to identify your client, also.

17         MR. MARRESE:  So -- and -- yes, in part, Your

18    Honor.  The strong -- the connection between these cases,

19    beyond the fact that they were codefendants in the same cases

20    --

21         THE COURT:  And they both allege that they were

22    innocent and wrongfully --

23         MR. MARRESE:  Of course.

24         James White, the incarcerated individual that

25    counsel just mentioned, a nineteen-year-old, who admitted to

1    the murder himself, was the key witness and really the

2    primary evidence against both defendants in that murder

3    trial.

4              THE COURT:  Did that allegation come two years

5    after the murders --

6              MR. MARRESE:  Well, mister --

7              THE COURT:  -- as counsel just indicate din his

8    case?

9              MR. MARRESE:  Mr. Wilson -- my understanding is

10   that Mr. Wilson was not identified until very, very long

11   after the murder.  My client himself wasn't arrested until --

12   and kept and prosecuted until long after the murders.

13             But Mr. White -- it's a little complicated because

14   Mr. White was a witness in six different murders from the

15   District Attorney's Office.

16             THE COURT:  I understand.  But specifically, as it

17   relates to the cases that are before me, you're -- are you

18   also contending that your client was selected for prosecution

19   a couple of -- a couple of years after the murders?

20             MR. MARRESE:  My client was identified by Mr. White

21   earlier than that, so no.  The first time my client's name

22   shows up is not two years later.  His name came up earlier,

23   but after Mr. White had been arrested and was being

24   questioned.

25             THE COURT:  And how long after that was he

1      arrested, your client?

2              MR. MARRESE:  My client was arrested briefly on a

3      day, December 16, I believe it was, of 1989, and released the

4      same day because he had no information.  And then he was

5      subsequently arrested many months later, after additional

6      questioning --

7              THE COURT:  Before Mr. Wilson or after?

8              MR. MARRESE:  Before Mr. Wilson, as I understand

9      it.

10             THE COURT:  All right.  Thank you.

11             MR. MARRESE:  Thank you.

12             THE COURT:  All right.  So how did the truth come

13     out, so to speak, as you see it?

14             MR. ABRAMS:  Well, Your Honor, the other big piece

15     of this case, of the allegation, is the Brady violations;

16     that the Philadelphia Police Department, the DA's office

17     withheld really tens of thousands of documents, including

18     police activity sheets, that revealed an extensive

19     investigation into the prime suspect of this triple homicide,

20     this --

21             THE COURT:  I understand, but that's not my

22     question.

23             MR. ABRAMS:  Right.

24             THE COURT:  My question is:  How did the truth come

25     out?  I understand what you're saying happened.  But how did

1      the truth come out that --

2                  MR. ABRAMS:  There were post-conviction -- in

3      general, there was post-conviction -- Mr. Wilson always

4      maintained his innocence.  There were advocacy groups that

5      took on his claim.  They investigated the file, they worked

6      with the DA's office.

7                  THE COURT:  So he dealt with it through PCRA

8      process?

9                  MR. ABRAMS:  Correct, Your Honor.

10                 THE COURT:  And is that the same thing with you,

11     through the PCRA process?

12                 MR. MARRESE:  Yes.  Mr. Williams had a successful

13     appeal, was granted a new trial in the PCRA process.

14                 THE COURT:  I see.  And that's what led to the

15     filing of this case.  And you're alleging malicious

16     prosecution as well as violation of civil rights and things

17     of that nature.

18                 MR. ABRAMS:  Correct.  1983, 42 U.S.C. 1983 claims.

19                 THE COURT:  All right.  So that brings us to where

20     we are now and, Mr. Abrams -- I'm sorry -- Mr. Cummings, your

21     motion on behalf of --

22                 MR. ABRAMS:  Frank Jastzembski and Manuel Santiago.

23                 THE COURT:  Yes.  And what is it you're actually

24     asking -- I understand this is not your motion.

25                 MS. WALSH:  That's correct, Your Honor.

1        THE COURT:  Are you joining in his motion?

2        MS. WALSH:  I would join in the motion, Your Honor.

3    I do believe that the relief the City would seek would be a

4    little bit stronger than what Mr. Cummings is asking for.  I

5    would be asking for --

6        THE COURT:  Well, I want to hear -- I just want to

7    know that you join in his motion.

8        MS. WALSH:  Yes, I do, certainly, Your Honor.

9        THE COURT:  And do you join in the motion, too?

10        MR. BROWNLIE:  Yes, Your Honor, we do --

11        THE COURT:  All right.

12        MR. BROWNLIE:  -- as well.

13        THE COURT:  What exactly are they joining in?

14        MR. CUMMINGS:  Sure, Your Honor.

15        So the motion, Your Honor, is a request that the

16    obligation of my clients alone to respond to the complaint or

17    respond to discovery be stayed until pending criminal charges

18    against them are resolved.

19        THE COURT:  Now these pending criminal charges, are

20    these pending criminal charges as a result of things that

21    came out of Mr. Wilson's case?  That is, are they -- were

22    they indicted for lying in Mr. Wilson and Mr. Williams' case?

23        MR. CUMMINGS:  No, Your Honor.  So the pending

24    criminal charges --

25        THE COURT:  So they got arrested for something

1    else.

2              MR. CUMMINGS:  Correct, Your Honor.  It's not --

3              THE COURT:  So why should -- what's that got to do

4    with me?

5              MR. CUMMINGS:  I'm getting there, Your Honor.

6              So, in the -- the other case involves a gentleman

7    named Wright --

8              THE COURT:  I know you're getting there, but I need

9    you to say that.

10             MR. CUMMINGS:  Understood, Your Honor.

11             THE COURT:  I need you to say that it doesn't have

12   anything to do with this.  I know it doesn't, but I --

13             MR. CUMMINGS:  It --

14             THE COURT:  -- for the record, I need to hear you

15   say it.

16             MR. CUMMINGS:  The factual circumstances are

17   different.  The conduct at issue is substantially the same

18   and --

19             THE COURT:  It's not the same case, though.  I

20   mean, any time somebody is sued, they could be arrested for

21   something else.  You don't hear the lawyers saying, hey, my

22   client is arrested for something else, I want you to stop

23   this case because your client was arrested for something

24   else.  What's that got to do with me?

25             MR. CUMMINGS:  Sure.  So what that has to do with

1    you, Your Honor, is that in --

2              THE COURT:  Uh-huh.

3              MR. CUMMINGS:  The "Wright case," is what I'll call

4    the one where the criminal charges are pending.  The

5    allegations in the Wright case is that Mr. Wright was

6    wrongfully convicted of a murder that occurred in 1991.  And

7    the allegations against my client in that case are that

8    Defendant Jastzembski allegedly fabricated evidence and lied

9    about where it was found, and that Defendant Santiago

10   allegedly coerced a confession from the suspect.  Again, this

11   is in 1991, and my clients are presently facing criminal

12   charges for perjury and false swearing.

13             THE COURT:  Now those people that he allegedly

14   framed -- colloquially, vote of confidence -- the people that

15   he allegedly framed are not plaintiffs in this case.

16             MR. CUMMINGS:  That's correct, Your Honor,

17   absolutely true.

18             THE COURT:  Okay.

19             MR. CUMMINGS:  So the allegations in this case are

20   substantially the same with respect to the conduct; in that,

21   the conduct alleged in this case is also that evidence was

22   fabricated, exculpatory evidence was hidden, and that a

23   statement of a witness was coerced in order to obtain the

24   conviction of the defendants.

