IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THEOPHALIS WILSON,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 21-2057** |
| | : | |
| **CITY OF PHILADELPHIA**, *et al.*, | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 31st day of March, 2023, upon consideration of Defendants Former Assistant District Attorney David Desiderio and Former District Attorney Lynne Abraham's Motion to Dismiss (ECF No. 16), Defendants City of Philadelphia and Frank Margerum's Motion to Dismiss (ECF No. 17), Defendants City of Philadelphia, Frank Margerum, Richard Harris, and Kevin Hollinshead's Motion to Dismiss (ECF No. 40), Defendant John Grier's Motion to Dismiss (ECF No. 83), and Defendants Karen Ansel (as Personal Representative of the Estate of Francis Ansel), Ludmilla Permint (as Personal Representative of the Estate of Charles Permint), James Rodden (as Personal Representative of the Estate of Gregory Rodden), and Kenneth Russell's (as Personal Representative to the Estate of Raleigh Witcher) (collectively, the "Estate Defendants") Motion to Dismiss (ECF No. 91), it is hereby **ORDERED** as follows:

1. Defendants Former Assistant District Attorney David Desiderio and Former District Attorney Lynne Abraham's Motion to Dismiss (ECF No. 16) and Defendants City of Philadelphia and Frank Margerum's Motion to Dismiss (ECF No. 17) are **DENIED** as **MOOT**—in light of Plaintiff's Amended Complaint (ECF No. 37).

2. Defendants City of Philadelphia, Frank Margerum, Richard Harris, and Kevin Hollinshead's Motion to Dismiss (ECF No. 40), Defendant John Grier's Motion to Dismiss (ECF No. 83), and the Estate Defendants' Motion to Dismiss (ECF No. 91) are **GRANTED**. [1]

**IT IS SO ORDERED.**

**BY THE COURT:**

      */s/ John Milton Younge*
**JUDGE JOHN MILTON YOUNGE**

---

[1] **FACTUAL BACKGROUND:**

Plaintiff Theophalis Wilson describes his case as follows:

> Theophalis Wilson spent over twenty-eight years wrongfully imprisoned for the murders of Kevin Anderson, Gavin Anderson, and Otis Reynolds, crimes he did not commit. After spending decades fighting for his freedom, Mr. Wilson and his co-defendant's efforts finally proved that the only evidence linking Wilson to the crime – the statement of James White, the State's only alleged eyewitness – was fabricated and false. Indeed, White recanted his identification of Mr. Wilson under oath and confirmed that prosecutors and police coerced and fed White a confession of the three homicides in order to implicate Mr. Wilson and his co-defendants in the crimes. In addition to proving Mr. Wilson had no involvement in the murders, the evidence adduced during Mr. Wilson and his co-defendants' post-conviction proceedings revealed their wrongful convictions were not an innocent mistake, but the result of startling misconduct on the part of ADA Desiderio and Philadelphia police officers. However, the misconduct in Mr. Wilson's case was not an isolated incident, but part of a long-standing pattern of investigative misconduct made possible by supervisors and policymakers in the Office of the Philadelphia District Attorney ("OPDA") and the Philadelphia Police Department ("PPD").
>
> Mr. Wilson's conviction was overturned on January 21, 2020, after the OPDA filed a motion to vacate Mr. Wilson's convictions on behalf of the Commonwealth of Pennsylvania, the charges against him were dismissed, and he was finally released.
>
> This civil rights action ensued on May 4, 2021, seeking redress against the City of Philadelphia, and individual police officers of the Philadelphia Police Department, as well as former Assistant District Attorney Desiderio and his supervisor, former District Attorney Lynn Abraham. Mr. Wilson has asserted § 1983 claims against the Officer Defendants for malicious prosecution, fabrication of evidence, and intentional infliction of emotional distress.

(Pl. Mem. in Opp. to Def. Mot. to Dismiss, pp. 2-3, ECF No. 90.)

