## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEOPHALIS (BINKY) WILSON, | : | NO.  2:21-cv-02057-JMY |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | *Electronically Filed* |
| FORMER ASSISTANT DISTRICT | : | |
| ATTORNEY DAVID DESIDERIO, | : | JURY TRIAL DEMANDED |
| FORMER DISTRICT ATTORNEY | : | |
| LYNNE ABRAHAM, ET AL., | : | |
| Defendants | | |

## <u>ORDER</u>

AND NOW, this        day of                   , 2023, upon consideration of the

Motion of Defendants, Former Assistant District Attorney David Desiderio and

Former District Attorney Lynne Abraham, To Dismiss Plaintiff's Amended

Complaint, Memorandum of Law in support, and any response thereto, is hereby

**ORDERED** and **DECREED** that Moving Defendants' Motion to Dismiss Plaintiff's

Amended Complaint is **GRANTED**, and that all claims against Former Assistant

District Attorney David Desiderio and Former District Attorney Lynne Abraham set

forth in Plaintiffs' Amended Complaint are hereby **DISMISSED WITH**

**PREJUDICE**.

BY THE COURT:

_____
                                                        J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THEOPHALIS (BINKY) WILSON, | : | NO.  2:21-cv-02057-JMY |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | *Electronically Filed* |
| FORMER ASSISTANT DISTRICT | : | |
| ATTORNEY DAVID DESIDERIO, | : | JURY TRIAL DEMANDED |
| FORMER DISTRICT ATTORNEY | : | |
| LYNNE ABRAHAM, ET AL., | : | |
| Defendants | | |

## MOTION OF DEFENDANTS, FORMER ASSISTANT DISTRICT ATTORNEY DAVID DESIDERIO AND FORMER DISTRICT ATTORNEY LYNNE ABRAHAM, TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, Former Assistant District Attorney David Desiderio ("ADA Desiderio") and Former District Attorney Lynne Abraham ("DA Abraham")(collectively, "Moving Defendants"), respectfully move for dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof aver as follows:

1.     Plaintiff, Theophalis (Binky) Wilson ("Plaintiff"), commenced this civil rights action on May 4, 2021 by filing a Complaint against ADA Desiderio and DA Abraham, as well as the City of Philadelphia (the "City"), the Philadelphia Police Department (the "Department") and numerous individual police officers.  (ECF 1).

2.     Plaintiff alleges that he was unjustly targeted, arrested, and convicted for a crime he did not commit and has asserted § 1983 claims against ADA Desiderio and DA Abraham for malicious prosecution (Count I) and fabrication of evidence/withholding exculpatory and impeachment evidence (Count II and Count III), a § 1983 claim against DA Abraham for supervisory liability (Count VI), and state law claims against ADA Desiderio and DA Abraham for malicious prosecution (Count VIII) and intentional infliction of emotional distress (Count IX).  (ECF 1).

3.     On October 8, 2021, Moving Defendants filed a Motion to Dismiss Plaintiff's Complaint on the basis that they were entitled to absolute immunity.  (ECF 16).

4.     On December 6, 2021, Plaintiff filed an Opposition to Moving Defendants' Motion to Dismiss Complaint, and on December 28, 2021, Moving Defendants filed a Reply Brief in Support of the Motion to Dismiss Plaintiff's Complaint.  (ECF 21, 29).

5.     Thereafter, on January 18, 2022, Plaintiff filed a Motion for Leave to File an Amended Complaint.  (ECF 35).

6.     In the Motion for Leave, Plaintiff averred that he was amending the Complaint solely for the purpose of naming the proper parties by substituting the name of each deceased individual with such individual's estate's personal representative as the proper party.  (ECF 35).

7.     Notably, in the Motion for Leave, Plaintiff stated: "Although the opposing parties have now fully briefed motions to dismiss, the proposed amendment is not substantive (other than to dismiss Count XI) and will have no impact on those motions."  (ECF 35, ¶ 9).

8.     Plaintiff filed an Amended Complaint on January 24, 2022.  (ECF 37).

9.     Notwithstanding Plaintiff's admission in his Motion for Leave that the amendment had no impact on the pending motions to dismiss, by Order dated March 31, 2023, this Court denied Moving Defendants' Motion to Dismiss Plaintiff's Complaint as moot in light of Plaintiff's Amended Complaint.  (ECF 115).

10.     As a result, Moving Defendants now move to dismiss Plaintiff's Amended Complaint.

11.     Indeed, the allegations and counts in the Amended Complaint are exactly the same as those contained in the original Complaint.  (Compare ECF 1 with ECF 37).

12.     Counts I, II, and III should be dismissed as against ADA Desiderio because he is entitled to absolute immunity.

13.     Counts VIII and IX should also be dismissed as against ADA Desiderio because he is entitled to absolute immunity, or in the alternative, because this Court should decline to exercise supplemental jurisdiction.

14.    Counts I, II, and III should be dismissed as against DA Abraham because the Complaint does not present facts that indicate DA Abraham had any personal involvement in the alleged misconduct directed against Plaintiff or, in the alternative, because DA Abraham is entitled to absolute immunity.

15.    Count VI should also be dismissed against DA Abraham because she is entitled to absolute immunity.

16.    Counts VIII and IX should be dismissed as against DA Abraham because she is entitled to absolute immunity, or in the alternative, because this Court should decline to exercise supplemental jurisdiction.

