

2000 Market Street, Suite 2300, Philadelphia, PA 19103
(215) 575-2600  Fax (215) 575-0856

Direct Dial:  (215) 575-2626
Email:  jjsantarone@mdwcg.com

June 5, 2023

**VIA ECF FILING**

Honorable John Milton Younge
US District Court for the ED of Pennsylvania
601 Market Street
U.S. Courthouse, Room 4007
Philadelphia, PA  19106

      RE:    Wilson, Theophalis (Binky) v. City of Philadelphia, et al.
            Docket No.:    USDC Eastern District No.:  2:21-cv-02057
            Our File No.:    40660.00212

Dear Judge Younge:

By Order dated May 22, 2023, this Court requested additional briefing in the form of a letter on the question, "Does Defendant Former Assistant District Attorney David Desiderio's alleged coercion of James White's confession constitute 'investigatory' or 'prosecutorial' conduct for purposes of an absolute immunity analysis?"  ADA Desiderio contends he was acting in a prosecutorial capacity and is entitled to absolute immunity.

The United States Supreme Court has held that absolute immunity attaches to all actions performed by a prosecutor in a "quasi-judicial" role, which includes activity taken while in court, as well as selected out of court behavior "intimately associated with the judicial phase" of the criminal process.  <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976).  Courts have found that the duties of a prosecutor in his role as advocate for the state involve actions apart from the courtroom, such as the preparation necessary to present a case which includes obtaining, reviewing, and evaluating evidence.  <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1414 (3d Cir. 1991).

According to Plaintiff, at the time of the Anderson/Reynolds murders, James White ("White") was serving 10-20 years in prison for two unrelated murders he confessed to committing pursuant to a plea deal with ADA Desiderio, in which White also implicated Chris Williams ("Williams") and Rick Bennett ("Bennett"). (ECF 37, at ¶¶ 7, 144, 146, 150-152). Two years after the Anderson/Reynolds murders, an informant incarcerated with White told ADA Desiderio that White admitted to the Anderson/Reynolds murders while in prison, but that White withheld this information when making his original plea deal. (ECF 37, at ¶¶ 8, 153). As a result, ADA Desiderio rescinded White's plea agreement for the previous murders and additionally charged White with the Anderson/Reynolds murders. (ECF 37, ¶¶ 9, 155). After White was charged with the Anderson/Reynolds murders, ADA Desiderio spoke with White and threatened to use his previous statements against him and seek the death penalty unless White plead guilty to the Anderson/Reynolds murders and implicated Williams. (ECF 37, ¶¶ 9, 156). White then entered into a new plea deal with ADA Desiderio. (ECF 37, ¶¶ 9, 158).

Because White had no actual knowledge of the Anderson/Reynolds murders, ADA Desiderio and detectives fed White relevant information about the crimes and fabricated a narrative of the shootings. (ECF 37, ¶¶ 10, 160). On November 4, 1991, as part of his plea deal, White made his first statement to police about the Anderson/Reynolds murders in which he implicated himself and Williams, and also named Bennett and individuals named "Steve," "Opie," and "Binky" as being involved. (ECF 37, ¶¶ 11, 161-162, 165). White was again interviewed by detectives about the Anderson/Reynolds murders on November 13, 1991, during which White identified a photo of Plaintiff as "Binky." (ECF 37, ¶¶ 12, 166-167). This was the first and only time Plaintiff's name was connected with the Anderson/Reynolds murders. (ECF 37, ¶¶ 12, 167).

First, there are no allegations that ADA Desiderio coerced White into implicating Plaintiff or that ADA Desiderio was even present when White identified Plaintiff. To the contrary, Plaintiff claims White was speaking only to detectives the one and only time he implicated Plaintiff. (ECF 37, ¶¶ 12, 166-167). These allegations do not demonstrate that ADA Desiderio was personally involved in the fabrication of any evidence against Plaintiff

_____

and are insufficient to support a claim against ADA DiDonato.  See C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201 (3d Cir. 2000)("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)(noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Regardless, Plaintiff's allegations demonstrate that White's confession was coerced after White had already been charged with the Anderson/Reynolds murders.  (ECF 37, ¶¶ 9, 155-156).  Evidence obtained at or after the filing of criminal charges is likely to be connected with an existing prosecution and is absolutely protected.  Kulwicki v. Dawson, 969 F.2d 1454, 1465-1466 (3d Cir. 1992).  Post–Imbler decisions have generally upheld prosecutorial immunity in cases involving eliciting knowingly false testimony from witnesses and obtaining a false statement from a jailhouse informant who received a reduced sentence and other incentives for the false testimony.  See Yarris v. County of Delaware, 465 F.3d 129, 139 (3d Cir. 2006); Tate v. Grose, 412 F. Supp. 487, 488 (E.D. Pa. 1976).

In addition, White's confession was coerced as part of a plea deal White was working out with ADA Desiderio.  (ECF 37, ¶¶ 9, 11, 158, 161-162, 165).  This Circuit and others have held that absolute immunity applies to conduct which occurs during plea bargaining activity.  See Davis v. Grusemeyer, 996 F.2d 617, 629 (3d Cir. 1993); see also Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1492 (10th Cir. 1991) (absolute immunity attaches to plea bargaining activity "due to its intimate association with the judicial process").  As explained by the Second Circuit:

> [A] prosecutor's activities in the plea bargaining context merit the protection of absolute immunity.  The plea negotiation is an "essential component" of our system of criminal justice...It is at this stage that the prosecutor evaluates the evidence

> before him, determines the strength of the Government's case, and considers the societal interest in disposing of the case by a negotiated guilty plea. The effective negotiation of guilty pleas would be severely chilled if a prosecutor were constantly concerned with the possibility of ruinous personal liability for judgments and decisions made at this critical stage of the criminal process.

