**Lathrop GPM**

Lathrop GPM LLP
lathropgpm.com

2345 Grand Blvd.
Suite 2200
Kansas City, MO 64108
Main: 816.292.2000

**Michael J. Abrams**
Partner
michael.abrams@lathropgpm.com
816.460.5530

June 5, 2023

**VIA E-FILING**

Honorable John M. Younge
United States District Court
Eastern District of Pennsylvania
U.S. Courthouse
Independence Mall West
601 Market Street
Philadelphia, PA 19106

> RE: **Case No. 21-cv-2057-JMY**
> **Theophalis Wilson v. City of Philadelphia, et al.**
> **Plaintiff's Letter Brief in Response to the Court's Order (Doc. 123)**

Dear Judge Younge:

We are writing in response to your Order dated May 22, 2023, wherein the Court requested that the parties brief the following question: Plaintiff has alleged that Defendant Former Assistant District Attorney David Desiderio coerced a confession from James White; in your opinion, does this alleged act constitute "investigatory" or "prosecutorial" conduct for purposes of an Absolute Immunity Analysis? Plaintiff submits this following Letter Brief in response.

### I. Introduction

David Desiderio's coercion of a false confession from James White – to implicate Plaintiff in three murders – is investigatory for purposes of an absolute immunity analysis. As the Amended Complaint alleges, Desiderio's sole purpose in obtaining and fabricating White's confession was to create manufactured probable cause against Plaintiff and his co-defendants. Further, the confession was coerced *prior to any arrests in the case,* as thus could not have been a prosecutorial function, as the prosecution did not commence until *after* the confession. As this Court and the

Third Circuit have consistently held, this type of misconduct, which serves as a basis for malicious prosecution and fabrication of evidence claims against a prosecutor, is not entitled to immunity.

## II. The Defendants Hold the Burden to Prove Absolute Immunity

First and foremost, the Defendants, as the officials seeking absolute immunity, "bear the burden of showing it is justified for the function in question." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993). "To earn the protections of absolute immunity *at the motion-to-dismiss stage*, a defendant must show that the conduct triggering absolute immunity clearly appear[s] on the face of the complaint." *Weimer v. Cty. of Fayette, Pennsylvania*, 972 F.3d 177, 187 (3d Cir. 2020) (emphasis added) (internal quotations omitted). And, as the Third Circuit recognizes, "the Supreme Court has been 'quite sparing' in its recognition of absolute immunity." *Carter v. City of Philadelphia*, 181 F.3d 339, 355 (3d Cir. 1999) (citing *Burns v. Reed,* 500 U.S. 478, 486-87 (1991)).

In determining immunity for a prosecutor's actions, the United States Supreme Court has outlined a "functional" approach, which looks to the "nature of the function performed, not the identity of the actor who performed it." *Buckley,* 509 U.S. at 269. Indeed, the Supreme Court has made clear that prosecutors are only entitled to absolute immunity from liability for § 1983 claims when "initiating and pursuing a criminal prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976); *Burns,* 500 U.S. at 491-92. Thus, absolute immunity "attache[s] only to actions performed in a quasi-judicial role, such as participation in court proceedings and other conduct intimately associated with the judicial phases of litigation." *Carter,* 181 F.3d at 356 (internal quotations omitted). Absolute prosecutorial immunity does not apply when prosecutors act as administrators or investigative officers. *Id.* (*citing Imbler,* 424 U.S. at 430-31). Certainly, the alleged intentional

bad conduct by Desiderio to attempt to establish probable cause should not be protected by any sort of immunity. Additionally, at the motion-to-dismiss stage, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, [viewing] them in the light most favorable to plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007); *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

Here, Defendants have failed to meet their burden to demonstrate the conduct alleged in Plaintiff's Amended Complaint is limited to actions performed as a part of court proceedings or was intimately associated with the judicial process. Instead, Plaintiff has sufficiently alleged that Desiderio fabricated and coerced a false witness statement *during the investigation* of the Anderson/Reynolds Murders, which provided Defendants with the *only evidence connecting Mr. Wilson to the crimes* and was the only basis for probable cause to arrest Plaintiff. Unlike a prosecutor's typical duties as an advocate, this misconduct occurred *prior* to the arrest or questioning of Mr. Wilson (or any other suspect), and well before the initiation of *any* prosecution. Desiderio's unconstitutional conduct was therefore (at best) "investigatory," not prosecutorial, as no judicial proceeding existed at the time of the coerced confession. Accordingly, no immunity is afforded.

