IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THEOPHALIS WILSON,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-2057 |
| | : | |
| **CITY OF PHILADELPHIA**, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

Younge, J.                                                                                          August 11, 2023

### I.  INTRODUCTION

Currently before this Court is Defendants Former Assistant District Attorney David Desiderio and Former District Attorney Lynne Abraham's Motion to Dismiss Plaintiff's Amended Complaint. (Defs. Mot. to Dismiss, ECF No. 118.) This Court finds this motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, Defendants' Motion to Dismiss (ECF No. 118) will be granted with prejudice, without leave to amend.

### II.  FACTUAL BACKGROUND

Plaintiff Theophalis Wilson describes his case as follows:

> Theophalis Wilson spent over twenty-eight years wrongfully imprisoned for the murders of Kevin Anderson, Gavin Anderson, and Otis Reynolds, crimes he did not commit. After spending decades fighting for his freedom, Mr. Wilson and his co-defendant's efforts finally proved that the only evidence linking Wilson to the crime – the statement of James White, the State's only alleged eyewitness – was fabricated and false. Indeed, White recanted his identification of Mr. Wilson under oath and confirmed that prosecutors and police coerced and fed White a confession of the three homicides in order to implicate Mr. Wilson and his co-defendants in the crimes. In addition to proving Mr. Wilson had no involvement in the murders, the evidence adduced during Mr. Wilson and his co-defendants' post-conviction proceedings revealed their wrongful convictions were not an innocent mistake, but the result of startling misconduct on the part of ADA Desiderio and Philadelphia police officers. However, the misconduct in Mr. Wilson's case was not an isolated

> incident, but part of a long-standing pattern of investigative misconduct made possible by supervisors and policymakers in the Office of the Philadelphia District Attorney ("OPDA") and the Philadelphia Police Department ("PPD").
>
> Mr. Wilson's conviction was overturned on January 21, 2020, after the OPDA filed a motion to vacate Mr. Wilson's convictions on behalf of the Commonwealth of Pennsylvania, the charges against him were dismissed, and he was finally released.
>
> This civil rights action ensued on May 4, 2021, seeking redress against the City of Philadelphia, and individual police officers of the Philadelphia Police Department, as well as former Assistant District Attorney Desiderio and his supervisor, former District Attorney Lynn Abraham.

(Pl. Mem. in Opp. to Def. Mot. to Dismiss, pp. 2-3, ECF No. 90.) Plaintiff's specific claims against Defendants Desiderio and Abraham are as follows:

> Count I: Malicious Prosecution, in violation of the Fourth and Fourteenth Amendments, as to all Defendants;
>
> Count II: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating Evidence, Withholding Material Exculpatory and Impeachment Evidence, and Deliberately Failing to Conduct a Constitutionally Adequate Investigation, in Violation of the Fourth and Fourteenth Amendments, as to all Defendants;
>
> Count III: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating and Coercing Evidence and Withholding Material Exculpatory and Impeachment Evidence in Violation of the Fourth and Fourteenth Amendments, as to all Defendants;
>
> Count IV: Not Applicable
>
> Count V: Not Applicable
>
> Count VI: Supervisory Liability Claim, as to Defendants City of Philadelphia, PPD Supervisors and Former District Attorney Lynne Abraham;
>
> Count VII: Not Applicable
>
> Count VIII: Malicious Prosecution under Pennsylvania state law, as to all Defendants;
>
> Count IX: Intentional or Reckless Infliction of Emotional Distress under Pennsylvania state law, as to all Defendants.

In response, Defendants filed a motion to dismiss—primarily asserting absolute immunity as a bar to Plaintiff's various claims. (Defs. Mot. to Dismiss, ECF No. 118.)