25             THE COURT:  Okay.  Well, that's a --

1          MR. CUMMINGS:  If it can --

2          THE COURT:  That's similar.  But again, it's -- I

3     mean --

4          MR. CUMMINGS:  And so --

5          THE COURT:  -- the allegation is that your clients

6     treated a lot of people badly.

7          MR. CUMMINGS:  Your Honor --

8          THE COURT:  There could be -- there could be

9     hundreds of them.  But we're only concerned about these two.

10         MR. CUMMINGS:  Sure.

11         THE COURT:  And your client has been indicted

12    specifically for fabricating evidence against someone who is

13    not a party to this case.

14         MR. CUMMINGS:  And I can certainly address that,

15    Your Honor.  That's the basis of the motions.

16         THE COURT:  I'm -- there's nothing to address, I'm

17    just -- that's just a fact.

18         So the question is:  Why do I need to stay

19    anything?  That case has nothing to do with this case.

20         MR. CUMMINGS:  Sure, Your Honor.  There are two

21    concerns here, both involve my clients' inability to testify

22    because of the Fifth Amendment, Fifth Amendment issues:

23         The first is that my clients cannot testify with

24    respect to the circumstances of Mr. Wilson or Mr. Williams'

25    investigations.

1          THE COURT:  Why?

2          MR. CUMMINGS:  Because the concern is that, because

3     of the substantial nature of the conduct alleged, that the

4     District Attorney will use their testimony in this matter

5     against them in the pending Wright criminal proceedings.

6          THE COURT:  I have no way of knowing whether the

7     District Attorney will do anything.

8          MR. CUMMINGS:  That's correct, Your Honor.  Neither

9     do we know --

10          THE COURT:  I don't --

11          MR. CUMMINGS:  -- exactly what --

12          THE COURT:  -- if the --

13          MR. CUMMINGS:  -- the district --

14          THE COURT:  -- U.S. Attorney is going to do

15     anything.  I don't know anything about that.  They're not

16     even represented here today.

17          MR. CUMMINGS:  That's correct, Your Honor.  We

18     don't know what the District Attorney is going to do, either.

19          However, my clients have a real concern, given the

20     nature of the allegations, that the District Attorney will

21     attempt to use that evidence in the pending criminal

22     prosecutor for Rule 404 purposes, which I'm sure the Court is

23     aware allows you to use other acts for intent, motive, plan,

24     *modus operandi*, et cetera.

25          And so, Your Honor, my clients, if asked to testify

```
 1    with respect to these incidents, will have to assert their

 2    Fifth Amendment rights.  That's --

 3              THE COURT:  Well, they're entitled to do that.

 4              MR. CUMMINGS:  And the -- that's the reason we're

 5    asking for this --

 6              THE COURT:  No, I said they're entitled to do that.

 7              MR. CUMMINGS:  Oh --

 8              THE COURT:  But why can't your client protect

 9    himself by asserting his rights.

10              MR. CUMMINGS:  Sure.

11              THE COURT:  He's -- he can assert his right to

12    invoke the Fifth Amendment.

13              MR. CUMMINGS:  You're getting right to the heart of

14    the matter, Your Honor, which is there's a balancing test in

15    considering a stay.  The two main components are the burden

16    on the defendant and the burden on the plaintiff.

17              The burden on the defendant in requiring them to

18    testify and assert their Fifth Amendment rights is that

19    they're being forced to choose, Your Honor, between waiving

20    their Fifth Amendment rights and subjecting themselves to

21    criminal exposure in the Wright matter, or essentially giving

22    up their ability to defend themselves in this case and face

23    significant --

24              THE COURT:  In all --

25              MR. CUMMINGS:  -- financial --
```

1            THE COURT:  With all due --

2            MR. CUMMINGS:  -- repercussions.

3            THE COURT:  -- respect, Counsel, when this issue

4    normally comes up, it's when the authorities are

5    investigating the defendant for the participation in the same

6    case that involves the plaintiffs, in which case there's

7    always a problem because the civil case is in front of the

8    criminal case and there's always concern about whether or not

9    the defendant can participate, understanding that, in the

10   same -- for the same acts, there might be a criminal

11   prosecution.

12            There's no pending criminal prosecution for this

13   case, for these defendants, as it relates to these

14   plaintiffs.  There's no pending case at all.

15            MR. CUMMINGS:  And Your Honor, I agree with that.

16            THE COURT:  So all we're really dealing with, from

17   what I'm listening to you saying, is your fear that something

18   that comes out could implicate your client, I guess.  But of

19   course, he could go and -- he could go to traffic court and

20   have to raise his hand and testify, and something could come

21   out of that that could impact his case.  And he could have

22   some other civil matter that something -- I don't see the

23   direct connection other than the similar kind of allegation.

24            MR. CUMMINGS:  And Your Honor, the similar kind of

25   allegation is specifically what would be considered for Rule

1    404(b) purposes in a criminal matter.  Is this substantially

2    similar conduct, close in time --

3          THE COURT:  Yeah, I guess what I'm -- but the

4    problem is you're talking about what is, in fact, the essence

5    or the nature of what a law enforcement officer does; that's

6    what they do, they arrest people.  They arrest people, they

7    testify against people.  That's -- I'm sure, if you ask your

8    client how many folks has he testified against, he might say

9    approximately 17,000 because that's what we do, we arrest

10   people and we testify against them.

11         So I don't know how you get away from the fact that

12   everything that involves your client involves him alleging

13   that somebody did something.

14         MR. CUMMINGS:  Well, Your Honor, the plaintiffs'

15   complaints in both of these cases makes that connection for

16   us because, in both cases, the plaintiffs plead this is the

17   conduct in which the defendants engaged, specifically what my

18   clients did.  They go on to say the City of Philadelphia

19   maintained a policy and custom of doing exactly these things,

20   which has resulted in the wrongful conviction of other

21   individuals.  The first item that they list is the Wright

22   matter, which is subject to the criminal prosecution right

23   now.

24         So it's not just me believing that there is a

25   substantially similarity here that's cause for concern.  The

1    plaintiffs' complaints in both cases make the Wright matter a

2    component of their claim, not just their claim against the

3    City in respect to Monell, and they do.  But their whole

4    point is this is similar conduct that has been engaged in.

5              THE COURT:  So what is it you're asking the Court

6    to do as it relates to your clients?  You want me to stay

7    their ability or their obligation to participate in this

8    case.

9              MR. CUMMINGS:  Correct, Your Honor.  And their -- I

10   have -- I would propose --

11             THE COURT:  For how long?

12             MR. CUMMINGS:  Ultimately, I would propose until

13   the criminal charges against them are resolved; however, Your

14   Honor --

15             THE COURT:  Now hold on.

16             MR. CUMMINGS:  Oh, sure.

17             THE COURT:  As you can see, from speaking to your

18   learned co-counsel, opposing counsel, Mr. Wilson's case took

19   39 years.

20             MR. CUMMINGS:  Well --

21             THE COURT:  Mr. Williams' case took about the same

22   amount of time.  And so you're proposing that your client not

23   have to produce or provide a defense until this case is over,

24   which is a long time.