Plaintiff's specific claims are as follows:

> Count I: Malicious Prosecution, in violation of the Fourth and Fourteenth Amendments, as to all Defendants;
>
> Count II: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating Evidence, Withholding Material Exculpatory and Impeachment Evidence, and Deliberately Failing to Conduct a Constitutionally Adequate Investigation, in Violation of the Fourth and Fourteenth Amendments, as to all Defendants;
>
> Count III: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating and Coercing Evidence and Withholding Material Exculpatory and Impeachment Evidence in Violation of the Fourth and Fourteenth Amendments, as to all Defendants;

>Count IV: Unconstitutional Failure to Intervene, as to all PPD Officers and Supervisors, and former Philadelphia District Attorney Lynne Abraham;
>
>Count V: Civil Rights Conspiracy, as to all Defendant PPD Officers and Supervisors;
>
>Count VI: Supervisory Liability Claim, as to Defendants City of Philadelphia, PPD Supervisors and Former District Attorney Lynne Abraham;
>
>Count VII: *Monell* Claim, Unconstitutional Customs, Policies and Practices, as to the City of Philadelphia;
>
>Count VIII: Malicious Prosecution under Pennsylvania state law, as to all Defendants;
>
>Count IX: Intentional or Reckless Infliction of Emotional Distress under Pennsylvania state law, as to all Defendants.

In response, a number of Defendants filed motions to dismiss centering on the following: (1) failure to establish various Defendants' personal involvement in the relevant murder investigations and ultimate prosecution; (2) invoking qualified immunity as a bar to Plaintiff's constitutional claims; (3) Defendant City of Philadelphia's *Monell* liability; and (4) invoking qualified immunity and the statute of limitations as a bar to Plaintiff's state law tort claims.

## **LEGAL STANDARD:**
The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION:**
In their respective motions to dismiss, Defendants' arguments center on the following four (4) categories: (1) failure to establish various Defendants' personal involvement in the relevant murder investigations and ultimate prosecution; (2) invoking qualified immunity as a bar to Plaintiff's constitutional claims; (3) Defendant City of Philadelphia's *Monell* liability; and (4) invoking qualified immunity and the statute of limitations as a bar to Plaintiff's state law tort claims. This Court will review each category in turn.

### **Personal Involvement**
To start, Defendants Frank Margerum, Richard Harris, Kevin Hollinshead, John Grier, and the Estate Defendants each argue—as a threshold matter—that Plaintiff's claims against them fail because Plaintiff does not sufficiently establish their "personal involvement" in any of the alleged constitutional or tort harms. (Defs. Mots. to Dismiss, pp. 12-13, ECF No. 40; p. 10, ECF No. 83; pp.12-14, ECF No. 93.) After all, "[b]ecause vicarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged

wrongs; liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). In response, Plaintiff notes that he mentions Defendants individually throughout his Amended Complaint, but also notes that he "cannot specifically identify all of the potential misconduct or failures to investigate that occurred by each individual officer"—thus, necessitating the need to refer to "PPD Officers" and the "police."

This Court finds that Plaintiff's pleading approach is not inherently violative of *Iqbal*. As the Eastern District (Pratter, J.) noted:

> [T]he Complaint's tendency to create sub-groups of defendants, such as the "on-scene Defendants," is not a basis for this Court to dismiss for failure to state a claim. While [plaintiff] will ultimately have to prove that each individual defendant violated his constitutional rights to survive summary judgment or succeed at trial, at this [motion to dismiss] stage of the case, before the completion of discovery, it is sufficient for a plaintiff to identify a sub-group of defendants as responsible for particular, stated constitutional wrongs.

*Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 338 (E.D. Pa. 2017); *see also Burgess v. Baltimore Police Dep't*, No. CV RDB-15-0834, 2016 WL 795975, at *10 (D. Md. Mar. 1, 2016) ("The use of 'Officer Defendants' thus does not amount to insufficient group pleading under *Iqbal* and *Twombly*."); *Mincy v. McConnell*, No. C.A. 09-236 ERIE, 2010 WL 3092681, at *3 (W.D. Pa. July 15, 2010), *report and recommendation adopted,* No. CIV.A. 09-236 ERIE, 2010 WL 3092677 (W.D. Pa. Aug. 6, 2010) (finding that although "Plaintiff fails to identify any of the foregoing Defendants by name in the body of the complaint," his "repeated use of the term 'security lieutenants,' in the plural tense, is intended to implicate [the defendants]"—ultimately suggesting that the defendants' motion to dismiss for lack of personal involvement should be denied).