WHEREFORE, for the reasons set forth in the attached Memorandum of Law, it is respectfully requested that the Moving Defendants' Motion to Dismiss Plaintiff's Amended Complaint be GRANTED.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By:  _____

Joseph J. Santarone, Esquire
Attorney ID:  45723
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2626
jjsantarone@mdwcg.com
Attorney for Defendants, Former Assistant District Attorney David Desiderio and Former District Attorney Lynne Abraham

Date:  <u>April 12, 2023</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEOPHALIS (BINKY) WILSON, | : | NO. 2:21-cv-02057-JMY |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | *Electronically Filed* |
| FORMER ASSISTANT DISTRICT | : | |
| ATTORNEY DAVID DESIDERIO, | : | JURY TRIAL DEMANDED |
| FORMER DISTRICT ATTORNEY | : | |
| LYNNE ABRAHAM, ET AL., | : | |
| Defendants | | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS, FORMER ASSISTANT DISTRICT ATTORNEY DAVID DESIDERIO AND FORMER DISTRICT ATTORNEY LYNNE ABRAHAM, TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, Former Assistant District Attorney David Desiderio ("ADA Desiderio") and Former District Attorney Lynne Abraham ("DA Abraham")(collectively, "Moving Defendants"), by and through their counsel, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them, with prejudice. The grounds upon which this motion are based are set forth below.

## I.      STATEMENT OF PROCEDURE

Plaintiff, Theophalis (Binky) Wilson ("Plaintiff"), commenced this civil rights action on May 4, 2021 by filing a Complaint against ADA Desiderio and DA Abraham, as well as the City of Philadelphia (the "City"), the Philadelphia Police

Department (the "Department") and numerous individual police officers.  (ECF 1).

Plaintiff alleges that he was unjustly targeted, arrested, and convicted for a crime he

did not commit and has asserted § 1983 claims against ADA Desiderio and DA

Abraham for malicious prosecution (Count I) and fabrication of

evidence/withholding exculpatory and impeachment evidence (Count II and Count

III), a § 1983 claim against DA Abraham for supervisory liability (Count VI), and

state law claims against ADA Desiderio and DA Abraham for malicious prosecution

(Count VIII) and intentional infliction of emotional distress (Count IX).  (ECF 1).

On October 8, 2021, Moving Defendants filed a Motion to Dismiss Plaintiff's

Complaint on the basis that they were entitled to absolute immunity.  (ECF 16).  On

December 6, 2021, Plaintiff filed an Opposition to Moving Defendants' Motion to

Dismiss Complaint, and on December 28, 2021, Moving Defendants filed a Reply

Brief in Support of the Motion to Dismiss Plaintiff's Complaint.  (ECF 21, 29).

Thereafter, on January 18, 2022, Plaintiff filed a Motion for Leave to File an

Amended Complaint.  (ECF 35).  In the Motion for Leave, Plaintiff averred that he

was amending the Complaint solely for the purpose of naming the proper parties by

substituting the name of each deceased individual with such individual's estate's

personal representative as the proper party.  (ECF 35).  Notably, in the Motion for

Leave, Plaintiff stated: "Although the opposing parties have no fully briefed motions

to dismiss, the proposed amendment is not substantive (other than to dismiss Count XI) and will have no impact on those motions."  (ECF 35, ¶ 9).

Plaintiff filed an Amended Complaint on January 24, 2022.  (ECF 37).

Notwithstanding Plaintiff's admission in his Motion for Leave that the amendment had no impact on the pending motions to dismiss, by Order dated March 31, 2023, this Court denied Moving Defendants' Motion to Dismiss Plaintiff's Complaint as moot in light of Plaintiff's Amended Complaint.  (ECF 115).

As a result, Moving Defendants now move to dismiss Plaintiff's Amended Complaint.

## II.  **STATEMENT OF FACTS**

The allegations from the Amended Complaint, which are exactly the same as those contained in the original Complaint, viewed in a light most favorable to Plaintiff[1], provide as follows: Between September 25, 1989 and September 26, 1989, Kevin Anderson ("Kevin"), Gavin Anderson ("Gavin"), and Otis Reynolds ("Otis")(collectively, the "Victims") were all shot and killed several hours apart and within a two mile radius of each other.  (ECF 37, at ¶ 3, 52-54, 69-70, 75-76).  The

---

[1] While the Court must accept all factual allegations as true when ruling on a motion to dismiss under Rule 12(b)(6), ADA Desiderio and DA Abraham specifically deny that the factual recitation in the Amended Complaint accurately represents the factual history of events giving rise to this litigation.  ADA Desiderio and DA Abraham will specifically challenge Plaintiff's recitation of facts and defend their interests from all claims asserted by Plaintiff if the relief sought in this Motion is not granted.

officers investigating the three murders quickly concluded they were related and likely committed by the same perpetrator(s).  (ECF 37, at ¶ 3, 93).

The officers also determined that the Victims were involved in gang activities and feuds.  (ECF 37, at 89-90, 92).  Kevin and Gavin were close associates of Otis, and the Victims were associated with a gang, the Jamaican Shower Posse, which was feuding with another gang, the Junior Black Mafia, in the North Philadelphia area.  (ECF 37, at ¶ 3, 5).  Only weeks before the murders, the Victims were involved in shootouts and disputes over drug territory, along with Noel Grierson ("Steplight"), a drug dealer who is also a member of the Jamaican Shower Posse and a former business associate of the Victims.  (ECF 37, at ¶ 4-5, 90, 94-110).  Based on their knowledge of this involvement, the Department convened a multi-unit investigation into the Victims' murders, from which a detective was assigned to specifically investigate Steplight, and identified Steplight as a prime suspect.  (ECF 37, at ¶ 111-120).  However, the information obtained from the task force's investigation and the identification of Steplight as a prime suspect was withheld until at least 2019.  (ECF 37, at ¶ 111, 116, 120).