Taylor v. Kavanagh, 640 F.2d 450, 453 (2d Cir. 1981)(internal citations omitted). Thus, "the nature of the function performed" by ADA Desiderio at the time White's confession was coerced was prosecutorial and not investigative.

It is anticipated that Plaintiff will argue the coercion of White's confession was investigative because Plaintiff had not yet been charged with the Anderson/Reynolds murder. However, Plaintiff may not enforce White's right to be free from coercion.

In Buckley, the plaintiff brought § 1983 claims against police officers for allegedly coercing witnesses, and paying them money to make false statements against him, in order to implicate him in the crime for which he was tried. Buckley v. Fitzsimmons, 20 F.3d 789, 794 (7th Cir. 1994). The court held that "[c]oercing witnesses to speak...is a genuine constitutional wrong" that violates "the right of the person being interrogated to be free from coercion." Id. However, the court further held that the plaintiff could not "complain that the prosecutors may have twisted [the witness's] arm" because "[r]ights personal to their holders may not be enforced by third parties." Id. at 794–95. The court explained:

> Coercing witnesses to speak, rather than loosening their tongues by promises of reward, is a genuine constitutional wrong, but the persons aggrieved would be Cruz and Hernandez rather than Buckley. Overbearing tactics violate the right of the person being interrogated to be free from coercion. Buckley cannot complain that the prosecutors may have twisted Cruz's arm, any more than he can collect damages because they failed to read Cruz Miranda warnings or searched Cruz's house without a warrant. Rights personal to their holders may not be enforced by third parties…For if the constitutional entitlement is a right to prevent use of the confession at trial (or before the grand jury), then absolute immunity under Imbler defeats Buckley's claim. Obtaining the confession is not covered by immunity but does not violate any of Buckley's rights; using the confession could violate Buckley's rights but would be covered by absolute immunity.

___

Id. at 794-795 (internal citations omitted).

Indeed, Plaintiff's purported position would lead to a result where a prosecutor would not be liable for using a coerced confession against the person who made it, but could be liable for using the confession to convict others implicated by the confessor if it is later determined that the information obtained is not true. Such a situation would cause prosecutors to not to bring cases against potential criminals for fear that the information obtained from informants and confessors may later be found to be false. Because the alleged confession coerced from White occurred while ADA Desiderio was serving as an advocate during a judicial proceeding, ADA Desiderio is entitled to absolute immunity. See Lee v. Willins, 617 F.2d 320, 322 (2d Cir. 1980)(the injuries to the plaintiff that could result from these acts are, as his amended complaint states, the deprivation of his liberty for five years, his subjection to the ordeal of multiple trials, and the emotional and economic injury resulting therefrom but these are precisely the alleged injuries for which Imbler granted absolute immunity); Forsyth v. Kleindienst, 599 F.2d 1203, 1215 (3d Cir. 1979)(if the decision to authorize the wiretaps was made by the Attorney General in an attempt to secure information to determine whether to initiate a criminal prosecution, then he is entitled to absolute immunity from suit challenging that decision because to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution, it is encompassed within the protected, quasi-judicial immunity afforded to the decision itself); Brawer v. Horowitz, 535 F.2d 830 (3d Cir. 1976)(affirming the district court's dismissal of a complaint alleging that a federal prosecutor and a cooperating witness had conspired to use perjured testimony in order to convict appellants because the allegations in the complaint implicating the prosecutor all related to actions in his role as an advocate, rather than as an administrator or investigator); Tate, 412 F. Supp. at 488 ("[T]here is no reason to depart from a rule of absolute prosecutorial immunity merely because the complaint alleges that defendants not only used perjured testimony against plaintiff but solicited that perjured testimony as well. To allow such an allegation to defeat the prosecutor's immunity would vitiate the Imbler holding. Anyone against whom perjured testimony was used could then force the

___

prosecutor to court in a civil damage action simply by reframing the claim to allege that the perjured testimony was solicited.).

                                       Respectfully,

                                       Joseph J. Santarone

JJS/dmg

cc:    Alana M. McMullin, Esquire (via email - Alana.McMullin@lathropgpm.com)
        Alison J. Guest, Esquire (via email - aguest@azlawllc.com)
        Danielle E. Walsh, Esquire (danielle.walsh@phila.gov)
        Fortunato N. Perri, Jr. (via email - fperri@mpmpc.com)
        Francesco P. Trapani, Esquire (via email - frank@krehertrapani.com)
        Joseph Zaffarese, Esquire (via email - jzaffarese@azlawllc.com)
        John Anthony DeRose, Esquire (via email - jderose@clarkhill.com)
        Kimberly K. Winter, Esquire (via email - kim.winter@lathropgpm.com)
        Katelyn Lori Mays, Esquire (via email - kmays@azlawllc.com)
        Lauri A. Kuvulich, Esquire (via email - lkavulich@clarkhill.com)
        Michael J. Abrams, Esquire (via email - michael.abrams@lathropgpm.com)
        Michelle V. Barone, Esquire (michelle.barone@phila.gov)
        Maximillian Schultz, Esquire (via email - mschultz@mccarter.com)