Even if the Complaint were not clear that Desiderio's conduct should be considered investigatory, at best, for immunity purposes, Plaintiff's claims against Desiderio should proceed to discovery as Plaintiff has – at the very least – shown that a fact issue exists as to whether Desiderio's conduct was "investigatory," and thus, further discovery is required to ultimately determine this fact and any dismissal based on absolute immunity at this stage would be inappropriate.

### III. Binding Case Law Supports Plaintiff's Position that Prosecutors are Not Entitled to Immunity in § 1983 Cases for Fabrication of Evidence Prior to Probable Cause.

This Court and the Third Circuit have squarely addressed this question, i.e., whether a prosecutor's actions in maliciously prosecuting someone and fabricating evidence to arrest and convict them, is investigatory and thus not entitled to absolute immunity. This district has held that "[p]rosecutors, [] are not entitled to absolute immunity when they are accused of fabricating evidence." *Quintana v. City of Philadelphia*, No. CV 17-996, 2017 WL 3116265, at *6 (E.D. Pa. July 21, 2017). Indeed, the Supreme Court in *Buckley v. Fitzsimmons* concluded that a prosecutor sued under § 1983 was ***not*** entitled to absolute immunity after allegedly fabricating evidence against a murder suspect and making false statements to the press. 509 U.S. 259, 269 (1993). The *Buckley* court held that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* at 273. Additionally, the court held that "[t]hose acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury ***after a decision to seek an indictment has been made***." *Id.* (emphasis added). The question at issue in *Buckley* was "whether the prosecutors …were functioning as 'advocates' when they were endeavoring to determine whether the bootprint at the scene of the crime had been made by petitioner's foot." *Id.* at 274. The court noted that "the conduct of the prosecutors during the period before they convened a special grand jury to investigate the crime provides the answer." *Id.* Indeed, the *Buckley* court recognized that ***"[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested***." *Id.* (emphasis added). The court ultimately found

that, where evidence was allegedly fabricated *before* the grand jury was empaneled and the plaintiff was arrested 10 months *after* the grand jury was convened, the "prosecutors' conduct occurred well before they could properly claim to be acting as advocates." *Id.* at 275. Thus, when prosecutors fabricate evidence "during the preliminary investigation of an unsolved crime," they are not entitled to absolute immunity. *Id.*

*Buckley* is particularly instructive here, as Desiderio, like the prosecutor in *Buckley*, is alleged to have fabricated evidence against a murder suspect *before* he had probable cause to arrest or indict. Amend. Compl. at ¶¶ 142-162. Desiderio did not simply "evaluate" evidence assembled by the police, as a prosecutor typically does. The conduct here was certainly not "prosecutorial" and it's giving Desiderio far too much deference to call it "investigative" for purposes of determining immunity, as we believe it was not actually intended to investigate but instead constituted intentional bad conduct to create probable cause. But using the parlance of similar cases of this type, Desiderio's conduct must be considered "investigative" rather than prosecutorial, because he was actively interrogating and coercing James White to confess to murders and to implicate other suspects *when no evidence against those suspects existed*.

Similarly, in *Fogle v. Sokol*, the Third Circuit held that "'investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.'" 957 F.3d 148, 160 (3d Cir. 2020) (citing *Buckley*, 509 U.S. at 273)). In *Fogle,* the Third Circuit directly addressed "the narrow doctrine of absolute immunity" for prosecutors. *Id.* at 156. There, the court implemented the *Buckley* analysis, stating:

> Determining the precise function that a prosecutor is performing is a fact-specific analysis. For instance, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." **Before probable cause for an**

> *arrest, a prosecutor's "mission at that time [i]s entirely investigative in character."* "Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, ... a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." It follows that when prosecutors function as investigators, rather than advocates, they enjoy no right to absolute immunity.

*Id.* at 160 (internal citations omitted) (emphasis added). The *Fogle* court ultimately held that the prosecutor's conduct in that case – which involved procuring a witness's statement by undue suggestion and trumping up probable cause to arrest – was not entitled to immunity from liability as it was investigative, not prosecutorial, activity. *Id.* at 161. The court further held the prosecutor was not entitled to absolute immunity for his acts of obtaining another false and fabricated statement, even though such statements were obtained *after* arrest. *Id.* at 163.