### III. LEGAL STANDARD

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is detailed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Iqbal* makes clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

### IV. DISCUSSION

Defendants filed a motion to dismiss invoking absolute immunity as a bar to Plaintiff's various claims. This Court will review the following arguments: (1) absolute prosecutorial immunity as applied to Defendant Desiderio's alleged fabrication and coercion of White's confession; (2) supervisory liability as applied to Defendant Abraham; and (3) absolute immunity as applied to the state law tort claims asserted against Defendants Desiderio and Abraham.

### A. Counts I-III: Absolute Prosecutorial Immunity as Applied to Defendant Desiderio

This Court will first assess Defendant Desiderio's claim that his actions were protected by absolute prosecutorial immunity. As the Third Circuit instructs:

> Since extending absolute immunity to state prosecutors in *Imbler,* the Supreme Court has clarified that absolute immunity does not extend to "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." At the same time, the Court has reaffirmed that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."
>
> Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's "advocate" while engaging in the alleged conduct that gives rise to the constitutional violation. As the Supreme Court explained in *Kalina v. Fletcher*, "in determining immunity, we examine the nature of the function performed, not the identity of the actor who performed it."

*Yarris v. Cnty. of Delaware*, 465 F.3d 129, 135–36 (3d Cir. 2006) (internal citations omitted).

More recently, the Third Circuit reiterated that:

> Immunity, therefore, is neither one-size-fits-all, nor a one-way street. Our analysis "has two basic steps, though they tend to overlap." First, we "ascertain just what conduct forms the basis for the plaintiff's cause of action." Then, we "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served," to determine whether the Prosecutors have carried their "burden of showing that such immunity is justified for the function in question." Thus, while we tend to discuss prosecutorial immunity based on alleged *acts*, our ultimate analysis is whether a defendant has established absolute prosecutorial immunity from a given *claim*. Using this framework, we conclude that [the prosecutors] are not, at this [motion to dismiss] stage, entitled to absolute immunity from [the plaintiff's] § 1983 claims if they relate to investigative, not prosecutorial, activity.

*Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020) (internal citations omitted). Stated differently, how this Court classifies Defendant Desiderio's alleged fabrication and coercion of James White's confession—*i.e.,* whether the conduct was "investigatory" or "prosecutorial" in nature—will

4

ultimately determine whether absolute immunity applies and will have a significant impact on the disposition of Defendants' pending motion to dismiss.

Turning to the first step (*i.e.,* ascertaining what conduct forms the basis of Plaintiff's cause of action), Plaintiff seemingly confines this Court's absolute immunity analysis to whether the alleged fabricated confession of James White (a jailhouse informant)—which underpins all of Plaintiff's claims against Defendants—constituted "investigatory" or "prosecutorial" activity:

> In their Motion to Dismiss, Defendants Desiderio and Abraham (collectively, "Defendants") mischaracterize Plaintiff's allegations: the individual counts against Defendants are not about the use of perjured testimony or the suppression of exculpatory evidence at trial – although the OPDA admits both occurred in this case. Rather, Plaintiff alleges the Defendants *fabricated and coerced* a false witness statement during the investigation of the Anderson/Reynolds Murders, which provided Defendants with the *only evidence connecting Mr. Wilson to the crimes* and thus was the only basis for probable cause. Unlike a prosecutor's typical duties as an advocate, the fabrication and coercion of James White's statement occurred *prior* to the arrest or questioning of Mr. Wilson (or any other suspect), let alone the initiation of Mr. Wilson's prosecution. This undoubtedly falls into the realm of investigative conduct by a prosecutor, thus excluding Defendants from absolute immunity.

(Pl. Resp. in Opp. to Defs. Mot. to Dismiss, p. 14, ECF No. 121) (internal citations omitted). Thus, this Court will solely focus on whether Defendants are entitled to absolute immunity with respect to James White's alleged fabricated confession.