25             MR. CUMMINGS:  Well, Your Honor, I wouldn't agree,

1    nor would I expect the Court to hold open a stay if a

2    conviction were in place.  I think that's a different

3    situation.

4              THE COURT:  I'm glad you already know we're not

5    doing that.

6              MR. CUMMINGS:  No, I -- Your Honor, so here's what

7    --

8              THE COURT:  That's just absurd.

9              MR. CUMMINGS:  Here's not only what I would

10   propose, but what other courts have done in substantially --

11   in similar situations, including the case involving Officer

12   Jastzembski.  What the Court can do and what the Courts

13   frequently do is enter a stay now with status reports

14   required at regular intervals, for the Court to determine at

15   that point:  Is it necessary for the stay to remain in place

16   or not?

17             And to give the Court an example, my clients have a

18   preliminary hearing --

19             THE COURT:  Let me --

20             MR. CUMMINGS:  -- Your Honor --

21             THE COURT:  -- ask you this.  The case that you're

22   talking about, they probably -- well, not for a fact, but I

23   would probably venture a guess that they are the kind of

24   cases that I was talking about before, where the civil part

25   of the case was in front of the criminal case and the stay

1  was related to the criminal case that involves the same

2  plaintiffs and a stay relating to whether or not there's

3  anything going on that would implicate the rights.

4         MR. CUMMINGS:  But --

5         THE COURT:  How many cases are you talking about,

6  like here, where there's no direct connection between the

7  case for which your client is indicted, but it's a similar

8  allegation?

9         MR. CUMMINGS:  Sure, Your Honor.  I have two

10  specific examples that occurred within the last month.  The

11  first -- these are both attached to my reply brief, Your

12  Honor.

13         So the first case is Walter Ogrod v. the City of

14  Philadelphia.

15         THE COURT:  Uh-huh.

16         MR. CUMMINGS:  In the Ogrod case, the allegation

17  was that Mr. Ogrod was wrongfully convicted of murder based

18  on allegations of a coerced confession and fabricated

19  evidence.  Defendant Jastzembski is a defendant in that case.

20  And in that case, Judge Padova, on February 11th, entered a

21  limited stay only as to Defendant Jastzembski because of the

22  ongoing criminal charges against him.

23         THE COURT:  But that case -- that criminal action

24  involves that plaintiff.

25         MR. CUMMINGS:  No, Your Honor.  No, no, no it

1    doesn't.

2              So the Ogrod case is a claim that Mr. Ogrod was

3    wrongfully convicted, but the stay was entered --

4              THE COURT:  So you're --

5              MR. CUMMINGS:  -- because --

6              THE COURT:  -- saying your client was not -- your

7    client was not accused of fabricating that case against Mr.

8    Ogrod?

9              MR. CUMMINGS:  That's the accusation.  What I'm

10   saying, Your Honor, is that the criminal charges that

11   motivated Judge Padova to enter the stay --

12             THE COURT:  Yes.

13             MR. CUMMINGS:  -- were not criminal charges arising

14   out of Mr. Ogrod's action.  They're the Wright charges, which

15   I'm talking about here, as well, Your Honor.

16             THE COURT:  So Judge Padova -- who I have great

17   respect for, although I don't necessarily agree with him on

18   everything -- I'm not sure I agree with him on what he did.

19   But you're saying that's what he did.

20             MR. CUMMINGS:  That's --

21             THE COURT:  And of course, he is a real judge.

22             MR. CUMMINGS:  I think you're --

23             THE COURT:  You said --

24             MR. CUMMINGS:  -- a real --

25             THE COURT:  -- that's what --

1        MR. CUMMINGS:  -- judge, too --

2        THE COURT:  -- he did.

3        MR. CUMMINGS:  -- Your Honor.  I don't --

4        THE COURT:  Well, I think so.

5        MR. CUMMINGS:  I don't know to respond to that.

6        THE COURT:  I'm only going on what your suggestion

7   is, that that's what a real judge would do.

8        MR. CUMMINGS:  No, Your Honor.  You're asking me

9   specifically what the cases were.

10       The second case, Your Honor -- because we're -- I

11   think it's instructive what other cases have done -- is

12   actually a case of mine.  This was decided by Judge Marston,

13   on March 9th, just last week.

14       THE COURT:  Uh-huh.

15       MR. CUMMINGS:  And that case is Cayley Cohan v.

16   Inspector Joseph Bologna.  And in that case, the allegations

17   were Defendant Bologna, on June the 2nd, allegedly used

18   excessive force against a protestor.  He was under indictment

19   because, the day before, on June 1st, he had used excessive

20   force against a protestor.

21       And because of the substantial similarity of the

22   conduct at issue, Judge Marston, in that case, also entered a

23   limited stay, just like I'm requesting here, for a period of

24   90 days.  And after 90 days, Judge Marston asked us to submit

25   a status report, so the Court could determine whether or not

1    a stay should be continued.

2             And in this case, Your Honor, the immediate first

3    date that comes to mind is my clients have a preliminary

4    hearing April 12th, which is less than a month away.  It may

5    be that these charges are all dismissed at the preliminary

6    hearing, and then there's nothing to be concerned about at

7    all.

8             THE COURT:  Well, you know, I would doubt that your

9    client will testify at the preliminary hearing.  I've never

10   seen a defendant testify at a preliminary hearing.

11            MR. CUMMINGS:  Oh, no --

12            THE COURT:  So I don't --

13            MR. CUMMINGS:  -- I'm not suggesting that he

14   testify.

15            THE COURT:  Let me see -- wait until you hear my

16   question.

17            MR. CUMMINGS:  Sorry, Your Honor.

18            THE COURT:  So what's going to occur in 90 days

19   that's going to change anything?

20            MR. CUMMINGS:  Well, I mean, if the charges are

21   dismissed at the preliminary hearing, well, then that would -

22   -

23            THE COURT:  More than likely, they won't be.

24            MR. CUMMINGS:  Well, and if --

25            THE COURT:  And I'm saying, if they're not, then

1    what?  You would suggest that that stay would be continued?

2            MR. CUMMINGS:  That --

3            THE COURT:  Until when?

4            MR. CUMMINGS:  So, Your Honor, I -- it will depend

5    on the circumstances at the time.

6            But let me finish.  So, Your Honor, I've spoken

7    with my client's criminal defense attorney, and I am not a

8    criminal defense attorney.  His estimate is, if the charges

9    are held over, the case against my clients would likely go to

10   trial in 2023.  So, for the --

11           THE COURT:  That would be speedy --

12           MR. CUMMINGS:  Well, so --

13           THE COURT:  -- based on the backlog they have.

14           MR. CUMMINGS:  And for the sake of discussion, Your

15   Honor, I do nothing in criminal court.  I won't represent to

16   the Court --

17           THE COURT:  I understand.

18           MR. CUMMINGS:  -- you know, what the --

19           THE COURT:  And I have --

20           MR. CUMMINGS:  -- time is --

21           THE COURT:  -- extensive experience in the local --

22           MR. CUMMINGS:  Understood.

23           THE COURT:  -- criminal courts, so --

24           MR. CUMMINGS:  If we were to assume for sake of

25   argument, though, that the charges, if they were held over,

34

1    wouldn't be resolved until --

2                THE COURT:  2025.

3                MR. CUMMINGS:  -- next -- well, I was going to say

4    18 months from now, so let's say the fall of 2023.