Taken together, this Court declines to dismiss Plaintiff's Complaint for lack of personal involvement—as "[t]he Complaint's allegations provide more than enough…detail to give [Defendants] notice of the nature and basis of the claims against them" and "contains sufficient factual allegations to 'allow[ ] the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 338–39 (E.D. Pa. 2017) (citations omitted).

## **Counts I-IV: Qualified Immunity**

If this Court were to find that Plaintiff pled sufficient facts to show personal involvement, Defendants then argue that a number of Plaintiff's claims—specifically aspects of Counts I-IV of Plaintiff's Complaint—are barred by qualified immunity.

As the Third Circuit instructs, "[q]ualified immunity shields government officials from personal liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *George v. Rehiel*, 738 F.3d 562, 571–72 (3d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Relatedly, "[d]etermining whether a right alleged to have been violated is so clearly established that any reasonable officer would have known of it 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Taken together, "in order to overcome the defense of qualified immunity, [the plaintiff] must allege facts showing that the conduct of each individual federal defendant (1) 'violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Finally, "[t]he established-right prong of a qualified immunity defense does not demand that there had been a precise preview of the applicable legal analysis underlying the defense; rather, 'what is required

is that government officials have 'fair and clear warning' that their conduct is unlawful.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014) (internal citation omitted) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) ("Undertaking the first step of the two-step qualified immunity inquiry, we are persuaded that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. Perhaps because the proposition is virtually self-evident, we are not aware of any prior cases that have expressly recognized this specific right, but that does not mean that there is no such right. Rather, what is required is that government officials have 'fair and clear warning' that their conduct is unlawful.")

With this context, this Court will review each of the four counts in turn to assess whether qualified immunity can be properly invoked.

### A. Count I: Malicious Prosecution (Fourteenth Amendment)

Under Count I, Plaintiff asserts a claim for "Malicious Prosecution, in violation of the Fourth and Fourteenth Amendments, as to all Defendants." (Am. Compl., ¶¶ 270-277, ECF No. 37.)  Defendants only challenge Plaintiff's malicious prosecution claim as it relates to the Fourteenth Amendment.  Upon considering this issue, the Eastern District has determined that whether a claim for malicious prosecution can be brought under the Fourteenth Amendment is not "clearly established."  In 2018, Judge Pratter noted that "[t]his temporal distinction [between the invocation of the Fourth Amendment prior to trial and the invocation of the Fourteenth Amendment during and after trial] suggests that a procedural due process right against malicious prosecution may exist. However, this was, and indeed remains, an unsettled question, meaning that [the plaintiff] fails to overcome the defense of qualified immunity." *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018).  In coming to this conclusion, Judge Pratter reasoned that "[i]t would be strange to say that right *X* is clearly established just because right *Y* is clearly established and happens to prohibit the same conduct. Indeed, precisely *because* right *Y* is clearly established (in this case, precisely *because* a Fourth Amendment right against malicious prosecution is clearly established), [the plaintiff] has a clear avenue to recovery for being the target of a malicious prosecution." *Id.* at 382–83 (emphasis in original).  Similarly, in 2020, Judge Baylson held that, "because the legal landscape on this question is complicated and uncertain, the right was not 'clearly established,' which means that the [defendants] are entitled to qualified immunity…to the extent it relies on the Fourteenth Amendment." *Lewis v. City of Philadelphia*, No. CV 19-2847, 2020 WL 1683451, at *5 (E.D. Pa. Apr. 6, 2020).  This Court agrees with this persuasive authority and concludes that the uncertainty (with respect to whether a malicious prosecution claim applies to the Fourteenth Amendment) entitles Defendants to qualified immunity—with the understanding that Plaintiff's claim will still proceed under the Fourth Amendment.  Thus, Defendants' motions to dismiss Count I (Malicious Prosecution)—as it pertains to and relies on the Fourteenth Amendment—are hereby granted.