In addition, numerous eyewitnesses gave statements, some of which identified vehicles and individuals who were allegedly involved.  (ECF 37, at 53, 56, 64-65, 71-72, 79-81, 83-84).  Yet despite despite eyewitness accounts, forensic and ballistic evidence, and police knowledge of the Victims' gang relations, activities and

enemies, the Department arrested no suspects for two years.  (ECF 37, at ¶ 6, 121-140).

At the time of the investigation, James White ("White"), an informant, was serving 10-20 years in prison for two prior unrelated murders which he confessed to committing.  (ECF 37, at ¶ 7, 142-143).  As part of his plea deal with ADA Desiderio for the prior murders, White implicated himself, Chris Williams ("Williams") and Rick Bennett ("Bennett") in those prior murders.  (ECF 37, at ¶ 7, 144-151).

In September 1991, two years after the murder of the Victims, an informant incarcerated with White reported to ADA Desiderio that White admitted to the Victims' murders while in prison, but withheld this information when making his original plea deal.  (ECF 1, at ¶ 8, 153).  As a result, ADA Desiderio revoked White's plea deal and charged White with the Victims' murders.  (ECF 37, at ¶ 9, 155-156).  Although White told ADA Desiderio he had no involvement in the Victims' murders, ADA Desiderio threatened to use White's previous statements against him and promised to seek the death penalty unless White implicated Williams in the Victims' murders.  (ECF 37, at ¶ 9, 156).  ADA Desiderio then "coerced" White into making a new plea deal whereby White would plead guilty to six murders and, in return for his testimony against Williams and others involved, White would receive a life sentence, but would receive a pardon after 15 years because ADA Desiderio would guarantee a hearing and put a letter in White's prison file.  (ECF 37, at ¶ 158).

Because of ADA Desiderio's threats of the death penalty and promises of an early release, White agreed to lie, and ADA Desiderio and Department officers then allegedly fed White relevant information about the crimes, fabricated a narrative of the shootings based off of White's prior confessions in other cases, and showed him photographs of the Victims to make his story appear credible.  (ECF 37, at ¶ 10, 160).

On November 4, 1991, White made his only statement to police about the Victims' murders in which he implicated himself, Williams, Bennett, and individuals named "Steve," "Opie," and "Binky" in a robbery gone wrong.  (ECF 37, at ¶ 161). Specifically, Williams, with with no witnesses, killed one Victim for failing to give Williams more money, and then later, in the presence of White and Bennett, killed the other two victims in a moving van, after which their bodies were thrown onto the street.  (ECF 37, at ¶ 162).  "Binky" was not present for the murders but instead allegedly followed White, Bennett and Williams in another vehicle.  (ECF 37, at ¶ 162).  One week later, White identified "Binky" from a group of 21 photographs as Plaintiff.  (ECF 37, at ¶ 167).  This remains the only evidence linking Plaintiff to the Victims' murders as no eyewitness account, physical or forensic evidence ever implicated Plaintiff.  (ECF 37, at ¶ 4, 12, 141, 167).

On December 19, 1991, upon request, Plaintiff voluntarily went to the Department to discuss the Victims' murders, at which time, Department detectives

and officers told Plaintiff they only wanted Williams and if Plaintiff cooperated he would not be charged with any crimes.  (ECF 37, at ¶ 170).  The next day, Plaintiff went to ADA Desiderio's office where ADA Desiderio threatened Plaintiff with prosecution if Plaintiff did not implicate Williams in the crimes to which White had already confessed and in which White had already implicated Plaintiff.  (ECF 37, at ¶ 171).  After Plaintiff informed ADA Desiderio he did not know White and had no knowledge of any murders, ADA Desiderio allegedly told Plaintiff he would be prosecuted if he did not cooperate in implication Williams even though ADA Desiderio knew Plaintiff did not commit the crimes.  (ECF 37, at ¶ 171).

Plaintiff was arrested in February 1992.  (ECF 37, at ¶ 13, 172).  On August 6, 1993, Plaintiff, Williams and Bennett were tried for the Victims' murders as co-defendants.  (ECF 37, at ¶ 177).  Based on fabricated testimony elicited by ADA Desiderio, Plaintiff and Williams were convicted of first-degree murder, robbery, conspiracy, possession of an instrument of crime and violating the state corrupt organization act.  (ECF 37, at ¶ 178-188).  Williams was sentence to death, while Plaintiff was sentenced to life in prison.  (ECF 37, at ¶ 188).

Plaintiff and Williams continuously sought to prove their innocence since their 1993 convictions.  (ECF 37, at ¶ 191).  In 2013, Williams was granted a new trial following an evidentiary hearing during which White recanted his trial testimony and testified that he was coerced by ADA Desiderio and Department

officers to lie about the murders and testify against Williams and Plaintiff.  (ECF 37, at ¶ 192-196, 200).