The prosecutor's conduct in *Fogle* is almost identical to the allegations in this case. *Id.* at 161. Like *Fogle,* Plaintiff's allegations here include the fabrication of evidence – specifically, witness statements – prior to probable cause, arrest, or indictment. Amend. Compl. at ¶¶ 142-162. Also, as alleged in Plaintiff's Amended Complaint here, the prosecutors in *Fogle* "collectively 'misrepresented in written and oral reports that Dennis Fogle had volunteered the 'confession' and subsequent statement without coercion or suggestion.'" *Id.* at 163. In the same way, the Plaintiff here alleges not only that Desiderio fabricated a false statement of James White to implicate Mr. Wilson, among others, for the crimes, but also that the prosecutor and police suppressed the misconduct by failing to report the fabrication and misconduct and by stating the confession was given without coercion or suggestion. Amend. Compl. at ¶¶ 142-211. As *Fogle* held, such conduct "was not entitled to absolute immunity because the prosecutor …choreograph[ed] and secur[ed]"

a confession and "played 'the detective's role' to 'search for the clues and corroboration.'" *Id.* at 162.

Additionally, in a strikingly similar case to the one at bar, the Third Circuit recently held that a prosecutor was **not** immune from liability for his actions providing the basis for a malicious prosecution claim. *Weimer v. Cty. of Fayette, Pennsylvania*, 972 F.3d 177, 189 (3d Cir. 2020). There, a § 1983 plaintiff alleged that she spent more than eleven years in prison for a crime she did not commit. *Id.* at 180. After her convictions were vacated, Weimer filed suit against the County, its former District Attorney, the City, and several police officers for violations of her constitutional rights. *Id.* Like this case, the police in *Weimer* did not arrest any suspects for "over twenty months after the murder…" *Id.* at 181. Also, similar to Plaintiff's case, a jailhouse informant "over two and a half years since the murder…contacted police from prison and said that a fellow inmate…had confessed that he was involved in [the] murder." *Id.* The police used this statement – despite that it conflicted with other evidence – as the basis for a criminal complaint against Weimer, after which Weimer was arrested. *Id.* at 181-182. Further, like Plaintiff's case, it was revealed in *Weimer* that the only witness connecting Weimer to the crime recanted, that the police had "walked him through his testimony," and that the informant lied at trial about requesting no deals or benefits in exchange for testimony against Weimer. *Id.* at 182.

In the resulting civil action, Weimer alleged that District Attorney Vernon "maliciously prosecuted her in violation of her Fourth and Fourteenth Amendment rights, conspired with police to violate her civil rights, and failed to intervene to prevent officers from violating her constitutional rights" *Id.* On interlocutory appeal, the court addressed only one issue: "whether absolute immunity or, where raised, qualified immunity shields District Attorney Vernon from

proceeding to discovery on certain of Weimer's claims." *Id.* at 189. The court then systematically addressed each action that Weimer alleged the district attorney took during the investigation of the case, including the DA's involvement at the crime scene, his participation in interviews and reliance on non-credible witnesses, and the approval of the criminal complaint. *Id.* at 188-190. The court found Vernon's "approval of the criminal complaint is protected by prosecutorial immunity." *Id.* But the court held the prosecutor's other conduct was "investigative in nature," stating: "***investigating leads before criminal charges have been filed – is more akin to 'the detective's role in searching for the clues and corroboration that might give h[er] probable cause to recommend that a suspect be arrested'*** than 'the advocate's role in evaluating evidence and interviewing witnesses as [s]he prepares for trial.'" *Id.* (citing *Buckley,* 509 U.S. at 273) (emphasis added). Accordingly, the court held, "[t]o the extent that this investigatory conduct forms the basis of Weimer's malicious prosecution, civil rights conspiracy, and failure to intervene claims against Vernon, we will affirm the…denial of Vernon's motion to dismiss these claims based on absolute immunity." *Id.*