Turning to the second step (*i.e.,* whether the function of the conduct is investigatory, prosecutorial, administrative, investigative, or something else), this Court finds that the conduct is more akin to "prosecutorial" activity—especially when considering two factors: (1) the timing of the alleged fabricated confession; and (2) Plaintiff's proximity to the purported coerced confession.

    a. <u>Timing of White's Alleged Fabricated Confession</u>

With respect to the timing of the alleged fabricated confession, two facts stand out to this Court. First, the events surrounding White's alleged fabricated confession occurred *after* he had

5

been charged with the Anderson/Reynolds Murders. (Am. Compl., ¶¶ 155-156, ECF No. 37.) Relatedly, the Third Circuit has "rejected bright-line rules that would treat the timing of the prosecutor's action (*e.g.* pre- or postindictment), or its location (*i.e.* in- or out-of-court), as dispositive." *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008). Therefore, though the timing of the action is not dispositive for an absolute immunity analysis, the Third Circuit has instructed that "[e]vidence obtained at or after the filing [of charges] is likely to be connected with an existing prosecution, and is absolutely protected." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992). Additionally, the Third Circuit has reiterated that "'a prosecutor is absolutely immune from liability for using 'false testimony in connection with [a] prosecution.'" *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 139 (3d Cir. 2006) (quoting *Kulwicki*, 969 F.2d at 1465); *see also Tate v. Grose*, 412 F. Supp. 487, 488 (E.D. Pa. 1976) ("Similarly, there is no reason to depart from a rule of absolute prosecutorial immunity merely because the complaint alleges that defendants not only used perjured testimony against plaintiff but solicited that perjured testimony as well. To allow such an allegation to defeat the prosecutor's immunity would vitiate the Imbler holding. Anyone against whom perjured testimony was used could then force the prosecutor to court in a civil damage action simply by reframing the claim to allege that the perjured testimony was solicited.").

Second, White's alleged fabricated confession occurred during the plea negotiation process—whereby Defendant Desiderio cancelled White's previous plea deal (after Craig Vaughn—an inmate in White's prison—informed Defendant Desiderio that Plaintiff had admitted to being involved in the Anderson/Reynolds Murders) and began negotiating and discussing a new plea deal. (Am. Compl., ¶¶ 153-156, ECF No. 37.)  As the Third Circuit has instructed, "a prosecutor's decision whether to dispose of a case by plea—because dependent on delicate

judgments affecting the course of a prosecution—is protected by the doctrine of absolute prosecutorial immunity." *Davis v. Grusemeyer*, 996 F.2d 617, 629 (3d Cir. 1993). In reiterating this point, the Third Circuit, in *Davis*, also endorsed the Second Circuit's *Taylor* decision and the Tenth Circuit's *Pfeiffer* decision—both of which include pronouncements around a prosecutor's plea bargaining activity being absolutely protected. *Id.* For example, in *Taylor*, the Second Circuit noted:

> We are satisfied that a prosecutor's activities in the plea bargaining context merit the protection of absolute immunity. The plea negotiation is an "essential component" of our system of criminal justice. It is at this stage that the prosecutor evaluates the evidence before him, determines the strength of the Government's case, and considers the societal interest in disposing of the case by a negotiated guilty plea. The effective negotiation of guilty pleas would be severely chilled if a prosecutor were constantly concerned with the possibility of ruinous personal liability for judgments and decisions made at this critical stage of the criminal process.

*Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981) (internal citations omitted). Additionally, in *Pfeiffer*, the Tenth Circuit held that "plea bargaining" is "an activity that is absolutely immune from liability due to its intimate association with the judicial process." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1492 (10th Cir. 1991).

Taken together, the timing of White's alleged fabricated confession—after he had been charged and during the plea-bargaining process—makes Defendant Desiderio's conduct more akin to "prosecutorial" activity versus "investigative" activity—meaning that Defendant Desiderio is absolutely protected and immune from this civil suit seeking damages.