5                THE COURT:  Uh-huh.

6                MR. CUMMINGS:  Let's say it hypothetically.  In a

7    case of this nature, where we have 21 defendants, 54,000

8    pages of documents that have been exchanged, defendants who

9    still have estates to be raised, it's a real possibility that

10   discovery in this case wouldn't be complete anyway by that

11   point.  And if it was completed, Your Honor, any additional

12   stay to get my clients to the resolution of their charges may

13   only be a month or two at that point.

14                But my point, Your Honor, is that we don't have to

15   guess right now.  That would be the reason I would propose

16   that regular progress reports would be in order, so the Court

17   can know what's the status of the criminal charges, what's

18   the status of the civil discovery.  And maybe, if we're

19   getting to the point where the civil discovery is wrapping

20   up, the Court decides now we're at the point where Mr.

21   Jastzembski and Mr. Santiago need to choose between the Fifth

22   Amendment or discovery.

23                THE COURT:  Well --

24                MR. CUMMINGS:  But as long as discovery is ongoing,

25   there isn't any prejudice here to the plaintiff.

1          THE COURT:  Well, I'm not sure there's any

2     prejudice by taking the Fifth Amendment anyway.

3          MR. CUMMINGS:  There is, Your Honor, and the

4     prejudice, that is twofold:

5          One, you know, it makes for --

6          THE COURT:  I mean, he's not -- your client would

7     not be giving any testimony against himself.

8          MR. CUMMINGS:  No, Your Honor.  But if you take the

9     Fifth Amendment in a civil case, an adverse inference can be

10    taken against him.

11         THE COURT:  That may be, but that's at trial, not

12    prior to trial.  And so I guess I'm trying to understand what

13    is the real prejudice that would come upon your client at

14    this point.

15         MR. CUMMINGS:  So, Your Honor, if my clients were

16    to say -- let's say they had to have their deposition

17    tomorrow, just hypothetically speaking, and they were to take

18    the Fifth Amendment.  I don't know what utility would be

19    served by that.  It wouldn't advance the discovery at all.

20    All we would have done is put them on the record as having

21    taken the Fifth Amendment.

22         Now can -- now, if the criminal charges against

23    them are dismissed between now and trial, can they come take

24    the stand in court and testify?  I would think that's

25    probably up to the Court.  Can they then be cross-examined on

1     the fact that they previously submitted their -- they

2     previously took the Fifth Amendment?  I think, again, that's

3     probably up to the Court's discretion.

4              But the point is, Your Honor, once you make them go

5     on record taking the Fifth Amendment, this, in and of itself,

6     is potentially usable, either as an adverse inference or as

7     cross-examination.  But having them do that doesn't serve any

8     purpose because no one is getting information.  It's not as

9     if the discovery ball will move ahead.  It's basically just

10    good TV to have two defendants take the Fifth Amendment in a

11    case, when there's no actual reason to do so.

12             It would be different if we were at the close of

13    discovery and this needs to be done.  But we're at the very

14    beginning, tens of thousands of pages that need to be

15    reviewed, 21 witness that need to be deposed, to the extent

16    their alive.  Additional witnesses -- and frankly, I'm not

17    going to represent the number of witnesses, Your Honor.  I

18    don't know how many there will be.  But this is -- there's a

19    lot going on here.

20             There's no reason to require my clients to do this

21    now when there's a possibility that the charges against them

22    will resolve, before there's even a real need for them to

23    testify or offer discovery in this case.

24             THE COURT:  Let me hear what the plaintiffs have to

25    say about that.  And counsel basically is suggesting a

1    limited stay until they can figure out what's going on and

2    that it would not -- it would not prejudice the plaintiff

3    because there's a lot of other work to be done anyway.  And

4    the only thing he would get, if you tried to call him prior

5    to that, would be an invocation of the Fifth Amendment.

6            MR. ABRAMS:  Your Honor, several things.

7            First, what the plaintiff -- what Defendants

8    Jastzembski and Santiago are asking for here is not only to

9    stay their depositions, but to stay all activity with respect

10   to it.  They don't even have the answer the complaint, which

11   stalls our -- which stalls the rest of the case.

12           What the -- you know, the Court --

13           THE COURT:  Well, I mean, that's not fair.  I mean,

14   I was -- the reason I say it's not fair, who really ever

15   answers a complaint?  Denied as stated.

16       (Laughter)

17           THE COURT:  Strict proof is required.

18           MR. ABRAMS:  Well, Your Honor.

19           THE COURT:  My -- your name is denied as stated,

20   prove it in court.  What have you actually -- how have you

21   actually -- I mean, you know he's going to say that.

22           MR. ABRAMS:  Well, Your Honor, the point that I'm

23   getting at is that it would help -- if you ask for what

24   they're asking for, which is not to participate at all, not

25   to answer, not to participate at all in discovery, not

 1     limited to just the deposition, but their motion is, is not

 2     to participate in any discovery, not to even answer the case.

 3     That stalls this case.

 4              That's different than what happened in --

 5              THE COURT:  How does it stall the case?

 6              MR. ABRAMS:  Well, Your Honor --

 7              THE COURT:  You already know they're not going to

 8     give you anything.

 9              MR. ABRAMS:  No.  But they won't -- so they --

10              THE COURT:  I'm talking about --

11              MR. ABRAMS:  If we go --

12              THE COURT:  -- these two --

13              MR. ABRAMS:  -- forward --

14              THE COURT:  -- defendants.

15              MR. ABRAMS:  -- with additional --

16              THE COURT:  I'm talking about these two defendants.

17     You already know they're not giving you anything.

18              MR. ABRAMS:  And Your Honor, I understand that.

19              If we go forward with other discovery, are these

20     two defendants going to say, well, we didn't get to -- we

21     didn't get to cross-examine those witnesses, we didn't get to

22     participate in that discovery, we don't know what their

23     answer is?

24              THE COURT:  Well, I guess --

25              MR. ABRAMS:  It's different --

```
 1              THE COURT:  I guess --

 2              MR. ABRAMS:  -- Your Honor --

 3              THE COURT:  -- they would have to raise it at the

 4    time and show why they were entitled to, in effect, backtrack

 5    it, not withstanding the fact that they had raised that

 6    defense.  And that would be up to the Judge, at that time.

 7    But you know, I don't know how you claim that and then say

 8    that, well, now I want everything that I would have had if I

 9    had been in there in the beginning.

10              MR. ABRAMS:  Well, that's -- again, Your Honor,

11    they're asking for a stay of everything:  Not to have to

12    answer, not to participate in any discovery --

13              THE COURT:  And your --

14              MR. ABRAMS:  -- not in deposition.

15              THE COURT:  Your fear is, is that, once we start

16    this train rolling and we get down and around the bend, that

17    they're going to want to go back and restart.

18              MR. ABRAMS:  That --

19              THE COURT:  And of course, you would say, well, no,

20    you should have -- you should have jumped on board at the

21    beginning if you wanted that, and you opted to preserve the

22    Fifth Amendment, and so you got to take what you got at this

23    point.

24              MR. ABRAMS:  Right.  That's one issue, Your Honor.

25              The other is the Court is right, in the vast
```

1    majority of these cases, in fact, every case cited by these

2    defendants in their motion, the stay was granted only if it

3    was -- the civil case was the same case as the criminal case.