### B. Counts II and III: Withholding Exculpatory Evidence

Next, Plaintiff seemingly asserts duplicative claims in Counts II and III for "Deprivation of Liberty without Due Process of Law and Denial of Fair Trial…by Withholding Material Exculpatory and Impeachment Evidence...in Violation of the Fourth and Fourteenth Amendments, as to all Defendants." (Am. Compl., ¶¶ 278-294, ECF No. 37.)  This Court will consolidate and review these claims for purposes of a qualified immunity analysis.

Here, the dispute centers on whether *Brady* obligations extended to police officers during the time of Plaintiff's 1992 arrest and 1993 conviction.  In *Gibson*, the Third Circuit explained that:

> Although this Court held in *United States v. Perdomo,* 929 F.2d 967, 970 (3d Cir. 1991), that evidence in the hands of the police could be imputed to the prosecutor, the Supreme Court did not settle this matter until 1995 when it decided *Kyles v. Whitley,* 514 U.S. at 437, 115 S. Ct. 1555

> ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."). More importantly, the related duty of the police to disclose information to the prosecutor was not widely addressed until later. Even in 2000, this Court was only able to *assume* that police officers "have an affirmative duty to disclose exculpatory evidence to an accused if only by informing the prosecutor that the evidence exists." *Smith v. Holtz,* 210 F.3d 186, 197 n.14 (3d Cir. 2000). Because such a right was not clearly established in this Circuit at the time of Gibson's conviction [in 1994], Troopers Pennypacker and Reilly are entitled to qualified immunity with regard to their failure to inform the prosecutor of *Brady* material.

*Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427, 443–44 (3d Cir. 2005). Following this precedent, courts within the Third Circuit have come to different conclusions. As recently as April 2020, Judge Baylson, "assuming that Third Circuit case law is a source of 'clearly established' rights and obligations," concluded that a detective/police officer's "duty to turn over the exculpatory evidence was not clearly established until the 2005 [*i.e.,* when the Third Circuit decided *Gibson*]." *Lewis v. City of Philadelphia*, No. CV 19-2847, 2020 WL 1683451, at *9 (E.D. Pa. Apr. 6, 2020). However, a number of courts have determined that police officers had *Brady* obligations as early as 1995 when the Supreme Court imposed *Brady* obligations onto prosecutors in *Kyles v. Whitley*. *See, e.g., Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 384 (E.D. Pa. 2018) ("In [*Gibson*], the Third Circuit Court of Appeals held that officers' *Brady* obligations were 'not clearly established at the time of [the plaintiff's] prosecution in 1994.' Those obligations became clearly established in 1995, when the Supreme Court decided [*Kyles v. Whitley*]."); *Thorpe v. City of Phila.*, No. CV 19-5094, 2020 WL 5217396, at *11 (E.D. Pa. Sept. 1, 2020) (citing *Thomas* to conclude that an officer's *Brady* obligations were clearly established as of 1995); *Pierre v. Treasury Dep't*, No. CV 18-3443 (JLL), 2019 WL 2121369, at *6 (D.N.J. May 14, 2019) ("[C]onsidering Plaintiff's prosecution and conviction occurred in 1996, *i.e.*, after the Supreme Court's decision in [*Kyles v. Whitley*], the Court shall not apply qualified immunity to Plaintiff's claims against [the defendant-police officer] to the extent that they relate to a violation *of Brady*.")

Taken together, *Gibson* controls here: Because such a right was not "clearly established" in this Circuit at the time of Plaintiff's conviction on August 6, 1993, Defendants are entitled to qualified immunity with regard to their failure to inform the prosecutor of *Brady* material. Thus, Defendants' motions to dismiss Counts II and III (Withholding Exculpatory Material)—as it pertains to *Brady* violations asserted against Defendants—are hereby granted.

### C. Count II: Constitutionally Inadequate Investigation

Under Count II, Plaintiff mounts a claim, in relevant part, for "Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by…Deliberately Failing to Conduct a Constitutionally Adequate Investigation, in Violation of the Fourth and Fourteenth Amendments, as to all Defendants." (Am. Compl., ¶¶ 278-285, ECF No. 37.)