In 2017, after Plaintiff's case was remanded back to the trial court for resentencing, the DA's office turned over a redacted copy of the Department's homicide investigation files which contained exculpatory information that had not previously been disclosed.  (ECF 37, at ¶ 201-202).  In addition, the District Attorney's Conviction Integrity Unit ("CIU") began a review of Plaintiff's case during which Plaintiff was provided with a copy of the DA's office prosecution file, which also contained material and exculpatory evidence not previously disclosed. (ECF 37, at ¶ 203-204).  As a result of reviewing these files, Plaintiff asserted various Brady claims alleging that the prosecutors and police withheld material and exculpatory evidence supporting alternate theories and suspects and evidence that undermined the theory of the crime presented at trial.  (ECF 37, at ¶ 202, 206-209).  After the CIU and the Commonwealth both filed motions to vacate Plaintiff's convictions, the charges were dismissed and Plaintiff was released on January 21, 2020.  (ECF 37, at ¶ 210-211).

ADA Desiderio and DA Abraham now move to dismiss the claims asserted against them for the reasons that follow.

## III.   STATEMENT OF QUESTIONS

1.     Should Plaintiff's § 1983 claims contained in Counts I, II and III be dismissed against ADA Desiderio because he is entitled to absolute immunity and should Plaintiff's state law claims contained in Counts VIII and IX be dismissed against ADA Desiderio because he is entitled to absolute immunity, or in the alternative, because this Court should decline to exercise supplemental jurisdiction?

**Suggested answer:  Yes.**

2.     Should Plaintiff's § 1983 claims contained in Counts I, II and III be dismissed against DA Abraham because the Complaint does not present facts that indicate DA Abraham had any personal involvement in the alleged misconduct directed against Plaintiff and because DA Abraham is entitled to absolute immunity, should Plaintiff's § 1983 claim contained in Count VI be dismissed against DA Abraham because she is entitled to absolute immunity, and should Plaintiff's state law claims contained in Counts VIII and IX be dismissed against DA Abraham because she is entitled to absolute immunity, or in the alternative, because this Court should decline to exercise supplemental jurisdiction?

**Suggested answer:  Yes.**

## IV.    ARGUMENT

### A.    Standard of Review

When considering a motion to dismiss, the court may dismiss the claim if it appears beyond a reasonable doubt that the plaintiff cannot prove those set of facts in support of a claim which would entitle him to relief.  Labove v. Lalley, 809 F.2d. 220 (3d Cir. 1987).   To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

Although a plaintiff is entitled to all reasonable inferences from well-plead allegations, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  The court also need not accept as true "unsupported conclusions and unwarranted inferences." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-184 (3d Cir. 2000).

### B.    Plaintiff's Claims Against ADA Desiderio Should Be Dismissed

Plaintiff has asserted § 1983 claims against ADA Desiderio for malicious prosecution (Count I) and fabrication of evidence/withholding exculpatory and impeachment evidence (Count II and Count III) and state law claims for malicious

prosecution (Count VIII) and intentional infliction of emotional distress (Count IX). (ECF 37).  However, Counts I, II, and III should be dismissed as against ADA Desiderio because he is entitled to absolute immunity.  Counts VIII and IX should also be dismissed as against ADA Desiderio because he is entitled to absolute immunity, or in the alternative, because this Court should decline to exercise supplemental jurisdiction.

**1.**    **Counts I, II and III of the Amended Complaint should be dismissed because ADA Desiderio is entitled to absolute immunity**

In Counts I, II, and III, Plaintiff alleges claims against ADA Desiderio pursuant to § 1983 based on his alleged fabrication of evidence, withholding and suppression of exculpatory and impeachment evidence, and fabrication of a false confession.  However, Counts I, II and III must be dismissed against ADA Desiderio because ADA Desiderio is entitled to absolute immunity.

Section 1983 provides a civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must demonstrate that "some person has deprived him of a federal right…[and] that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980).  The United States Supreme Court has held that certain officials "functioning as integral parts of the judicial process" are absolutely immune from

civil suits under § 1983.  Ernst v. Child and Youth Services of Chester County, 108 F.3d 486, 494 (3d Cir. 1997).

In Imbler v. Pachtman, 424 U.S. 409 (1976), the Court held that prosecutors are absolutely immune from suits under § 1983 when they perform judicial or quasi-judicial acts that are integral parts of the judicial process.  In reaching that decision, the Court relied on numerous public policy considerations, including:

> [S]uits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."

Burns v. Reed, 500 U.S. 478, 485–486 (1991)(citing Imbler, 424 U.S. at 425, 427-428).  In addition, without absolute immunity, the fairness of the criminal justice system might be weakened by clouding post-conviction review with "the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment."  Imbler, 424 U.S. at 427.  While recognizing that absolute immunity might leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of his liberty, the

Court found the alternative of qualifying a prosecutor's immunity would disserve the broader public interest.  Id.  The Court also noted that absolute immunity would not leave criminal defendants without any means to punish or deter unconstitutional conduct because there are other checks on prosecutorial misconduct, including the criminal law and professional discipline.  Id. at 429.  As a result, the Court held that absolute immunity attaches to all actions performed by a prosecutor in a "quasi-judicial" role, which includes activity taken while in court, as well as selected out of court behavior "intimately associated with the judicial phase" of the criminal process.  Id. at 430.