Like *Weimer*, White's statement was only obtained *after* a jailhouse informant falsely informed on White. Amend. Compl. at ¶¶ 153-155. Also like *Weimer,* the coerced statement was obtained *two years* after the murders and at a time when no arrests had occurred. Additionally, like the District Attorney in *Weimer,* Desiderio participated in the police investigation by interviewing witnesses. Wilson's allegations here go beyond those in *Weimer* and allege that Desiderio himself coerced and fabricated White's statement and fed White information about the crime to make his statements seem more credible, knowing all the while that White had no actual knowledge of the crimes and that the jailhouse informant's information was not credible. *Id.* at ¶¶ 158-161. Then,

Desiderio relied on this falsified, coerced statement to arrest Plaintiff and his co-defendants, despite White's criminal history and his inconsistent accounts of other murders with which he was charged. Amend. Compl. at ¶¶ 142-162. Such conduct is intentional bad conduct, but at best must be categorized as "investigative" rather than prosecutorial, and certainly not intimately associated with the judicial phase of litigation. This is especially true given the fact that at the time of the alleged bad conduct by Desiderio, no judicial proceeding had been initiated for the murders, and Wilson was not arrested for *over three months* after Desiderio concocted White's confession. *Id.* at ¶¶ 168-172. These actions were clearly outside the bounds of initiating or prosecuting criminal charges, and although Desiderio eventually presented and solicited perjured testimony at trial, among other things, Plaintiff here is alleging these actions served as the only (false) evidence connecting Wilson to the crimes and the only basis for probable cause, *prior* to any prosecution. Amend. Compl. at ¶ 271. Thus, the coercion of White's confession did not occur as Desiderio was "serving as an advocate during a judicial proceeding."

Additionally, this Court and the Third Circuit have recently addressed several cases of prosecutorial immunity in similar contexts and found either that prosecutors were not entitled to immunity or that a more fact-specific inquiry into the nature of the misconduct was required. *See Richardson v. Solic. Montgomery Cnty., PA,* No. CV 21-1347, 2022 WL 990895, at *2 (E.D. Pa. Apr. 1, 2022) ("Plaintiff's Complaint, construed in the light most favorable to Plaintiff, may be asserting that Frame's evaluation entailed efforts to corroborate the information in the affidavit. As the Court must perform a fact-intensive inquiry to determine whether absolute immunity shields Frame from suit, the County Defendants' motion to dismiss the federal claims against Frame is denied at this juncture."); *Jacobs v. City of Philadelphia,* No. 21-2314, 2022 WL 1772989, at *3

(3d Cir. June 1, 2022) (remanding a claim for further proceedings in which the prosecutor retaliated against plaintiff in a non-prosecutorial capacity by threatening to prosecute him for speaking with counsel, which the Court held "may not be entitled to absolute immunity"); *Stokes v. City of Philadelphia,* No. CV 22-0338, 2022 WL 3213830, at *5 (E.D. Pa. Aug. 9, 2022) ("Stokes alleges that ADA DiDonato circumvented the administrative record-keeping channels of the District Attorney's office after Stokes' trial and conviction. As alleged, ADA DiDonato's instructions to PPD personnel, as well as his actions in thwarting his office's record keeping procedures, were administrative and were not undertaken in anticipation, preparation, or part of judicial proceedings…As such, ADA DiDonato is not entitled to absolute immunity at this procedural stage in the proceedings…"); *Pumba v. Alvarez,* No. CV 22-2076, 2022 WL 5122906, at *4 (E.D. Pa. Oct. 4, 2022) ("Courts have found that prosecutors can lose immunity protection when, in connection with the filing of criminal charges, they execute probable cause certifications containing false statements… Accepting Pumba's allegations as true and drawing all inferences in his favor for purposes of statutory screening, the Court cannot say that Alvarez, Barata, Schopf, and Stauffer are protected from absolute immunity at this juncture.")

### IV.   Conclusion

Plaintiff has sufficiently alleged that Desiderio coerced a false confession from James White that served as the only evidence of probable cause to arrest Plaintiff. In light of these allegations and the analogous cases finding identical acts of prosecutorial misconduct to be "investigatory," Desiderio's conduct here is not protected by immunity. Alternatively, Plaintiff has sufficiently raised a fact question as to the nature of Desiderio's conduct which warrants discovery before dismissal on immunity grounds.

Honorable John M. Younge
June 5, 2023
Page 11


Respectfully Submitted,

Lathrop GPM LLP

Michael J. Abrams
One of the Attorneys for Plaintiff