    b. <u>Plaintiff's Proximity to the Purported Coerced Confession</u>

Despite this Court's determination that Defendant Desiderio's actions were absolutely protected and immune, Plaintiff has sought to emphasize that while *White* had been charged and was in the process of re-negotiating his plea deal, the same cannot be said for Plaintiff—who would

be charged later and only because of White's alleged fabricated and coerced confession. (Pl. Resp. in Opp. to Defs. Mot. to Dismiss, p. 14, ECF No. 121; Am. Compl., ¶¶ 168, 172, ECF No. 37.)  In essence, Plaintiff is seemingly arguing that White's coerced testimony, by extension, is a violation of Plaintiff's constitutional rights—namely under the Fourteenth Amendment. However, the Third Circuit has endorsed the Seventh Circuit's reasoning—as set forth in *Buckley*—that determined that a defendant could not assert rights on behalf of a witness who may have been coerced to implicate said defendant in a crime:

> Coercing witnesses to speak, rather than loosening their tongues by promises of reward, is a genuine constitutional wrong, but the persons aggrieved would be [the witnesses] rather than [the defendant]. Overbearing tactics violate the right of the person being interrogated to be free from coercion. [The defendant] cannot complain that the prosecutors may have twisted [a witness's] arm, any more than he can collect damages because they failed to read [the witness] *Miranda* warnings or searched [the witness's] house without a warrant. Rights personal to their holders may not be enforced by third parties…. For if the constitutional entitlement is a right to prevent use of the confession at trial (or before the grand jury), then absolute immunity under *Imbler* defeats [the defendant's] claim. *Obtaining* the confession is not covered by immunity but does not violate any of [the defendant's] rights; *using* the confession could violate [the defendant's] rights but would be covered by absolute immunity.

*Buckley v. Fitzsimmons*, 20 F.3d 789, 794–95 (7th Cir. 1994) (emphasis in original) (internal citations omitted); *see also Michaels v. New Jersey*, 222 F.3d 118, 122 (3d Cir. 2000) ("We are persuaded by the reasoning set forth in the majority opinion of *Buckley*.").

Stated differently, if this Court were to decide that Plaintiff could assert constitutional violations in connection with White's alleged fabricated and coerced confession, it would create a situation in which the prosecutor would be absolutely immune from any claims made by White, but could be held liable for claims made by Plaintiff—*i.e.,* a third-party—for the very same acts. Applying *Tate*'s reasoning to this case, "there is no reason to depart from a rule of absolute prosecutorial immunity merely because the complaint alleges that defendants not only used

8

[White's fabricated] testimony against plaintiff but solicited…[White's fabricated] testimony as well. To allow such an allegation to defeat the prosecutor's immunity would vitiate the Imbler holding. Anyone against whom [White's fabricated] testimony was used could then force the prosecutor to court in a civil damage action simply by reframing the claim to allege that [White's fabricated] testimony was solicited." *Tate v. Grose*, 412 F. Supp. 487, 488 (E.D. Pa. 1976).

This Court declines to open Pandora's box—especially given the policy concerns around the chilling effect that such a decision would have on prosecutors going forward. Though the allegations in this case are troubling and concerning, the U.S. Supreme Court and the Third Circuit have reasoned with the policy trade-offs and considerations and have opted to uphold the doctrine of absolute prosecutorial immunity. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 427–28, 96 S. Ct. 984, 993–94, 47 L. Ed. 2d 128 (1976) ("To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."); *see also id.* at 428 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) ("As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."); *Michaels v. New Jersey*, 222 F.3d 118, 122 (3d Cir. 2000) ("While we recognize that this rule may seem harsh to plaintiffs, we are satisfied that the remedies set forth in *Kulwicki* for a falsely-charged defendant [*e.g.,* probable cause hearings, dismissal of charges, and state codes of

9

professional responsibility] are sufficient to discourage prosecutors from coercing witnesses to make unreliable statements against a defendant.").

Considering this precedent, this Court finds that Defendant Desiderio's alleged fabrication and coercion of White's confession is "prosecutorial" activity that is absolutely protected. As eloquently explained by the Seventh Circuit in *Buckley*, obtaining the coerced confession would have violated White's rights (and Plaintiff could not assert a violation of White's rights as a third-party), and the use of White's coerced confession could violate Plaintiff's rights but would still be covered by absolute immunity. *See Buckley v. Fitzsimmons*, 20 F.3d 789, 794–95 (7th Cir. 1994). Thus, the constitutional claims against Defendant Desiderio must be dismissed with prejudice on the basis of absolute prosecutorial immunity.