4    The example --

5                THE COURT:  Well, he just --

6                MR. ABRAMS:  -- of judge --

7                THE COURT:  He just asked -- gave an example of the

8    Ogrod case.

9                MR. ABRAMS:  I'm about to get to that, Your Honor.

10                THE COURT:  Okay.

11                MR. ABRAMS:  In that case, the stay -- it was a

12    limited stay and it was only applied for -- with respect to

13    the depositions of the Jastzembski, and in that case,

14    Defendant Devlin.  They still had to answer.  They still

15    participated in discovery, but it was just limited to those

16    depositions.  And again, it was just a sixty-day stay.

17                THE COURT:  And what about --

18                MR. ABRAMS:  And if I --

19                THE COURT:  -- the case from --

20                MR. ABRAMS:  -- can read from --

21                THE COURT:  -- Judge Marston?  What did she do?

22                MR. ABRAMS:  I'm sorry, Your Honor.

23                THE COURT:  The case he cited with -- that Judge

24    Marston just opined.

25                MR. ABRAMS:  Well, in -- well, that case was only

1    90 days, and that was -- that was to respond -- oh, no.  The

2    extension to respond was denied as moot, so I -- it's a

3    little unclear.

4         MR. CUMMINGS:  (Not identified) It's not unclear.

5    It's my case, Your Honor.

6         MR. ABRAMS:  Yeah.

7         MR. CUMMINGS:  There was no obligation to answer in

8    that complaint or answer any discovery.  I can address Ogrod,

9    but I'll wait for my turn.

10        MR. ABRAMS:  Well, the only other thing -- again,

11   it's a little difficult to tell.  And I don't deny what

12   counsel is saying.  It's a little difficult to tell from the

13   order that was attached.

14        But going back to the pre -- going back to Judge

15   Padova's ruling, you know, it's critical here.  And what he

16   says is, he writes:

17             "While defendants argue that any delay will be

18             minimal in light of Devlin's speedy trial rights,

19             we are not convinced by this argument, as they

20             suggested months ago, that the criminal case would

21             wrap up quickly, and it is still ongoing.

22             Moreover, any delay could cause prejudice to

23             plaintiff as the facts giving rise to his claims

24             are already old and, according to plaintiff, the

25             individual defendants are of advanced age."

```
 1              Again, that case, I think, was -- I think the
 2    criminal aspect of it was further along.  And the only -- the
 3    stay was only with respect to the depositions.
 4              I'll let counsel address the order from Judge
 5    Marston because it's difficult to tell from that what was
 6    actually said.
 7              THE COURT:  Before you go any further, I'd like to
 8    get counsel's -- it's almost eleven o'clock, so that means
 9    you can say something.
10         (Laughter)
11              MR. MARRESE:  Thank you, Your Honor.
12              I echo Mr. Wilson's counsel's sentiment with the
13    fact that, in this --
14              THE COURT:  I'm actually shocked.
15              MR. MARRESE:  -- this case --
16         (Laughter)
17              MR. MARRESE:  This case has nothing to do with Mr.
18    Wright's case.  And what I'm hearing is that we should stay
19    the case and see what happens in the Wright --
20              THE COURT:  Well, let's --
21              MR. MARRESE:  -- criminal --
22              THE COURT:  Let's be clear and let's make sure
23    we're all using the same language.  We're not -- he's not
24    talking about staying the case.  The case is proceeding, he's
25    -- I had him say that for the record.  He's not talking about
```

1    stopping everything; in other words, no exchange of

2    documents, no deposing of witnesses, no requests for

3    admissions.  All of that is still going on with respect to

4    all of the same -- all of the other defendants.  He's simply

5    asking can we put his client in a holding pattern for a

6    minute.  And Mr. Abrams thinks that that would prejudice his

7    client, and he's just told me why, and I wanted to hear what

8    you have to say.

9            MR. MARRESE:  Thank you, Your Honor.  And that's

10   correct.  It is a limited stay in the way that they

11   characterized it that's being asked for.

12           But what I don't see right now is any imminent

13   threat to those defendants' rights, Jastzembski and Santiago,

14   in the criminal proceedings.  But what we've received from

15   every defendant who's appeared thus far is a Rule 12(b)(6)

16   motion to dismiss.  It's what you see most of the time in

17   these cases.  I suspect we're going to see the same from

18   these two defendants.

19           Certainly, filing the Rule 12(b)(6) motion and

20   having that briefed cannot, in any way, prejudice them in

21   their criminal proceedings, to start.  I mean, that's a

22   motion where they have to accept what we say as true and

23   challenge it legally.

24           And so part of that point is that we're just not at

25   a place where counsel is going to be able to identify

1    anything specifically that's going to put his clients'

2    criminal proceeding in jeopardy.  There hasn't been a

3    discovery request posed or a question posed that is going to

4    -- as far as I am aware or have seen -- implicate his

5    clients' rights in that criminal proceeding.

6          There is -- I still don't know, in Chris Williams'

7    case, where there's no indictment, what question about Chris

8    Williams' investigation is going to implement what Mr.

9    Jastzembski or Mr. Santiago did in Mr. Wright's case.  I

10   mean, they're separate cases, they're separate matters,

11   they're separate fact paths.

12         So, at this point, it seemed to me particularly

13   speculative.  And the burden is on the movant to show why

14   that threat is posed today and why this -- the proceedings

15   should be stayed today.

16         If something were to occur three months from now

17   that changed the picture, where counsel was able to identify

18   for his two clients an issue that put them in that kind of

19   jeopardy, my position is that there never should be a stay,

20   and there's other reasons for that that I'll get to.

21         But counsel were able, at that time -- addressing

22   that for the moment -- at that time, to identify something

23   specific and imminent that would require a stay --

24         THE COURT:  Well, let's be clear.  The case is not

25   being stayed, that will not happen.  The case is not being

1      stayed.  The only question is whether these two defendants

2      are going to have to meaningfully participate in a way that

3      forces them to invoke the Fifth Amendment.

4              I wonder if you all, being the great legal minds

5      that you are, if you cannot come up with a way to handle this

6      at this early stage, without making the Court rule.  I'm sure

7      you know, Mr. Abrams and mister --

8              MR. MARRESE:  Marrese.

9              THE COURT:  -- Marrese, that, when it comes to

10     issues involving privilege, and that being a fundamental

11     issue, I'm sure that you're aware of the risk of upsetting

12     anything that you're doing for what gain, which you did not

13     come here thinking about, but I urge you to think about it

14     because, at the end of the day, are you willing to risk gains

15     for very little when you know he's not going to give you

16     anything anyway.

17             These two defendants aren't going to give you

18     anything anyway.  And any right of -- any wrong -- any

19     inference, adverse inference won't come until the time of

20     trial in three years.  Are you willing to risk reversal of

21     anything for what amounts to virtually no information anyway?

22             I wonder if you all, working together, might come

23     up with a way to compartmentalize this aspect.  After all,

24     their client has been indicted.  It's not a fear of

25     indictment.  I've had cases where there was a fear of

1    indictment.  And of course, I had to say to counsel, look,

2    you know, the sky could fall tomorrow, we don't know what's

3    going to happen.  The U.S. Attorney never admits they're even

4    investigating, so ...

5         But their clients have been indicted.  So there is

6    an actual indictment here.  With that in mind -- you're

7    right, it doesn't involve your case, but it is a similar

8    action that can be used against their client.  Is it

9    necessary to have that -- their interaction right at this

10   moment, when it could provide -- it could put them in

11   jeopardy and could, in fact, impair your ability to move

12   forward.  Strategically, I think maybe there's something you

13   all can work out for a limited period of time.