Judge Pratter has reiterated that, "there is 'no constitutional right to a police investigation.'" *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 386 (E.D. Pa. 2018) (quoting *Whitehead v. City of Philadelphia*, No. CIV.A. 13-2167, 2014 WL 657486, at *2 (E.D. Pa. Feb. 19, 2014)). In fact, the *Whitehead* Court noted that, "[e]ven a negligent police investigation…cannot serve as the basis for a constitutional claim." *Whitehead v. City of Philadelphia*, No. CIV.A. 13-2167, 2014 WL 657486, at *2 (E.D. Pa. Feb. 19, 2014) (referencing *Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3d Cir. 1995) ("whether the officers conducted the investigation negligently is not a material fact" in determining whether a constitutional violation occurred). Additionally, Judge Pratter opined that "[i]t certainly remains to be seen whether there is an independent cause of action under the Fourteenth Amendment for Count 2's claim for 'failing to conduct a constitutionally adequate investigation,' and the Court will not affirmatively recognize

one here at this time. However, to the extent this claim stands for the more general proposition that the Defendants' unconstitutional conduct throughout their investigation interfered with [the plaintiff's] right to a fair trial, then this claim would also be timely pursuant to *Heck*'s deferred accrual rule." *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 332 n.3 (E.D. Pa. 2017). Here, Plaintiff relies on the last sentence of this quote to argue that such a claim could be asserted under the Fourteenth Amendment. (Pl. Mem. in Opp. to Defs. Part. Mot. to Dismiss., p. 29, ECF No. 47.) However, perhaps most telling, Judge Pratter reiterated in *Thomas*—just over a year later—that "the *Court will not affirmatively recognize one here at this time*" (referring to the right to a constitutionally adequate investigation). *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 386 (E.D. Pa. 2018) (emphasis in original) (quoting *Wright v. City of Philadelphia*, 229 F. Supp. at 332 n.3). Relatedly, Judge Kenney similarly concluded, "even if such a right [to a constitutionally adequate investigation] exists, the murkiness of the law makes clear that the right is not clearly established today, nor was it clearly established between 2000 and 2004. Accordingly, we find that Defendants are entitled to qualified immunity on this claim." *Outlaw v. City of Philadelphia*, No. CV 21-1290, 2021 WL 3471168, at *6 (E.D. Pa. Aug. 6, 2021).

Guided by this persuasive guidance, this Court similarly concludes that the murkiness of the law suggests that such a right to a constitutionally adequate investigation was not clearly established in the early 1990s—thereby entitling Defendants to qualified immunity with respect to a right to have a constitutionally adequate investigation. Thus, Defendants' motions to dismiss Counts II—as it pertains to the constitutionally inadequate investigation claims asserted against Defendants—are hereby granted. Despite this Court's determination, it is worth reiterating that the failure to adequately investigate claim could likely still be covered under Plaintiff's malicious prosecution claim under Count I. *See, e.g., Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 386 (E.D. Pa. 2018) (noting how a failure to adequately investigate claim can be captured in a malicious prosecution claim); *Outlaw v. City of Philadelphia*, No. CV 21-1290, 2021 WL 3471168, at *7 (E.D. Pa. Aug. 6, 2021) (same).

### D. Count IV: Failure to Intervene

Under Count IV, Plaintiff asserts a claim of "Unconstitutional Failure to Intervene, as to all PPD Officers and Supervisors." (Am. Compl., ¶¶ 295-298, ECF No. 37.)

However, Judge Robreno highlights potential issues that can arise when defining clearly established rights "at a high level of generality":

> There is no doubt that the vast majority of failure-to-intervene claims involve a situation in which a state actor is present during the oftentimes short-lived moment in which another state actor wrongfully uses physical contact against an individual. This case, on the other hand, invites the Court to consider a potential ongoing duty and opportunity to intervene, which [the plaintiff] contends exists up until the moment of conviction. [The plaintiff] suggests that intervention could come in the form of ensuring that basic investigative steps were taken, a supervisor stopping an investigation, or an officer reporting the fabrication of evidence to a prosecutor.

> [The plaintiff's] counsel conceded during oral argument that, to the best of her knowledge, there are no cases where the Third Circuit Court of Appeals entertains the proposition that the fabrication and withholding of evidence at issue would establish another's duty to intervene. Even so, she argued that any reasonable official would have been put on notice that he or she ought to have intervened to stop conduct which is violating an individual's constitutional rights. However, this line of reasoning runs the risk of defining the clearly established law "at a high level of generality," which the Supreme Court has longed instructed courts not to do.