"The decision to initiate a prosecution is at the core of a prosecutor's judicial role."  Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992).  Therefore, a prosecutor will enjoy absolute immunity for his actions on behalf of the state in preparing for, initiating, and prosecuting criminal charges, even when those charges are initiated maliciously, unreasonably, or without probable cause.  See Rose v. Bartle, 871 F.2d 331, 347 n.12 (3d Cir. 1989); Joseph v. Patterson, 795 F.2d 549, 557 (6th Cir. 1986), cert. denied, 481 U.S. 1023 (1987).  Courts have found that the duties of a prosecutor in his role as advocate for the state involve actions apart from the courtroom, such as the preparation necessary to present a case which includes obtaining, reviewing, and evaluating evidence.  Schrob v. Catterson, 948 F.2d 1402, 1414 (3d Cir. 1991).

In determining whether particular actions of government officials fit within absolute immunity, courts apply a "functional approach" which looks to "the nature of the function performed, not the identity of the actor who performed it." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).  The Third Circuit has rejected bright-line rules that would treat the timing of the prosecutor's action (e.g. pre- or postindictment), or its location (i.e. in- or out-of-court), as dispositive.  See Rose, 871 F.2d at 346; Kulwicki, 969 F.2d at 1463.  Post–Imbler decisions have generally upheld prosecutorial immunity in cases involving the initiation of a prosecution, the indictment or filing of charges against an individual, and the failure to properly investigate before initiating a prosecution.  Schrob v. Catterson, 948 F.2d 1402, 1410–11 (3d Cir. 1991)(citing Rose, 871 F.2d at 345 & n. 12; Henzel v. Gerstein, 608 F.2d 654, 657 (5th Cir.1979); Wilkinson v. Ellis, 484 F. Supp. 1072, 1081 (E.D. Pa. 1980); Coggins v. Carpenter, 468 F. Supp. 270, 283-284 (E.D. Pa. 1979)).  Other activities which have been found to be protected by absolute immunity include making false statements in judicial proceedings and eliciting knowingly false testimony from witnesses, see Burns, 500 U.S. at 490; Tate v. Grose, 412 F. Supp. 487, 488 (E.D. Pa. 1976), procuring and soliciting false testimony for use in grand jury proceedings, see Rose, 871 F.2d at 344-345, and obtaining a false statement from a  jailhouse informant who received a reduced sentence and other incentives for the false testimony, see Yarris v. County of Delaware, 465 F.3d 129, 139 (3d Cir.

2006).  Generally, actions relating to a prosecutor's handling and presentation of evidence are squarely within a prosecutor's advocacy function—and thus entitled to absolute immunity.  See Henderson v. Fisher, 631 F.2d 1115, 1120 (3d Cir. 1980)("The handling of evidence is clearly within the sweep of 'initiating and presenting the State's case', and the prosecutor is immune from Section 1983 liability for such decisions.").  This absolute immunity extends even to claims that prosecutors have deliberately withheld exculpatory evidence.  See Segers v. Williams, 12 F. Supp. 3d 734, 739 (E.D. Pa. 2014).

Here, each of Plaintiff's claims against ADA Desiderio all involve actions taken by ADA Desiderio in preparing for, initiating, and prosecuting criminal charges.  Specifically, Plaintiff's malicious prosecution claim contained in Count I is based on allegations that ADA Desiderio violated his constitutional rights and prosecuted him without probable cause by "fabricat[ing] inculpatory evidence and intentionally or recklessly with[holding] and misrepresent[ing] exculpatory facts that they knew would have vitiated probable cause against [Plaintiff] and they knew would have impeached witnesses for prosecution at trial" which caused his continued prosecution. (ECF 37, at ¶ 272).   Similarly, in Counts II and III, Plaintiff asserts virtually identical claims for fabricating evidence and withholding exculpatory and impeachment evidence based on allegations that ADA Desiderio deprived him of his right to a fair trial by "fabricating false inculpatory evidence by

way of White's confessions…fabricating false evidence to support the coerced and false confession; suppressing exculpatory evidence that would have contradicted the false confessions and impeached prosecution witnesses, and instead followed through with the unlawful prosecution of [Plaintiff]," by "withholding material exculpatory and impeachment evidence from the defense…," by "suppress[ing] exculpatory statements and material they knew would tend to show [Plaintiff] was innocent…," by "coerc[ing] White to fabricate a false confession" and "us[ing] this coerced statement against [Plaintiff] in his criminal case", by "suppress[ing] critical impeachment evidence that would have contradicted or impeached numerous witnesses who testified against [Plaintiff]," by "fabricat[ing] White's false testimony and suppress[ing] exculpatory evidence of alternate suspects that would have contradicted and impeached White's testimony at trial," and by "suppressing evidence regarding a previous informant relationship." (ECF 37, at ¶ 280-282, 287-288, 290).   However, as discussed above, courts have routinely held that a prosecutor's procurement, solicitation and presentation of perjured testimony, handling and presentation of evidence, and withholding exculpatory evidence are all actions which fall squarely within a prosecutor's advocacy function and are quintessential advocacy acts protected by absolute immunity.  See Burns, 500 U.S. at 490; Rose, 871 F.2d at 344-343; Henderson, 631 F.2d at 1120; Yarris, 465 F.3d at 139; Segers, 12 F. Supp. 3d at 739; Tate, 412 F. Supp. at 488; see also Quintana

v. City of Philadelphia, 2017 WL 3116265, *7-8 (E.D. Pa. July 21, 2017)(finding individual district attorney and assistant district attorneys were entitled to absolute immunity for plaintiff's claims that prosecutors charged him with attempted rape and murder despite knowing their evidence was insufficient and false, disregarded the differences in the victim's physical description of her attacker and the plaintiff, failed to disclose discovery, conspired to wrongfully convict the plaintiff despite ample evidence to the contrary, and conspired to present false testimony at the plaintiff's trial).