## B.  Count VI: Supervisory Liability as Applied to Defendant Abraham

This Court will next address the supervisory liability claim (Count VI) asserted against Defendant Abraham. Given that this Court has determined that Defendant Desiderio is entitled to absolute immunity in connection with his alleged fabrication and coercion of White's confession, then this necessarily means that Defendant Abraham is similarly immune from any supervisory liability. The U.S. Supreme Court grappled with a somewhat comparable situation and determined that absolute immunity should apply to the district attorney in question:

> [The former prisoner] claims that the district attorney and his chief assistant violated their constitutional obligation to provide his attorney with impeachment-related information because, as the Court of Appeals wrote, they failed "to adequately train and supervise deputy district attorneys on that subject" and because, as [the former prisoner's] complaint adds, they "failed to create any system for the Deputy District Attorneys handling criminal cases to access information pertaining to the benefits provided to jailhouse informants and other impeachment information." We agree with [the former prisoner] that, in making these claims, he attacks the office's administrative procedures. We are also willing to assume with [the former prisoner], but purely for argument's sake, that *Giglio*

> imposes certain obligations as to training, supervision, or information-system management.
>
> Even so, we conclude that prosecutors involved in such supervision or training or information-system management enjoy absolute immunity from the kind of legal claims at issue here. Those claims focus upon a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which [the former prisoner's] claims focus necessarily require legal knowledge and the exercise of related discretion, *e.g.,* in determining what information should be included in the training or the supervision or the information-system management. And in that sense also [the former prisoner's] claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.

*Van de Kamp v. Goldstein*, 555 U.S. 335, 343–44 (2009); *see also Est. of Tyler ex rel. Floyd v. Grossman*, 108 F. Supp. 3d 279, 296 (E.D. Pa. 2015) ("Under *Van de Kamp,* a supervising prosecutor is not liable for his actions relating to a particular trial when the trial prosecutor himself is absolutely immune from suit because both parties' actions are closely associated with the judicial process."). Though discussed in the context of a trial, this Court declines to adopt such a rigid reading—as the spirit of the pronouncement seemingly suggests that conduct that constitutes "prosecutorial" activity (more generally) would entitle the supervising attorney/the district attorney to absolute immunity.

Further, the U.S. Supreme Court illuminated the practical concerns and anomalies that would arise, if a court were to find that a prosecutor's conduct was immune, while their supervising attorney/the district attorney could still be held liable for negligent training or supervision in connection with said conduct:

> At the same time, to permit this suit to go forward would create practical anomalies. A trial prosecutor would remain immune, even for *intentionally* failing to turn over,

11

say *Giglio* material; but her supervisor might be liable for *negligent* training or supervision. Small prosecution offices where supervisors can personally participate in all of the cases would likewise remain immune from prosecution; but large offices, making use of more general officewide supervision and training, would not. Most important, the ease with which a plaintiff could restyle a complaint charging a trial failure so that it becomes a complaint charging a failure of training or supervision would eviscerate *Imbler.*

*Van de Kamp*, 555 U.S. at 347.

Taken together, this Court declines to create such an anomaly by finding Defendant Desiderio's conduct immune, while then concluding that Defendant Abraham's alleged participation in the same conduct or her failure to properly train or supervise would expose her to potential liability and civil damages. Thus, the claims against Defendant Abraham must be dismissed with prejudice on the basis of absolute prosecutorial immunity as well.