14        MR. MARRESE:  Your Honor, I do have a suggestion.

15   I'd want to talk to Mr. Williams' counsel and perhaps -- are

16   you suggesting, Your Honor, that we visit with opposing

17   counsel?

18        THE COURT:  Listen, we're very early in this

19   matter.  And I put this -- asked for this on the record

20   because it is so significant.  I think the higher court needs

21   to understand did we at least wrestle with this issue.  And

22   I'm wrestling with it.  But I'll admit there's no perfect

23   answer.  And the ones that were cited by Mr. Cummings are not

24   perfect.

25        Judge Padova, he's taken his -- you know, he's

1    taken a tact.  Just Marston, she's trying it that way.

2    There's been no review of it.  That doesn't mean they're

3    right and doesn't mean they're wrong.

4           But one thing that's not going to happen is the

5    case is not going to stop, the case is going to move forward.

6    The question is how we move forward and can we come up with

7    some kind of way to achieve the objectives of both sides.  If

8    that's possible, that's better for the Court than me having

9    to make a ruling, but I'm willing to make a ruling if I have

10   to.

11           MR. MARRESE:  Well, Your Honor, if --

12           THE COURT:  Before, I'd like to give the City a

13   chance and other counsel a chance to give their perspectives,

14   also.

15           MS. WALSH:  Thank you, Your Honor.  And once again,

16   Danielle Walsh for the City of Philadelphia.

17           Your Honor, I would join in the arguments that Mr.

18   Cummings presented to the Court, specifically that the

19   Anthony Wright matter is pled in support of the Monell claim

20   that plaintiffs cite in their complaint, and that there is a

21   substantial risk of that overlapping criminal prosecution and

22   any discovery being taken in this case.

23           The one other issue that I would draw to the

24   Court's attention, which I think could be considered, as Your

25   Honor has asked us to possibly craft some type of solution,

1   is, in Mr. Wilson's cases, Your Honor, motions to dismiss

2   have been fully briefed as to some of the parties.  We still

3   have a substantial number of parties who are not yet

4   represented and service hasn't been perfected on.  And then,

5   if we turn to Mr. Williams' case, motions to dismiss are

6   still partly being briefed in that case.

7        If these cases were proceeding together in

8   discovery for the preservation of judicial resources and for

9   all of the parties involved --

10        THE COURT:  That's what I was thinking about.

11        MS. WALSH:  This could be a scenario, Your Honor,

12   where, as Mr. Cummings has already been presented, the

13   preliminary hearing for Mr. Jastzembski and Mr. Santiago is

14   scheduled for next month.  Because we still have these

15   outstanding motions to dismiss and we need to get all parties

16   represented, we already are having this conflict where we

17   don't have everybody at the table.

18        Maybe this is an opportunity to resolve all of

19   those matters, determine the scope of discovery, get

20   everybody represented, get service on everybody, link the two

21   cases up, so we're in the same procedural posture.  So that

22   could serve both of those purposes.  And that's something we

23   can certainly confer together on and present a solution to

24   Your Honor.  But I did just want to bring all of that to the

25   Court's attention because we have a number of different

1    issues at play here.

2              THE COURT:  Do you wish to be heard?

3              MR. BROWNLIE:  Only insofar, Your Honor, as we

4    would join the motion, and that we echo the City's sentiments

5    with respect to consolidating the cases.  Our firm represents

6    defendants in the other matter.

7              THE COURT:  In the Williams matter?

8              MR. BROWNLIE:  So --

9              THE COURT:  Oh, I'm sorry.  When you say the "other

10   matter," what are you talking about?

11             MR. BROWNLIE:  The --

12             THE COURT:  The Wright case?

13             MR. BROWNLIE:  The Williams matters.

14             THE COURT:  All right.

15             MR. BROWNLIE:  So, insofar as those cases are

16   related, we would join those motions, as well.

17             THE COURT:  Yes, sir.

18             MR. CUMMINGS:  Your Honor, just one point because I

19   don't want there to be any confusion as to what we're asking

20   the Court for.

21             One, the proposal is to stay as to my clients.

22   That wouldn't mean that, for example, if there was a

23   deposition of another witness, I wouldn't attend that

24   deposition or participate or, you know, receive people's

25   discovery responses.  I think that what was suggest is we'd

1  get to the end, and then I'd say, oh, I get to now depose

2  these people.  I wasn't suggesting that at all.

3         My suggestion is my clients wouldn't need to

4  respond to discovery and answer the complaint.  But I

5  wouldn't say, oh, well, then we're not going to even be

6  involved at all in discovery; and, therefore, I get to do it

7  all again at the end of the case.  I wouldn't propose that.

8  And I didn't think that's how the Court took it, but it

9  sounded like that's what came across from the other side.

10         MR. ABRAMS:  But Your Honor, what's being

11  suggested, though, is that these two particular defendants

12  don't have to answer, could, I guess, participate in

13  discovery, other than having to respond to document requests

14  or interrogatories themselves, and file a motion to dismiss

15  after the stay is lifted.  So, after we've gone through all

16  of this discovery, then we get a motion to dismiss.

17         I mean, to me -- and we can talk about --

18         THE COURT:  Well, considering that that's what your

19  concern is, why don't you take me up on my offer to let you

20  all craft something that would satisfy that.

21         I understand your concern.  You don't want this

22  gentleman to never have answered the complaint, come to

23  depositions, ask questions from a base of knowledge that he

24  hasn't shared with you, and then file a motion to dismiss and

25  say, oh, there's nothing here against me.  Well, I understand

1    that.  How do we work around that?  And I'm inviting counsel

2    to say what's the best way to deal with this.

3           I'm also wondering would it make any sense to have

4    a discovery master, since we have so many conflicting things.

5    But let's put that part to the side.  Let's deal with whether

6    or not you all can have, in effect, some kind of protective

7    order because that's what we're really talking about, some

8    kind of protective order for a limited period of time --

9           MR. ABRAMS:  So --

10           THE COURT:  -- so counsel knows what he's dealing

11    with on the criminal side.

12           MR. ABRAMS:  Your Honor, the one possibility is to

13    have Jastzembski and Santiago answer the complaint and answer

14    -- and to the extent -- and to hold their depositions until

15    later, at least put a stay on the dep, but at least answer

16    the complaint, flesh them out in terms of whether there's a

17    motion to dismiss or not at the beginning.

18           MR. CUMMINGS:  So, Your Honor, the concern with

19    answering the complaint would be that averments they make in

20    the complaint could still be used against them later on.

21    That's the concern with the answer, otherwise, I wouldn't

22    have ask for that to be stayed, as well.

23           And I understand counsel's point they don't want a

24    motion to dismiss at the very end of the case.  I understand

25    that, too.  Maybe we can work that out.

1      But as far as actually answering, that's just as

2  problematic as testifying or responding to interrogatories or

3  anything else, for that reason.

4      THE COURT:  So we're back to what I said before.

5  Do you think you all could craft something that does not

6  include answering, that preserves the ability of the case to

7  proceed on a limited basis?

8      MR. CUMMINGS:  We can certainly try, Your Honor.

9      MR. ABRAMS:  Your Honor, if I could make a

10  proposal.