7

*Thorpe v. City of Phila.*, No. CV 19-5094, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020) (quoting *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018)).

Judge Kenney reiterated this point when he noted:

> [The plaintiff] argues that *Smith*, and the Eleventh, Eighth, and Seventh Circuit cases that *Smith* cites, support imposing a responsibility on the Detective Defendants to have understood that failing to intervene in [the plaintiff's] false arrest, malicious prosecution, false imprisonment and deprivation of liberty was a violation of his constitutional rights. However, our sister court recently rejected a similar argument, explaining that this argument invites courts to define clearly established law "at a high level of generality," which the Supreme Court has longed instructed courts not to do.

*Outlaw v. City of Philadelphia*, No. CV 21-1290, 2021 WL 3471168, at *7 (E.D. Pa. Aug. 6, 2021) (internal citation omitted) (quoting *Thorpe v. City of Phila.*, No. CV 19-5094, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020)).

Similar to *Thorpe*, this Court will not attempt to define clearly established law "at a high level of generality." Similar to *Outlaw*, this Court declines Plaintiff's "invitation to take impermissible liberties in defining the asserted right. As neither our independent research nor [Plaintiff's] briefing identified any cases from our Court of Appeals finding that fabrication, withholding of evidence, and failing to conduct a 'constitutionally sound investigation' would establish a duty to intervene, we find that Defendants are entitled to qualified immunity." *Outlaw v. City of Philadelphia*, No. CV 21-1290, 2021 WL 3471168, at *7 (E.D. Pa. Aug. 6, 2021). Thus, Defendants' motions to dismiss Counts IV (Failure to Intervene) are hereby granted.

### Count VII: *Monell* Liability

Under Count VII, Plaintiff advances a "*Monell* Claim (Unconstitutional Customs, Policies, and Practices of Defendant City of Philadelphia)" against Defendant City of Philadelphia. (Am. Compl., ¶¶ 310-322, ECF No. 37.)

For the City of Philadelphia to be held liable for money damages under § 1983, Plaintiff "must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Further, deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Relatedly, Judge Baylson highlights how "[s]everal courts of appeals have held that if a right is not clearly established, a municipal entity cannot be deliberately indifferent to it." *Lewis v. City of Philadelphia*, No. CV 19-2847, 2020 WL 1683451, at *12 (E.D. Pa. Apr. 6, 2020) (collecting cases).

This Court is persuaded by this guidance. Since the rights at issue with respect to Count I (Fourteenth Amendment Malicious Prosecution), Counts II and III (*Brady* violations), Count II (Constitutionally Inadequate Investigation), and Count IV (Failure to Intervene) were not clearly established during Plaintiff's 1992 arrest and 1993 conviction, Defendant City of Philadelphia could not have been *deliberately indifferent* and cannot be held liable under § 1983. Thus, Plaintiff's *Monell* claims are dismissed (specifically as it pertains to this Court's analysis of those aforementioned Counts I-IV above), but not with respect to Plaintiff's other claims which have not been barred by qualified immunity.

### Counts VIII-IX: State Law Tort Claims

In addition to Plaintiff's federal claims, he also brings state law tort claims. More specifically, under Count VIII, Plaintiff brings a claim for "Malicious Prosecution under Pennsylvania state law, as to all

Defendants." (Am. Compl., ¶¶ 323-327, ECF No. 37.) Under Count IX, Plaintiff asserts a claim for "Intentional or Reckless Infliction of Emotional Distress under Pennsylvania state law, as to all Defendants." (Am. Compl., ¶¶ 328-330, ECF No. 37.)