Furthermore, Plaintiff's claims are not saved merely because he alleged that one specific action taken by ADA Desiderio – i.e. the coercion of White's confession – was "an investigative function normally performed by a detective or police officer as no prosecution or arrest had been instigated at the time of the unconstitutional conduct." (ECF 37, at ¶ 289). As the Third Circuit has indicated, "the mere invocation of the catch-word 'investigatory'…cannot suffice…to forestall dismissal on immunity grounds." Rose, 871 F.2d at 344. In addition, the timing of the prosecutor's action (e.g. pre- or postindictment) is not dispositive. See Rose, 871 F.2d at 346; Kulwicki, 969 F.2d at 1463.

Finally, Plaintiff repeatedly emphasizes that the conduct of Defendants, including ADA Desiderio, was allegedly admitted to be a violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), presumably to attempt to strengthen his claims.

(ECF 1, at ¶ 208, 218, 222-223, 229, 290).  Nevertheless, absolute immunity extends

even to claims that prosecutors have deliberately withheld exculpatory evidence.

See Segers, 12 F. Supp. 3d at 739; Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir.

2003)("A prosecutor's decision not to preserve or turn over exculpatory material

before trial, during trial, or after conviction is a violation of due process under

Brady...It is, nonetheless, an exercise of the prosecutorial function and entitles the

prosecutor to absolute immunity from a civil suit for damages.").

Because each of the improper acts attributed to ADA Desiderio occurred

while he was serving as an advocate during a judicial proceeding, ADA Desiderio is

entitled to absolute immunity from Plaintiff's § 1983 claims asserted against him in

Counts I, II and III.

> ### 2.   Counts VIII and IX of the Amended Complaint should be dismissed because ADA Desiderio is entitled to absolute immunity or, in the alternative, because this Court should decline to exercise supplemental jurisdiction

In Counts VIII and IX, Plaintiff alleges state law claims against ADA

Desiderio for malicious prosecution and intentional infliction of emotional distress.

However, Counts VII and IX must be dismissed against ADA Desiderio because

ADA Desiderio is entitled to absolute immunity or, in the alternative, because this

Court should decline to exercise supplemental jurisdiction.

First, ADA Desiderio is also entitled to absolute immunity with respect to

Plaintiff's state law tort claims.  It has long been held in Pennsylvania that high public

officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties.  <u>Durham v. McElynn</u>, 772 A.2d 68, 69-70 (Pa. 2001).  The rationale for applying the privilege was set forth as follows:

> Even though the innocent may sometimes suffer irreparable damage, it has been found to be in the public interest and therefore sounder and wiser public policy to "immunize" public officials, for to permit slander, or libel, or malicious prosecution suits, where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment-proof public officials from performing their official duties and would thus often hinder or obstruct justice and allow many criminals to go unpunished.

<u>Matson v. Margiotti</u>, 88 A.2d 892, 899-900 (Pa. 1952); <u>see</u> <u>also</u> <u>Montgomery v. Philadelphia</u>, 140 A.2d 100, 103 (Pa. 1958)(absolute immunity removes any inhibitions that might deprive the public of the best service of its high officials).

The Pennsylvania Supreme Court has extended absolute immunity to assistant district attorneys.  <u>Durham</u>, 772 A.2d at 70.  As the court stated, assistant district attorneys "are essential to district attorneys in fulfilling responsibilities of their high public offices, to wit, in carrying out the prosecutorial function.  To subject assistant district attorneys acting on behalf of the district attorney to liability would deter all but the most courageous and most judgment-proof from vigorously performing their prosecutorial functions, and would inevitably result in criminals going unpunished."  <u>Id.</u>

Because absolute immunity applies to assistant district attorneys, Plaintiff's state law tort claims for malicious prosecution and intentional infliction of emotional district must be dismissed.  See Matson, 88 A.2d at 899-900 (stating public officials should be immunized for malicious prosecution suits); Feldman v. Hoffman, 107 A.3d 821, 836 (Pa. Cmwlth. 2014)(affirming dismissal of claim for intentional infliction of emotional distress on the basis of absolute immunity).

In the alternative, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  Whether this Court will exercise supplemental jurisdiction is within its sound discretion.  Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009).  Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of factors indicates that the remaining claims properly belong in state court.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)(holding that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); City of Pittsburgh Com'n. on Human Relations v. Key Bank USA, 163 Fed. Appx. 163, 166 (3d Cir. 2006)("[The Supreme Court has] stated that when federal claims are dismissed at an early stage, the exercise of pendent jurisdiction should be declined."); Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)("This Court has recognized that, where the claim over which the district court has original

jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and 'fairness to the parties provide an affirmative justification for doing so.'").

As discussed extensively above, Plaintiff's federal claims asserted against ADA Desiderio are barred by absolute immunity and should be dismissed with prejudice. Consequently, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims for malicious prosecution and intentional infliction of emotional distress asserted against ADA Desiderio.