### C. Counts VIII-IX: State Law Tort Claims

Finally, this Court will address the Pennsylvania state law tort claims—for malicious prosecution (Count VIII) and intentional or reckless infliction of emotional distress (Count IX)—that Plaintiff asserted against Defendants Desiderio and Abraham. As the Pennsylvania Supreme Court noted, "[i]t has long been held that high public officials [which encompasses district attorneys and assistant district attorneys] are immune from suits seeking damages for actions taken or statements made in the course of their official duties." *Durham v. McElynn*, 565 Pa. 163, 165, 772 A.2d 68, 69 (2001). Citing its earlier *Matson* decision, the Pennsylvania Supreme Court reiterated the pronouncement that:

> *Absolute privilege*, as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction*

12

*Id.* (quoting *Matson v. Margiotti*, 371 Pa. 188, 193–94 (1952)) (emphasis in original). Like the U.S. Supreme Court and the Third Circuit, the Pennsylvania Supreme Court also acknowledged the policy trade-offs and considerations that come with permitting absolute immunity and still decided to uphold and maintain the doctrine:

> Even though the innocent may sometimes suffer irreparable damage, it has been found to be in the public interest and therefore sounder and wiser public policy to 'immunize' public officials, for to permit slander, or libel, or malicious prosecution suits, where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment-proof public officials from performing their official duties and would thus often hinder or obstruct justice and allow many criminals to go unpunished.

*Id.* (quoting *Matson*, 371 Pa. at 203).

Thus, given that this Court has already determined that Defendant Desiderio (and, by extension, Defendant Abraham) were participating in "prosecutorial" activity that was absolutely protected, this necessarily means that they were operating within the scope of their official duties and powers. Therefore, Defendants Desiderio and Abraham are immune from Plaintiff's claims for civil damages in connection with the state law tort claims of malicious prosecution and reckless or intentional infliction of emotional distress.

## V.     CONCLUSION

For the foregoing reasons, Defendants Former Assistant District Attorney David Desiderio and Former District Attorney Lynne Abraham's Motion to Dismiss Plaintiff's Amended Complaint is hereby granted. Plaintiff Theophalis Wilson will not be granted leave to amend his claims—as any attempt to amend would be futile given that absolute prosecutorial immunity bars his various claims against Defendants. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'")

(quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

In light of this Memorandum, and accompanying Order, the following claims remain and will proceed with respect to Defendants City of Philadelphia, Frank Margerum, Richard Harris, Kevin Hollinshead, John Grier, and the Estate Defendants (collectively, the "Remaining Defendants"):

    Count I: Malicious Prosecution, in violation of the Fourth Amendment, as to all relevant Remaining Defendants;

    Count II: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating Evidence, in Violation of the Fourth and Fourteenth Amendments, as to all relevant Remaining Defendants;

    Count III: Deprivation of Liberty without Due Process of Law and Denial of Fair Trial by Fabricating and Coercing Evidence in Violation of the Fourth and Fourteenth Amendments, as to all relevant Remaining Defendants;

    Count IV: Unconstitutional Failure to Intervene, against all PPD Officers and Supervisors;

    Count V: Civil Rights Conspiracy, as to all Defendant PPD Officers and Supervisors;

    Count VI: Supervisory Liability Claim, as to Defendants City of Philadelphia and PPD Supervisors;

    Count VII: *Monell* Claim, Unconstitutional Customs, Policies and Practices, as to the City of Philadelphia—to the extent that the claims against Defendant City of Philadelphia do not arise out of the claims for which qualified immunity attaches (*i.e.*, Count I: Malicious Prosecution in violation of the Fourteenth Amendment; Count II: Withholding of Evidence and Failing to Conduct a Constitutionally Adequate Investigation; Count III: Withholding of Evidence; and Count IV: Unconstitutional Failure to Intervene);

    Count VIII: Malicious Prosecution under Pennsylvania state law, as to all relevant Remaining Defendants; and

Count IX: Intentional or Reckless Infliction of Emotional Distress under Pennsylvania state law, as to all relevant Remaining Defendants.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

*/s/ John Milton Younge*
**JUDGE JOHN MILTON YOUNGE**