11      THE COURT:  Listen, I'm prepared to rule.  And as I

12  said before, the case is moving forward, there's no doubt

13  about that.

14      MR. ABRAMS:  Your Honor --

15      THE COURT:  And in all candor, what counsel is

16  saying is true, to the extent that, if he filed an answer and

17  denied any wrongdoing, strict proof of that being required at

18  trial, and it turned out that he did do something, he might

19  be accused of perjury, which is what you want and what he's

20  trying to avoid.  And so, if it's necessary for the Court to

21  split the baby in half, I will.

22      But I'm wondering can you all come up with

23  something because, as sure as I'm sitting here, this is not

24  the first problem that's going to emerge.  There's going to

25  be other problems as we go into this.  I suggest you all come

1    up with framework that does not stop the case from moving

2    forward and does not impact the defendants' ability to

3    protect themselves under the Constitution.

4            And if it's necessary for the Court to rule on

5    that, I will.  But I think it's better for you all to have

6    something on your own steam, under your own control, that you

7    all figured out.  I'm wondering will it be helpful to give

8    you that opportunity.  If you think, no, Judge, we want you

9    to rule, I got it, I'll take it from here.

10            MR. ABRAMS:  Well, Your Honor, we can certainly

11    give it a try --

12            THE COURT:  Counsel, I want -- but I want more than

13    that.  I'm saying make it work.  I think you all can make it

14    work.  There's how many defendants in your case?

15            MR. ABRAMS:  Twenty-one or twenty-two, yeah.

16            THE COURT:  You mean to tell me that you all can't

17    figure out how to deal with the testimony of 2 defendants

18    while you deal with the other 19?

19            MR. ABRAMS:  Well, Your Honor, that was my

20    suggestion, is to hold the depositions, at least for a set

21    time, a stay on the depositions, but at least to -- you know,

22    we need an answer in the books, and if they want to bring a

23    motion to dismiss, to bring a motion to dismiss.  We can

24    think about -- further about how to do that, but ...

25            MR. CUMMINGS:  Your Honor, if I could make a

1    proposal.  With my clients' preliminary hearing --

2              THE COURT:  I think -- you know, I've always felt

3    that it is best for people to talk to one another.

4              MR. CUMMINGS:  Sure.

5              THE COURT:  And negotiating on the record is never

6    a good idea.

7              MR. CUMMINGS:  And Your Honor --

8              THE COURT:  What I'm saying is, if you want to take

9    a brief time to chat with counsel and for all these learned

10   minds to try to figure this one out because, like I said,

11   we're just at the beginning of what's going to be a long

12   road.  It's going to be a long road.  I think, to start

13   issuing strict orders right at this moment, before anything

14   is done, is probably a mistake, I think anyways.

15             But you know, listen, we do what we do, based on

16   what you all do.  If you all -- if you all come up with an

17   agreement on how to proceed, I'm more than happy to live with

18   that.  But if you say that you can't figure it out and you

19   need the Court to do something, then I can step in and do

20   what I have to do, based on what's best for all parties.

21             So the plaintiffs' cases will go forward.  But

22   listen, there is no one that is authorized to protect the

23   rights of the defendant other than me, and I will.  I respect

24   the Fifth Amendment.  And I'm not going to allow you to

25   abrogate that by any -- I mean, you may believe in the

1    ripeness of your cause, but the Fifth Amendment is not going

2    to be violated by any stretch of the imagination.

3          There's a way to work this out.  I suggest that you

4    all take the opportunity to do that.

5          MR. MARRESE:  Just for Mr. Williams, Your Honor,

6    we're willing to do that, we're willing to make that attempt.

7          THE COURT:  Do you all want to do that today or

8    would you like to continue this matter for a week or so and,

9    you know, come back?  If you come up with a -- if you come up

10   with a game plan or a plan, then it might not be necessary

11   for us to get back together.

12         MR. CUMMINGS:  What I was going to suggest, Your

13   Honor, is that, with a preliminary hearing April 12th, maybe

14   we try to work out; and if, after the hearing, the charges

15   are still in place, we could tell the Court if we resolved it

16   or if the Court needs to rule.

17         THE COURT:  Uh-huh.  When is the preliminary

18   hearing?

19         MR. CUMMINGS:  April 12th.

20         THE COURT:  I'll tell you what.  Let's continue

21   this hearing for 30 days.  At that time, if the preliminary

22   hearing has been held you and you all have worked something

23   out, you may contact me and say we don't need to come back,

24   in which case we'll cancel the hearing.

25         On the other hand, if you have not worked it out,

1    then come back and we'll hash it out from there, and I'll

2    issue a preliminary ruling at that time.

3                    MR. CUMMINGS:  Understood, Your Honor.  Thank you.

4                    THE COURT:  What do you think, Mr. Abrams?

5                    MR. ABRAMS:  Your Honor, that sounds like a good

6    plan.

7                    THE COURT:  I would think that you all should use

8    this time and, you know, you have the courtroom --

9                    MR. ABRAMS:  Right.

10                   THE COURT:  -- use this time together, I mean, in a

11   good way.  I think that we can figure this out.

12                   Now, Mr. Follmer, do we have -- well, my civil

13   deputy is not here, so I don't have the calendar.  But we'll

14   say, generally speaking, 30 days.  But Mr. -- my civil

15   deputy, who is Ms. Brannan, will get back in touch with you

16   to talk about a new date, and my law clerk Ms. Shaw is here,

17   so -- is she still here?

18        (Court and court personnel confer)

19                   THE COURT:  Okay.  Between my civil deputy and my

20   law clerk working with you all, we'll figure out another

21   date, but it will be approximately 30 days.  I don't know

22   what's on my calendar, but we'll figure something out.

23                   MR. ABRAMS:  Understood, Your Honor.

24                   THE COURT:  Okay.  Now I did want to have some

25   discussion about the issue of consolidation for discovery

1    purposes only.  I want to hear from you all.  Does that make

2    any sense.  And this is something I raise *sua sponte*, so none

3    of you says -- listen, if you all want to -- if you all want

4    to have the same conversation three times, okay, you know.

5    But it just seems to me that consolidation for discovery

6    purposes makes some sense.

7            MS. WALSH:  And Your Honor, Danielle Walsh again

8    for the City.

9            The City does believe that consolidation of these

10   cases for discovery purposes would be very beneficial, at

11   least in terms of our own resources, judicial resources.

12   Both of these cases arise out of the triple homicide that

13   counsel has already explained to the Court.  Both of the --

14   both Mr. Wilson and Mr. Williams were identified from that

15   same cooperating codefendant James White, who then issued a

16   statement identifying both of those individuals, so -- and

17   they both served as codefendants at the criminal prosecution,

18   which is subject to the plaintiffs' claims in this case.

19           THE COURT:  Now I've canceled the Rule 16 for one

20   of these cases, right?

21           MS. WALSH:  That's correct, for Mr. Wilson --

22           MR. CUMMINGS:  Wilson.

23           MS. WALSH:  -- case, Your Honor.

24           THE COURT:  For Mr. Wilson.  I have -- I didn't

25   schedule a Rule 16 for Mr. Williams' case, did I?

1           MR. MARRESE:  You haven't yet, Your Honor.

2           THE COURT:  All right.  And that's one of the

3     reasons why I canceled was because we were having this --

4           MS. WALSH:  Exactly.

5           THE COURT:  What do you all think?  Does it make

6     any sense?  Because what I normally do at the Rule 16 is to

7     issue scheduling deadlines, which incorporates all discovery.