In response to Counts VIII and IX, Defendant City of Philadelphia cites to *Jenkins*, which instructs that "the Pennsylvania Political Subdivision Tort Claims Act [42 Pa.C.S.A. § 8541] does indeed prevent [the plaintiff] from bringing state law tort claims for false arrest, false imprisonment, and/or malicious prosecution against the City." *Jenkins v. City of Philadelphia*, No. CV 15-3271, 2015 WL 5585186, at *2 (E.D. Pa. Sept. 23, 2015); *see also Agresta v. City of Philadelphia*, 694 F. Supp. 117, 123 (E.D. Pa. 1988) ("[I]t would appear that the plaintiff is bringing tort actions based on false arrest and imprisonment, malicious prosecution, intentional infliction of emotional distress, and assault and battery. As far as the City of Philadelphia is concerned, it is immune from suit for the plaintiff's state law claims. The Political Subdivision Tort Claims Act abrogates the liability of a local agency only for certain narrowly excepted negligent acts."). Taken together, Defendant City of Philadelphia is entitled to qualified immunity with respect to Plaintiff's state law claims for malicious prosecution and IIED. Thus, Defendant City of Philadelphia's motion to dismiss Counts VIII and IX is granted.

Finally, Defendant John Grier seemingly mentions in one sentence of his memorandum that Plaintiff's IIED claim is barred by the two-year statute of limitations. (Def. Grier Mem. of Law in Supp. of Mot. to Dismiss, p. 7, ECF No. 83.) Similarly, the Estate Defendants allude to the IIED claim being barred by the statute of limitations; however, the Estate Defendants seemingly never responded to Plaintiff's counterarguments in its reply brief. (Estate Defs. Mem. of Law in Supp. of Mot. to Dismiss, p. 14, ECF No. 91.) However, Pennsylvania law seemingly instructs that, "[a]n untimely filed claim may be permitted under equitable tolling where the defendant actively misleads the plaintiff regarding the cause of action, where extraordinary circumstances prevent the plaintiff from asserting rights, or where the plaintiff timely asserts rights but in the wrong forum." *Quest Diagnostics Venture, LLC v. Com.*, 119 A.3d 406, 413 n.6 (Pa. Commw. Ct. 2015), *aff'd sub nom. Quest Diagnostics Venture, LLC v. Commonwealth*, 637 Pa. 371, 148 A.3d 448 (2016). Thus, this Court is inclined to allow Plaintiff's IIED claim to proceed under the assumption that extraordinary circumstances—in the form of wrongful incarceration and conviction—prevented Plaintiff from asserting this claim. However, the parties are able to re-raise this statute of limitations issue at the summary judgment stage with additional briefing.

**A SUMMARY OF THE REMAINING CLAIMS:**
Since Defendants Former Assistant District Attorney David Desiderio and Former District Attorney Lynne Abraham did not file a renewed motion to dismiss in light of Plaintiff's Amended Complaint, Plaintiff's claims asserted against them still remain.

In light of this Order, the following claims will proceed to discovery with respect to Defendants City of Philadelphia, Frank Margerum, Richard Harris, Kevin Hollinshead, John Grier, and the Estate Defendants:

> Count I: Malicious Prosecution, in violation of the Fourth, as to all Defendants;
>
> Count II: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating Evidence, in Violation of the Fourth and Fourteenth Amendments, as to all Defendants;
>
> Count III: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating and Coercing Evidence in Violation of the Fourth and Fourteenth Amendments, as to all Defendants;

Count IV: Unconstitutional Failure to Intervene, as to former Philadelphia District Attorney Lynne Abraham;

Count V: Civil Rights Conspiracy, as to all Defendant PPD Officers and Supervisors;

Count VI: Supervisory Liability Claim, as to Defendants City of Philadelphia, PPD Supervisors and Former District Attorney Lynne Abraham;

Count VII: *Monell* Claim, Unconstitutional Customs, Policies and Practices, as to the City of Philadelphia— to the extent that the claims against Defendant City of Philadelphia do not arise out of the claims for which qualified immunity attaches (*i.e.*, Count I: Malicious Prosecution in violation of the Fourteenth Amendment; Count II: Withholding of Evidence and Failing to Conduct a Constitutionally Adequate Investigation; Count III: Withholding of Evidence; and Count IV: Unconstitutional Failure to Intervene);

Count VIII: Malicious Prosecution under Pennsylvania state law, as to all relevant Defendants (except Defendant City of Philadelphia);

Count IX: Intentional or Reckless Infliction of Emotional Distress under Pennsylvania state law, as to all relevant Defendants (except Defendant City of Philadelphia).