### C. Plaintiff's Claims Against DA Abraham Should Be Dismissed

Plaintiff has asserted § 1983 claims against DA Abraham for malicious prosecution (Count I), fabrication of evidence/withholding exculpatory and impeachment evidence (Count II and Count III), and supervisory liability (Count VI), and state law claims for malicious prosecution (Count VIII) and intentional infliction of emotional distress (Count IX). (ECF 37). However, Counts I, II, and III should be dismissed as against DA Abraham because the Complaint does not present facts that indicate DA Abraham had any personal involvement in the alleged misconduct directed against Plaintiff or, in the alternative, because DA Abraham is entitled to absolute immunity. Count VI should also be dismissed against DA Abraham because she is entitled to absolute immunity. Finally, Counts VIII and IX should be dismissed as against DA Abraham because she is entitled to absolute

immunity, or in the alternative, because this Court should decline to exercise supplemental jurisdiction.

        1.      **Counts I, II and III of the Amended Complaint should be dismissed because the Amended Complaint does not present facts that indicate DA Abraham had any personal involvement in the alleged misconduct directed against Plaintiff or, in the alternative, because DA Abraham is entitled to absolute immunity**

In Counts I, II, and III, Plaintiff alleges claims against all Defendants, including DA Abraham, pursuant to § 1983 based on their alleged fabrication of evidence, withholding and suppression of exculpatory and impeachment evidence, and fabrication of a false confession. However, Counts I, II and III must be dismissed against DA Abraham because the Amended Complaint does not present facts that indicate DA Abraham had any personal involvement in the alleged misconduct directed against Plaintiff or, in the alternative, because DA Abraham is entitled to absolute immunity.

To be individually liable under § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201 (3d Cir. 2000)("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). Personal involvement can be shown through

allegations of personal direction or of actual knowledge and acquiescence, which must be made with appropriate particularity." Rode, 845 F.2d at 1207.

These principles apply with equal force where the defendant is a supervising official. See e.g. Rode, 845 F.2d at 1207 (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986); Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990).

Here, Plaintiff presents no facts suggesting that DA Abraham had knowledge of or personal involvement in any decision to fabricate evidence against Plaintiff, to withhold or suppress exculpatory and impeachment evidence that would have shown Plaintiff was innocent of the Victims' murders, or to fabricate/coerce White's false confession against Plaintiff.  Furthermore, the fact that DA Abraham was in a supervisory position does not, standing alone, establish her liability. DeBellis, 166 F. Supp. 2d at 277; see also Regan v. Township of Lower Merion, 1999 WL 999381,

*5 (E.D.Pa. Oct. 28, 1999)("[C]onstructive knowledge by virtue of being the supervisor of subordinates who may have actual knowledge is not sufficient to support liability under § 1983."). Because the Amended Complaint does not present facts that indicate DA Abraham had any personal involvement in the alleged misconduct directed against Plaintiff, Plaintiff's individual capacity claims against DA Abraham contained in Counts I, II and III are insufficient and fail as a matter of law. See Segers v. Williams, 12 F. Supp. 3d 734, 740 n.8 (E.D. Pa. 2014); see also Rode, 845 F.2d at 1207-1208 (retaliatory harassment claim against Governor Thornburgh was precluded by the plaintiff's failure to allege knowledge and acquiescence with the required particularity and by her failure to show that the Governor had the necessary personal knowledge to sustain the civil rights action as to him); DeBellis v. Kulp, 166 F. Supp. 2d 255, 277 (E.D. Pa. 2001)(dismissing claims where plaintiff did not allege that either the Police Chief or the Mayor personally directed the officers to apprehend the plaintiff or to use force in so doing).

Even if this Court somehow determines that Plaintiff has adequately alleged the personal involvement of DA Abraham in the alleged fabrication of evidence, withholding and suppression of exculpatory and impeachment evidence, and fabrication of a false confession asserted in Counts I, II and III, for same reasons discussed above with regard to ADA Desiderio, DA Abraham would be entitled to absolute immunity. As discussed above, each of Plaintiff's claims contained in

Counts I, II and III involve actions taken in preparing for, initiating, and prosecuting criminal charges. (ECF 37, at ¶ 272, 280-282, 287-288, 290). Courts have routinely held that a prosecutor's procurement, solicitation and presentation of perjured testimony, handling and presentation of evidence, and withholding exculpatory evidence are all actions which fall squarely within a prosecutor's advocacy function and are quintessential advocatory acts protected by absolute immunity. See Burns, 500 U.S. at 490; Rose, 871 F.2d at 344-343; Henderson, 631 F.2d at 1120; Yarris, 465 F.3d at 139; Segers, 12 F. Supp. 3d at 739; Tate, 412 F. Supp. at 488; Quintana, 2017 WL 3116265 at *7-8. Because each of the improper acts alleged in Counts I, II and III during a judicial proceeding, DA Abraham is entitled to absolute immunity from Plaintiff's § 1983 claims asserted against her in Counts I, II and III.

### 2. Count VI of the Amended Complaint should be dismissed because DA Abraham is entitled to absolute immunity

In Count VI, Plaintiff has asserted a § 1983 claim against DA Abraham for supervisory liability. However, Counts VI must be dismissed against DA Abraham because she is entitled to absolute immunity.

The Third Circuit has recognized two theories of supervisory liability: one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced

in their subordinates' violations.  Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016).  However, where the alleged failure to supervise was directly connected to conduct at trial, absolute immunity will apply.