8     If we're going to do that, of course, I want to make sure I

9     have an identical discovery order.

10          MS. WALSH:  Your Honor, if I may.  If the Court is

11    continuing the motion for stay for the 30 days anyways, in

12    Mr. Williams' case, the motions to dismiss, that briefing is

13    still ongoing.  That briefing should be completed by April

14    11th.

15          THE COURT:  I consider those things on parallel

16    tracks.  So, although you all think that I can't do anything

17    until I'm done with that, I don't look at life that way.

18    That's just something he said.  All right?  The 12(b)(6)

19    motion is -- that's just something he said.  I'm not sure he

20    really believes I'm going -- I don't -- I'm not sure he

21    really believes I'm going to grant that, but okay.  Whatever.

22          MS. WALSH:  My point being, Your Honor, that, by

23    the time we come back for the 30 days, both Mr. Williams'

24    case and Mr. Wilson, in terms of that briefing, will be

25    linked back up to be at the same track.  We could just hold

1    the Rule 16 that same day, to consolidate --

2            THE COURT:  And you all could possibly come up with

3    some suggested discovery deadlines -- I mean scheduling

4    deadlines that make sense; for instance, my standard -- Ms.

5    Shaw, are my standard schedules like 120 days for discovery?

6            THE LAW CLERK:  Yes.

7            THE COURT:  That doesn't seem likely in this case,

8    right?

9            And so, working together, you all could give us a

10   better idea of what's reasonable.  It might mean that

11   discovery is actually three months, four months, five months,

12   based on the number of defendants.  So I'm thinking making at

13   that, after -- at 30 days, working together, you all could

14   come up with a way that gives us some realistic deadlines,

15   realistic.  I don't want to impose my deadlines on you all.

16   I mean, you know better than I do.

17           MR. MARRESE:  Speaking for Mr. Williams, that would

18   be our preference, to get together with Mr. Wilson's counsel

19   and defendants and talk about a schedule.  There's undeniably

20   a lot of factual overlap.  We just want to be sure that, you

21   know, we have the right to discover in our case --

22           THE COURT:  And you --

23           MR. MARRESE:  -- fully.

24           THE COURT:  -- absolutely do.

25           MR. MARRESE:  Yeah.

60

1          THE COURT:  I want to be very clear from the

2   outset.  If these cases survive motions to dismiss, if they

3   survive summary judgment, they will be tried separately.

4   There is no indication that there's going to be any one case.

5   They will be tried separately.

6          So the question is:  How do we get them to that

7   point as expeditiously as possible, that doesn't impact the

8   rights of everyone and preserves everyone's rights?  If we

9   can -- I think, if we can do that, we've done some good.

10          So, if I'm -- I think we're all on the same page.

11   We'll continue this hearing for 30 days.  You all will talk.

12   The -- you'll let us know what happens with the preliminary

13   hearing.  And you'll also talk about scheduling from a joint

14   standpoint.  And we'll talk about -- remember now, no one has

15   made this motion, so I'm not imposing anything.  But it makes

16   sense for -- if you all were to suggest coordination, in

17   which case, I can enter an order for consolidating the cases

18   for discovery.  But I'm not responding to motions that have

19   not been made; it's a suggestion.

20          MS. WALSH:  Understood, Your Honor.

21          THE COURT:  Okay?  And if you don't -- if you don't

22   go along with that, they you've preserved your rights to say,

23   hey, I don't go along with that, and that's great.  Okay?

24          We've talked about a lot.  It is on the record.  We

25   get the record -- I suggest you get the record and review

1    what we've actually decided here for these limited purposes.

2              Is there anything that we have not talked about

3    that you believe we should talk about before we go?

4              MR. CUMMINGS:  No, Your Honor.

5              MS. WALSH:  No, Your Honor.

6              MR. BROWNLIE:  No, Your Honor.

7              MR. MARRESE:  Only, Your Honor, that our case was

8    filed several months after Mr. Wilson's case, for a variety

9    of reasons.  But that's all to say that we recently learned

10   and confirmed the number of defendants who are dead.  And so,

11   while we are responding to the motions to dismiss  that are

12   currently pending, we'll have to amend the complaint to

13   identify their estates, so we believe we have that -- I just

14   wanted to --

15             THE COURT:  Have you raised estates for them?

16             MR. MARRESE:  No, Your Honor.

17             THE COURT:  What about you, have you raised estates

18   for --

19             MR. ABRAMS:  We have, Your Honor.

20             THE COURT:  Okay.

21             MR. ABRAMS:  And there is service on almost every

22   one.  There's some coordination going on with the City's

23   counsel because the City is going to represent some of them,

24   potentially.  But yes, we have raised the estates.

25             THE COURT:  All right.  Well, my general policy,

1    just so you know, is I don't generally have a Rule 16 until

2    service is made.  Filing an answer doesn't move me because,

3    as I said, no one ever says anything about the answer anyway.

4    But at least you want to make sure you don't have the Rule 16

5    before all the defendants have been served.  In this case,

6    all the defendants haven't been served, so it wouldn't be a

7    good time to have the Rule 16, anyway.

8            MR. ABRAMS:  That's right.  We're close, Your

9    Honor.  We're two or three away.

10           THE COURT:  And I mean, for his case --

11           MR. ABRAMS:  Oh --

12           THE COURT:  -- I'm saying he's not even close.

13           MR. ABRAMS:  Yeah.

14           THE COURT:  And if we're going con -- if we do

15   consolidate, then we have to remember he hasn't served them

16   yet, so any posture has to include his ability to get up to

17   speed.  We got to get him up to the same place --

18           MR. ABRAMS:  Right.

19           THE COURT:  -- that you are, if we're going to

20   coordinate discovery.

21           MR. ABRAMS:  Right.  He'll have the advantage of

22   the fact that the estates have been --

23           THE COURT:  Right.

24           MR. ABRAMS:  -- opened for a number of them.  I

25   don't -- I know there's not --

1           THE COURT:  But how long --

2           MR. ABRAMS:  -- complete --

3           THE COURT:  -- would it --

4           MR. ABRAMS:  -- overlap.

5           THE COURT:  -- take him to get the others?

6           MR. ABRAMS:  Right.

7           THE COURT:  And then the question is:  Do we wait

8    on those others, or do we just proceed and let them catch up

9    as we go along?  We can talk about that later.  Okay?  But

10   that's an open question.

11          All right.  I suggest you all use this opportunity

12   to talk, since we're here, and we got the use of the room.

13   It's my courtroom.

14          (Laughter)

15          THE COURT:  I don't have any other cases.  So let's

16   say we end it here.  All right?

17          PARTICIPANTS:  Thank you, Judge.  Thank you, Your

18   Honor.

19          THE COURT:  All right.  Thank you.  All right.

20   Take care, folks.

21          (Proceedings concluded at 11:07 a.m.)

22                              *****

1                           CERTIFICATION

2              I certify that the foregoing is a correct

3       transcript from the electronic sound recording of the

4       proceedings in the above-entitled matter to the best of my

5       knowledge and ability.

6

7

8

9

10

11      _____        April 20, 2022

12      Coleen Rand, AAERT Cert. No. 341

13      Certified Court Transcriptionist

14      For RedDoor Legal Services, LLC