In Van de Kamp v. Goldstein, 555 U.S. 335 (2009), the plaintiff sued a former district attorney and former chief deputy district attorney alleging that they violated their constitutional obligation to provide his attorney with impeachment-related information because they failed to adequately train and supervise deputy district attorneys on that subject.  The Court concluded that prosecutors involved in such supervision or training enjoy absolute immunity from the kind of legal claims alleged because the claims focused upon an obligation that itself is directly connected with the conduct of a trial and involved activities which necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision.  Id. at 343-344.  To conclude otherwise would allow a trial prosecutor to remain immune, even for intentionally failing to turn over material information while allowing her supervisor to be sued for negligent training or supervision.  Id. at 347.  This type of "practical anomaly[ ]" was unacceptable to the Court.  Id.

Here, Plaintiff's supervisory liability claims against DA Abraham is based on her alleged failure to adequately supervise, discipline or train ADA Desiderio which resulted in him fabricating inculpatory evidence, failing to disclose exculpatory

evidence, coercing false testimony and causing Plaintiff to be prosecuted without probable cause.  (ECF 37, at ¶ 305-308).  These claims relating to DA Abraham's alleged failure to train or supervise her subordinates and her alleged creation of policies which resulted in the alleged misconduct by prosecutors is protected by absolute immunity because they are directly connected with the conduct of a trial.  See Quintana, 2017 WL 3116265, at *7–8 (finding district attorney entitled to absolute immunity on plaintiff's claims that district attorney knew and acquiesced in the behavior of the assistant district attorneys, developed and maintained polices or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, and failed to supervise and train his assistant district attorneys); Segers v. Williams, 12 F. Supp. 3d 734, 740-741 (E.D. Pa. 2014)(finding district attorney immune from plaintiff's claim that district attorney failed to adequately supervise or train the ADAs in transferring exculpatory evidence to defendants because this supervisory task "concern[ed] how and when to make impeachment information available at a trial[,]" so that it was "directly connected with [a] prosecutor's basic trial advocacy duties")(citing Van de Kamp, 555 U.S. at 346)).  As a result, Count VI must be dismissed.

**3.      Counts VIII and IX of the Amended Complaint should be dismissed because DA Abraham is entitled to absolute immunity or, in the alternative, because this Court should decline to exercise supplemental jurisdiction**

In Counts VIII and IX, Plaintiff alleges state law claims against DA Abraham for malicious prosecution and intentional infliction of emotional distress.  However, Counts VII and IX must be dismissed against DA Abraham because DA Abraham is entitled to absolute immunity or, in the alternative, because this Court should decline to exercise supplemental jurisdiction.

First, as discussed above with respect to ADA Desiderio, DA Abraham is also entitled to absolute immunity with respect to Plaintiff's state law tort claims.  Absolute immunity for state law tort actions has been extended to district attorneys.  See McCormick v. Specter, 275 A.2d 688 (Pa. Super. 1971); Mosley v. Observer Publishing Co., 619 A.2d 343 (Pa. Super. 1993), appeal denied, 629 A.2d 1382 (Pa. 1993).  The public interest requires that district attorneys be able to carry out their duties without being hampered by civil suits claiming damages for actions taken in their official capacities because the public would suffer if the prosecution of criminals were impeded, as would be the case if district attorneys were not accorded absolute immunity.  Durham, 772 A.2d at 70.  Because absolute immunity applies to district attorneys, Plaintiff's state law tort claims for malicious prosecution and intentional infliction of emotional district must be dismissed against DA Abraham.  See Matson, 88 A.2d at 899-900 (stating public officials should be immunized for

malicious prosecution suits); <u>Feldman</u>, 107 A.3d at 836 (affirming dismissal of claim for intentional infliction of emotional distress on the basis of absolute immunity).

In the alternative, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  It is within this Court's discretion whether it will exercise supplemental jurisdiction.  <u>Kach</u>, 589 F.3d at 650.  "Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995); <u>see</u> <u>also</u> <u>Cohill</u>, 484 U.S. at 350; Gibbs, 383 U.S. at 726; <u>Hedges</u>, 204 F.3d at 123.  As discussed extensively above, Plaintiff's federal claims asserted against DA Abraham are barred by absolute immunity and should be dismissed with prejudice.  Consequently, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims for malicious prosecution and intentional infliction of emotional distress asserted against DA Abraham.  See <u>Segers</u>, 12 F. Supp. 3d at 741 (declining to exercise supplemental jurisdiction over plaintiff's state tort claims against the district attorney defendant because the court was granting the district attorney defendant's motion to dismiss each of the federal claims against him).

V.    **CONCLUSION**

Based upon the foregoing, ADA Desiderio and DA Abraham respectfully request that their Motion to Dismiss Plaintiff's Amended Complaint be granted and that an Order be entered dismissing all claims against them.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By: _____

Joseph J. Santarone, Esquire
Attorney ID:  45723
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2626
jjsantarone@mdwcg.com
Attorney for Defendants, Former Assistant District Attorney David Desiderio and Former District Attorney Lynne Abraham

Date:  April 12, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph J. Santarone, Jr., Esquire hereby certify that a true and correct copy of the foregoing was electronically filed with the Court this date and is available for viewing and downloading from the ECF System.

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By: _____

Joseph J. Santarone, Esquire
Attorney ID:  45723
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2626
jjsantarone@mdwcg.com
Attorney for Defendants, Former Assistant
District Attorney David Desiderio and
Former District Attorney Lynne Abraham

Date:  <u>April 12, 2023</u>