**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THEOPHALIS (BINKY) WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. 2:21-cv-02057-JMY |
| | ) | |
| **CITY OF PHILADELPHIA,** | ) | |
| **PENNSYLVANIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE,**
**FOR A CERTIFICATION OF LEAVE TO APPEAL AND**
**A STAY IN THE COURT PENDING THE OUTCOME OF THE APPEAL**

Plaintiff Theophalis (Binky) Wilson ("Wilson"), by and through his undersigned attorneys, hereby moves for reconsideration of the Court's August 11, 2023 Order granting Defendants Desiderio and Abraham's Motion to Dismiss Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 54(b) and L. Civ. R. 7.1(g), or in the alternative, for certification of the Order for immediate appeal, pursuant to Federal Rule of Civil Procedure 54(b) or 28 U.S.C. § 1292(b), and for a stay of the proceedings pending the outcome of the interlocutory appeal. In support hereof, Plaintiff states as follows:

**INTRODUCTION**

Plaintiff filed this § 1983 action after he was wrongfully convicted and imprisoned for over 28 years for three homicides he did not commit. Plaintiff's lawsuit alleges in striking detail the actions and inactions of several individuals and entities, including Philadelphia Police Officers that egregiously investigated his case alongside the Philadelphia Assistant District Attorney who wrongfully prosecuted him.

Defendants Abraham and Desiderio (hereinafter referred to as the "Prosecutor Defendants") filed a Motion to Dismiss all claims against them on absolute prosecutorial immunity grounds, which the Court granted in an Order and Memorandum dated August 11, 2023 (the "Order"). The Court's basis for this Order was not the Prosecutor Defendants' original briefing, but new arguments and case law that were raised for the first time in a letter brief to the Court on June 5, 2023 – to which Plaintiff had no opportunity to respond.

Reconsideration of this Court's Order is warranted. First, the Order relies exclusively upon arguments and case law that the Plaintiff had no opportunity to respond to, as they were made for the first time in additional briefing. Second, the Court made clear errors of law when it concluded that Defendants were absolutely immune for all actions based on a narrow reading of Plaintiff's allegations and the erroneous argument that all actions taken after charges have been brought (despite the lack of probable cause) or after a third-party plea offer has been made is absolutely protected prosecutorial activity. Additionally, the Court raised, without deciding, the viability of Plaintiff's claims – which has never been the basis for a Court to grant absolute immunity – and used its concerns as support for its absolute immunity finding. Further, despite the "troubling and concerning" allegations the Court acknowledges exist in this case, the Court held that policy considerations should prevail, seemingly holding that because the narrow and sparingly used prosecutorial immunity doctrine still exists, it should apply here. Lastly, the Court *sua sponte* held that Plaintiff would not be granted leave to amend, as any amendments would be futile. These factual and legal conclusions and the analyses used to support them are fundamentally flawed and warrant reconsideration, without which the Plaintiff would suffer manifest injustice.

In the alternative, certification of the Order is warranted to permit interlocutory appeal. Plaintiff requests the Court grant Plaintiff permission to appeal as to all of the dismissed Prosecutor Defendants and the dismissed claims against them and certify (1) pursuant to Federal Rule 54(b)

that the grant of the Prosecutor Defendants' Motion to Dismiss in this case is a "final judgment as to one or more, but fewer than all, claims or parties…[and] there is no jury reason for delay." Fed. R. Civ. P. 54(b), or (2) that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation" under 28 U.S.C. § 1292(b).

In either case, given the time and costs of discovery in this complex matter, Plaintiff requests that simultaneous with the issuance of a certification pursuant to Federal Rule 54(b) or pursuant to 28 U.S.C. § 1292(b), the Court stay proceedings at the District Court level while an appeal unfolds.

## ISSUES PRESENTED

1.      Should the Court reconsider and amend its Order and Memorandum dated August 11, 2023 (Docs. 128 and 129), based on (1) the manifest injustice that will result if Plaintiff is unable to respond or be heard on new arguments and case law the Court relied upon to dismiss the Prosecutor Defendants and all claims against them; (2) clear errors of fact, as misconduct by the Prosecutor Defendants was not prosecutorial in nature and occurred prior to the existence of probable cause or charges being filed and long after any prosecution ended; or (3) clear errors of law, as binding case law was overlooked, distinguishable, out-of-circuit case law was misinterpreted and improperly relied upon, and the standards for a Motion to Dismiss were misapplied.

2.      If not, should the Court certify, pursuant to Federal Rule 54(b), that the dismissal of all claims against the Prosecutor Defendants in this case is "a final judgment as to one or more, but fewer than all, claims or parties . . . [and] that there is no just reason for delay"?

3.      If not, should the Court grant Plaintiff permission to appeal on the narrow legal ground identified in the Court's Order and Memorandum in Support (Docs. 128 and 129) a

certification stating that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation"?

4.      If the answer to 1 is no, but the answer to 2 or 3 is yes, then, should the Court stay proceedings at the District Court level while an appeal unfolds?

## <u>MEMORANDUM IN SUPPORT</u>

### I.   **Reconsideration is Warranted to Correct a Manifest Injustice, Clear Errors of Fact, and/or Clear Errors of Law.**

#### A.   <u>LEGAL STANDARD</u>

Because the Court's August 11, 2023 Order did not resolve all claims against all parties in the case, this Motion for Reconsideration is being brought under Rule 54(b). *Gay v. A.O. Smith Corp.,* No. 2:19-CV-1311, 2022 WL 2829887, at *2 (W.D. Pa. Apr. 21, 2022) Such motions are also governed by this Court's Local Rule 7.1(g), which states that: "Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e)." "The purpose of a motion for reconsideration…is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (internal quotations omitted). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.*

Although a court may reconsider a prior order based on a party's motion, motions for reconsideration "should be granted sparingly as federal courts have a strong interest in the finality

of judgments." *Rittenhouse Ent., Inc. v. City of Wilkes-Barre,* No. 3:11-CV-00617, 2021 WL 3511122, at *2 (M.D. Pa. Aug. 10, 2021) (*quoting Kitzmiller v. Dover Area Sch. Dist.,* 388 F. Supp. 2d 484, 488 (M.D. Pa. 2005)).  However, "[t]he decision of whether to grant a motion for reconsideration is left to the discretion of the district court. *Id.* (citing *Le v. Univ. of Pa.,* 321 F.3d 403, 405 (3d Cir. 2003)). Indeed, "District courts generally possess more discretion to reconsider interlocutory orders than to reconsider final judgments." *Gay,* 2022 WL 2829887, at *1 (citing *Foster v. Westchester Fire Ins. Co.,* 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26, 2012). "Accordingly, reconsideration of [interlocutory] orders may be had even if the movant cannot show one of the particular grounds permitting reconsideration of final orders." *Id.* (internal quotations omitted).

Despite their general infrequency, motions for reconsideration have routinely been submitted in § 1983 cases such as this, especially when the issue of absolute or qualified immunity is raised. *See Rittenhouse Ent., Inc.,* 2021 WL 3511122, at *2 (granting Plaintiff's motion for reconsideration on the issue of qualified immunity); *see also Est. of Bardzell v. Gomperts,* No. 21-1906, 2022 WL 843483, at *1–2 (3d Cir. Mar. 22, 2022) (noting the filing of Plaintiff's motion for reconsideration on the issue of immunity); *Walker v. Coffey*, 905 F.3d 138 (3d Cir. 2018) (same)

## B. RELEVANT FACTS AND PROCEDURAL POSTURE

1.     In the interest of judicial economy, Plaintiff relies upon the recitation of facts set forth in his underlying papers and in Plaintiff's Amended Complaint (Docs. 121, 125, and 37).

2.     On April 12, 2023 Defendants Lynn Abraham and David Desiderio (the "Prosecutor Defendants") filed a Motion to Dismiss all claims against them on the sole basis of absolute prosecutorial immunity (Doc. 118). Plaintiff opposed the motion on April 26, 2023

("Plaintiff's Opposition") (Doc. 121) and the issues were fully briefed on May 3, 2023 after the Prosecutor Defendants filed a Reply in support of their Motion. (Doc. 122)

3.      Afterward, on May 22, 2023 the Court entered an Order requesting additional briefing from both parties in response to one question: "Plaintiff has alleged that Defendant Former Assistant District Attorney David Desiderio coerced a confession from James White; in your opinion, does this alleged act constitute "investigatory" or "prosecutorial" conduct for purposes of an absolute immunity analysis?" (Doc. 123) The Order required any briefing on this issue to be filed by both parties by June 5, 2023.

4.      Although Plaintiff had already addressed the Court's question in depth in Plaintiff's Opposition, (*see* Doc. 121, pp. 13-25) Plaintiff filed a letter brief on June 5, 2023 further explaining why Desiderio's conduct in this case was not prosecutorial in nature and thus not entitled to immunity. (Doc. 125). Unlike Plaintiff, the Prosecutor Defendants raised brand new arguments and cited new case law relating to absolute immunity in their June 5, 2023 brief. There, Defendants argued for the first time that (1) any coercion of James White occurred after *White* was charged with the Anderson/Reynolds murders and thus any misconduct occurring after such charges was prosecutorial and thus absolutely immune, (2) any coercion of James White occurred during the plea bargaining process, which is prosecutorial and thus absolutely immune, and (3) any violations of James Whites' constitutional rights cannot be enforced or used by Plaintiff as a basis for his civil rights lawsuit. (*See generally* Doc. 124)

5.      Because the Court's Order required all briefing on the issue to be filed by the same date, no later than June 5, 2023, Plaintiff had no opportunity to respond to these brand-new arguments, which were filed by the Prosecutor Defendants after 4:00pm on June 5, 2023.

6.      On August 11, 2023, this Court entered an Order and Memorandum granting the Prosecutor Defendants' Motion to Dismiss on the basis of absolute prosecutorial immunity,

adopting all three new arguments from the Prosecutor Defendants' June 5, 2023 letter brief, dismissing all claims against the Prosecutor Defendants, and ordering that Plaintiff would not be granted leave to amend his claims (the "Order") (Docs. 128 and 129). Plaintiff now seeks reconsideration of that Order.

### C.  ARGUMENT

Plaintiff is requesting reconsideration of the Order on three grounds: (1) to prevent manifest injustice, as the Prosecutor Defendants did not meet their burden to prove immunity at the Motion to Dismiss stage and Plaintiff was not given a chance to respond to brand-new arguments made by Defendants in additional briefing, which were ultimately adopted by the Court; (2) because key facts from Plaintiff's Amended Complaint were overlooked and improperly interpreted in favor of the Prosecutor Defendants; and/or (3) because binding case law on the proper standards for an absolute immunity analysis at the Motion to Dismiss stage were overlooked and distinguishable, out-of-circuit cases were misinterpreted and improperly relied upon.

> ### i. *The Prosecutor Defendants Failed to Meet Their Burden to Prove Absolute Immunity and Manifest Injustice Would Result If Reconsideration is not Granted.*

The Prosecutor Defendants' Motion to Dismiss is based solely on the ground that they have absolute prosecutorial immunity in this action, not based on a failure by Plaintiff to state a claim or that Plaintiff's Amended Complaint is otherwise deficient. (*See* Doc. 121, p. 2) As the officials seeking absolute immunity, the Prosecutor Defendants "bear the burden of showing [absolute immunity] is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). "To earn the protections of absolute immunity at the motion-to-dismiss stage, a defendant **must show that the conduct triggering absolute immunity clearly appear[s] on the face of the complaint**." *Weimer v. Cty. of Fayette*, Pennsylvania, 972 F.3d 177, 187 (3d Cir. 2020) (emphasis added) (internal quotations omitted). Indeed, an absolute immunity analysis at this early stage

"requires a **'meticulous analysis'** of the ADA's actions…to determine whether they were 'quasi-judicial' and entitled to absolute immunity, or 'administrative or investigatory' and not so entitled." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008) (emphasis added). Additionally, binding case law requires that every prosecutorial immunity analysis begin with "'[t]he presumption ... that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties' and the observation that the Supreme Court has been 'quite sparing' in its recognition of absolute immunity." *Carter v. City of Philadelphia*, 181 F.3d 339, 355 (3d Cir. 1999) (*citing Burns v. Reed*, 500 U.S. 478, 486-87 (1991)). These critical principles and standards were not considered in the Court's August 11, 2023 absolute immunity analysis.[1]

Regardless, neither Defendants' Motion to Dismiss, nor their Reply in Support contain any analysis of Desiderio's specific actions or Plaintiff's specific claims as set forth in Plaintiff's Amended Complaint – as required by Third Circuit and United States Supreme Court law. (*See* Docs. 118 and 122). Instead, it was only **after** the Court ordered additional briefing on this issue that the Prosecutor Defendants made – for the first time – three brand-new arguments to save their deficient briefing, including that the coercion of James White occurred after *White* was charged with the Anderson/Reynolds murders and during the plea bargaining process and that because it was White who was coerced – not Plaintiff – Plaintiff cannot use this misconduct as a basis for his claims in this action. (Doc. 124) These arguments are found nowhere in Defendants' original briefing. (*See generally* Docs. 118 and 122). Under the Court's May 22, 2023 Order requesting additional briefing, all submissions on this issue – from both parties – had to be filed the same day: June 5, 2023. (Doc. 123) Accordingly, Plaintiff had no opportunity to respond to these new

---

[1] Instead, as mentioned in more detail *supra*, Section C(ii), the Court seemingly flips the burden on Plaintiff by unreasonably narrowing Plaintiff's claims for relief against the Prosecutor Defendants based on one out-of-context paragraph from Plaintiff's 42-page Opposition (Doc. 128, p. 5).

arguments or case law. On August 11, 2023, the Court granted the Defendants' Motion to Dismiss based on absolute immunity, dismissing all claims against them based on the three new arguments that the Prosecutor Defendants raised for the first time in their June 5, 2023 letter.

Plaintiff submits that not only did manifest injustice result when the Prosecutor Defendants were allowed to make new arguments and cite new case law because their Motion to Dismiss on the basis of absolute immunity was deficient, but it certainly resulted when the Court granted their Motion by adopting these new arguments, without providing Plaintiff an opportunity to respond. Reconsideration is thus warranted here.

### ii. The Court Failed to Accept as True All Allegations in Plaintiff's Complaint and All Reasonable Inferences Therefrom, Viewing Them In the Light Most Favorable to Plaintiff.

In reviewing a motion to dismiss, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, [viewing] them in the light most favorable to plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007); *Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir. 2005). However, the Court's Order here appears to flip the burden on Plaintiff by narrowly construing his allegations, holding: "Plaintiff seemingly confines this Court's absolute immunity analysis to whether the alleged fabricated confession of James White (a jailhouse informant) – which underpins all of Plaintiff's claims against Defendants – constituted 'investigatory' or 'prosecutorial' activity'" and thus the Court "solely focus[ed] on whether Defendants are entitled to absolute immunity with respect to James White's alleged fabricated confession." (Doc. 128, p. 5)

In forming this conclusion, the Court distilled dozens of well-pleaded facts about Desiderio's unconstitutional misconduct (as well as three separate arguments in Plaintiff's Opposition brief, *see* Doc. 121, *Section* III (A-C)) into one singular act: coercing White's fabricated confession. This fails to take into consideration numerous allegations from Plaintiff's

Amended Complaint, which are referred to in Plaintiff's Opposition brief, let alone to view them in the light most favorable to Plaintiff. For example, Plaintiff's Amended Complaint and Opposition brief allege that Desiderio: (1) withheld or suppressed the exculpatory and impeaching statements made by White that he was not involved in the crimes, (*see* Plaintiff's Amended Complaint, Doc. 37 at ¶¶ 154-156; Doc. 121, p. 6); (2) threatened to charge White with the Anderson/Reynolds Murders based on Craig Vaughn's statement – which Desiderio told White he knew was false; (3) threatened to seek the death penalty against White for the Anderson/Reynolds Murders as well as other crimes; (4) threatened to use White's prior incriminating statements against him; and (5) threatened to revoke White's prior plea deals for other crimes unless he cooperated and implicated Plaintiff, among others. (*See* Doc. 37 at ¶ 157-158; Doc. 121, p. 6). All of these actions – which led directly to White's falsified statement implicating Plaintiff in the Anderson/Reynolds Murders – occurred **prior to any plea discussions, charges being filed, or probable cause existing.** Additionally, Plaintiff alleges that long after White pled guilty to these crimes and after Plaintiff was convicted for them, Desiderio withheld and suppressed the fact that he fabricated White's statement, threatened him with the death penalty, and promised him an early release in exchange for a false statement implicating Plaintiff. (*See* Doc. 37 at ¶¶ 142-162; Doc. 121, pp. 22-25).

These facts were critical to determine whether absolute immunity applies here, as the Court held that "how this Court classifies Defendant Desiderio's alleged fabrication and coercion of James White's confession—i.e., whether the conduct was "investigatory" or "prosecutorial" in nature—will ultimately determine whether absolute immunity applies and will have a significant impact on the disposition of Defendants' pending motion to dismiss." (Doc. 128, p. 5) Thus, at the outset, the Court overlooked significant acts of misconduct that led directly to the wrongful arrest and conviction of Plaintiff and which occurred outside the bounds of what this Court determined

was "prosecutorial" conduct. Accordingly, the Court's failure to analyze the timing and nature of all of Desiderio's unconstitutional conduct, especially when viewed in the light most favorable to Plaintiff, was a clear error of fact and law, warranting reconsideration.

> ### iii. When Analyzing Absolute Prosecutorial Immunity at the Motion to Dismiss Stage, the Court Improperly Analyzed Key Considerations, Overlooked Binding Case Law Contradicting the Court's Position, and Misinterpreted Non-Binding Case Law to Support an Absolute Immunity Finding.

The Court's Order ultimately concludes that "Defendant Desiderio's alleged fabrication and coercion of White's confession is 'prosecutorial' activity that is absolutely protected." (Doc. 128, p. 10) The Court reasoned that: "the conduct is more akin to 'prosecutorial' activity – especially when considering two factors: (1) the timing of the alleged fabricated confession; and (2) Plaintiff's proximity to the purported coerced confession." (Doc. 128, p. 5). With respect to the timing of Desiderio's conduct, the Court held that "two facts stand out" including that "the events surrounding White's alleged fabricated confession occurred *after* he had been charged with the Anderson/Reynolds Murders" and that "White's alleged fabricated confession occurred during the plea negotiation process." (*Id.* at pp. 5-6) The Court held that "taken together, the timing of White's alleged fabricated confession – after he had been charged and during the plea-bargaining process – makes Defendant Desiderio's conduct more akin to 'prosecutorial' activity versus 'investigative' activity – meaning that Defendant Desiderio is absolutely protected and immune from this civil suit seeking damages." (*Id.* at p. 7). However, in analyzing these so-called "facts," the Court made clear errors warranting reconsideration.

First, the Court failed to conduct a proper and robust absolute immunity analysis. Instead of analyzing whether Desiderio's conduct related to administrative duties, investigatory functions,

or an advocate's preparation for the initiation of a prosecution, as required in this context,[2] the Court focused solely on the timing of Desiderio's actions. Even so, the Court overlooked analogous Third Circuit cases on this issue and misinterpreted distinguishable case law by using cherry-picked quotes (instead of that court's actual findings or analyses) to determine that prosecutorial immunity should apply here. For example, despite the Court's acknowledgement that the Third Circuit clearly "rejected bright-line rules that would treat the timing of the prosecutor's action (*e.g.* pre- or post-indictment), or its location (*i.e.* in- or out-of-court), as dispositive," *see Odd v. Malone,* 538 F.3d 202 (3d Cir. 2008), the Court did just that.  Repeating one line from a 1992 case, the Court concluded that "[e]vidence obtained at or after the filing [of charges] is likely to be connected with an existing prosecution, and is absolutely protected." (*See* Doc. 128, p. 6) citing *Kulwicki v. Dawson,* 969 F.2d 1454, 1465 (3d Cir. 1992)).

Indeed, with this predetermined conclusion in mind, the Court overlooked the actual analysis and holdings of the cases it cited, which support the denial – not grant – of immunity here. *See Odd v. Malone,* 538 F.3d 202 (finding no immunity where "although an indictment had issued, the *Overby* trial had been continued from February 2, 2005, to May 25, 2005, a period of nearly four months. Smith's failure to act occurred during this period of judicial inactivity."); *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992) (finding no immunity where "The facts in Kulwicki's complaint raise a question about whether Dawson, or his staff acting at his direction, acted in a quasi-judicial role at the time of the Gustafson interview."); *Yarris v. Cnty. of Delaware,* 465 F.3d 129, 138-139 (3d Cir. 2006) (finding no immunity where "the allegations here do not indicate whether the fabrication of Yarris's confession occurred during the preliminary investigation of an

---

[2] *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993) (holding "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.")

unsolved crime, as in *Buckley*, or after the ADAs had decided to indict Yarris and had begun working as the state's advocates in the prosecution of Yarris."). As Plaintiff argued in his Opposition, either the Complaint clearly shows that Desiderio's actions happened during the investigative phase of the case, after a two-year hiatus with no arrests or suspects and prior to both White or Plaintiff's arrest, (*see* Doc. 37, ¶¶ 142-162), happened outside the prosecutorial role entirely, or the timing of Desiderio's conduct is unclear without further discovery, as Plaintiff does not know the specific date White was charged or when exactly Desiderio's fabrications occurred. (Doc. 125, p. 3)

In addition to the above, the Court's Order overlooks several binding cases which specifically hold the misconduct alleged here is not prosecutorial and thus not protected by absolute immunity. *See Weimer v. Cty. of Fayette, Pennsylvania,* 972 F.3d 177, 189 (3d Cir. 2020) (a prosecutor's reliance on non-credible witness statements was not prosecutorial); *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993) (fabrication of evidence against a murder suspect and the making of a false statement to the press was not prosecutorial conduct); *Burns v. Reed,* 500 U.S. 478, 478 (1991) (giving legal advice to the police prior to an arrest was not prosecutorial conduct); *Fogle v. Sokol,* 957 F.3d 148, 160, 162-163 (3d Cir. 2020) (procuring a witness's statement after arrest by undue suggestion and trumping up probable cause to arrest was not prosecutorial conduct); *see also Quintana v. City of Philadelphia,* No. CV 17-996, 2017 WL 3116265, at *6 (E.D. Pa. July 21, 2017) ("[p]rosecutors, [] are not entitled to absolute immunity when they are accused of fabricating evidence.") Notably, the Court ignored entirely the Supreme Court's holding in an analogous case, *Buckley v. Fitzsimmons,* which held that "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." 509

U.S. 259, 273 (1993) The *Buckley* Court then held, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested" and "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination…a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Id.* at 274, n. 5.

These holdings are critical here, as Plaintiff repeatedly alleges in his Complaint and Opposition that Desiderio **did not have probable cause to arrest *anyone* for the Anderson/Reynolds Murders before fabricating White's statement, let alone probable cause to arrest Plaintiff.** (*See* Doc. 37, ¶¶ 142-172, 271; Doc. 121, pp. 19-22) Further, the Court provides no citation whatsoever for its conclusion that the arrest and prosecution of White is the relevant factor in determining whether Desiderio's conduct was "prosecutorial," and thus protected by absolute immunity in *Plaintiff's case,* and apparently ignores the fact that Desiderio only coerced and fabricated White's statement to implicate and obtain probable cause to arrest Plaintiff and others. Regardless, the Order ignores the Supreme Court's conclusion that "[a] prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." *Buckley,* 509 U.S. at 276; *see also Guzman–Rivera v. Rivera–Cruz,* 55 F.3d 26, 29 (1st Cir.1995) ("The prosecutorial nature of an act does not spread backwards like an inkblot, immunizing everything it touches."); *Munchinski v. Solomon,* 747 F. App'x 52, 57 (3d Cir. 2018) ("some acts, 'presumably by virtue of their egregiousness ... fall wholly outside the prosecutorial role no matter when or where they are committed,'" and holding that allegations a prosecutor concealed and tampered with a report was tantamount to destruction of evidence and was "precisely this type of act") Despite analogous and

binding precedent to the contrary, the Court blanketly found that because White's statement was fabricated "*after* [White] had been charged" and "during the plea negotiation process," Desiderio was entitled to absolute immunity for the violations of Plaintiff's rights. (*See* Doc. 128, pp. 5-6).[3]

Next, the Court adopted the Prosecutor Defendants' argument that "a prosecutor's decision whether to dispose of a case by plea—because dependent on delicate judgments affecting the course of a prosecution—is protected by the doctrine of absolute prosecutorial immunity." (Doc. 128, pp. 6-7) First, there is no allegation in this action that Desiderio's "decision whether to dispose of a case by plea" provides the basis for any of Plaintiff's claims, making this quote irrelevant. Second, the Court's reliance on this dicta from *Davis v. Grusemeyer*, 996 F.2d 617 (3d Cir. 1993) is perplexing. Indeed, there was no plea at issue in *Davis*, but instead the Plaintiff sued several prosecutors under 28 U.S.C. § 1983 alleging that after his indictments, prosecutors refused to admit him into a pre-trial intervention (PTI) program, then later revoked his participation once admitted. *Id.* at 620-622. The Third Circuit found the prosecutors were absolutely immune for this conduct, not because it involved plea bargaining, but because under New Jersey law § 2C:43–12(e), entrance into the PTI program was only possible "after the investigative phase of the criminal action has been completed and formal criminal charges have been entered." *Id.* at 628. Thus, the Court held "a prosecutor's discretion to divert an indictee from trial into PTI is an integral part of a properly functioning judicial process." *Id.* at 630. Accordingly, the Court fails to cite any Third Circuit case – nor could Plaintiff find any – where a prosecutor was blanketly granted absolute immunity for conduct during the plea-bargaining process.

---

[3] Further, as noted *supra*, even if the Court had analyzed the above precedent, it still failed to consider allegations from Plaintiff's Complaint that Desiderio's actions occurred over a lengthy period of time that started **prior** to any charges being filed in the Anderson/Reynolds Murder (against either White or Plaintiff) and/or lasted long **after** Desiderio's prosecution of the matter ended. *See supra,* Section C(ii).

Moreover, the only other cases cited by the Court relating to immunity during the plea-bargaining process are non-binding, out-of-circuit cases that are distinguishable. Indeed, the Plaintiffs in both *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981) and *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484 (10th Cir. 1991) sued prosecutors for activity that occurred **during their own pleas, not the pleas of a third-party**. In *Taylor,* the Plaintiff alleged only that misrepresentations during his own plea agreement caused him to plead guilty, and thus his guilty plea should have been vacated. *Taylor*, 640 F.2d at 451. Unsurprisingly, the Second Circuit found that the prosecutor was absolutely immune from suit for conduct intimately associated with the **Plaintiff's own prosecution**. *Id.* Similarly, in *Pfeiffer,* the Tenth Circuit only addressed whether a prosecutor was absolutely immune – based on a summary judgment standard, not that of a motion to dismiss – for allegedly attempting to coerce the Plaintiff into a plea by promising confidentiality and no additional charges in exchange for the Plaintiff giving up his medical practice. *Pfeiffer,* 929 F.2d 1484 at 1492. Once again, that alleged conduct – misrepresentations made to induce an individual to plead guilty – was found immune. *Id.* However, as discussed further in depth below, it was White, not Plaintiff who was coerced into pleading guilty, and Plaintiff is not asserting a claim on White's behalf for this conduct. Thus, there is no binding or relevant case law that states any and all prosecutorial misconduct that happens to take place during the negotiation of a third-party plea deal is immune from suit, especially when the misconduct produces fabricated evidence used against a third-party **who was not involved in the plea-bargaining process and for whom no probable cause existed to arrest**. Accordingly, the Court has unnecessarily expanded the absolute immunity doctrine without regard to the nuanced circumstances in this case and has disregarded the Supreme Court's practice to decline to extend absolute immunity any "further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 486 (1991) (internal citations

omitted). Accordingly, the Court's reliance on non-binding and irrelevant cases for its absolute immunity conclusion is clear error and warrants reconsideration.

Interestingly, the Court next adopts – almost verbatim – a new argument from the Prosecutor Defendants' June 5 letter brief relating to "Plaintiff's proximity to the purported coerced confession." (Doc. 128, pp. 7-10; *see also* Doc. 124, pp. 4-6) In this section, the Court improperly scrutinizes the viability of Plaintiff's claims without making a determination. The Court then holds that due to policy considerations and a non-binding Seventh Circuit holding, the alleged fabrication and coercion of White's confession was prosecutorial activity that is absolutely immune. First, this section of the Court's analysis is immaterial, as the viability of Plaintiff's claims against the Prosecutor Defendants was not challenged in Defendants' Motion to Dismiss and is unrelated to whether absolute immunity should be granted. *See Yarris v. Cnty. of Delaware*, 465 F.3d 129, 134 (3d Cir. 2006) (holding that on a Motion to Dismiss, the Court is "concerned with neither the accuracy of the facts alleged nor the merits of [Plaintiff's] underlying claims. We must construe the facts in the manner most favorable to [Plaintiff], in order to determine whether the state officials are entitled to absolute or qualified immunity from any claims based on their alleged conduct.") Indeed, the consideration of a plaintiff's "proximity" to the alleged misconduct has never been a basis to grant absolute immunity in any Third Circuit or United States Supreme Court case that Plaintiff could find.

Second, the Court's analysis into the violations of Plaintiff's rights in this action are fundamentally flawed. In fact, the crux of the Court's holding here seems to be that Plaintiff is attempting to enforce the rights of James White, and that because White's coercion is protected activity, Plaintiff has no right to bring such claims and/or the prosecutor would be absolutely immune anyway. (Doc. 128, pp. 7-10) To be clear, Plaintiff is not bringing suit on behalf of James White. Instead, as thoroughly detailed in Plaintiff's Amended Complaint, Plaintiff brings claims

for the violations of his own constitutional right to be free from malicious prosecution and deprivation of liberty without due process, which Desiderio violated when he, among other things, (1) knowingly fabricated evidence (White's statement) to implicate Plaintiff in crimes he did not commit, and (2) used a knowingly fabricated statement to arrest and prosecute Plaintiff, knowing that probable cause did not exist. (*See* Doc. 37, ¶¶ 270-294). The United States Supreme Court has unequivocally found that a prosecutor is not immune for the fabrication of evidence that occurred before he has probable cause, the exact allegations Plaintiff makes here:

> Furthermore, there is no "true anomaly," *post*, at 2623, in denying absolute immunity for a state actor's investigative acts made before there is probable cause to have a suspect arrested just because a prosecutor would be entitled to absolute immunity for the malicious prosecution of someone whom he lacked probable cause to indict. That criticism ignores the essence of the function test. **The reason that lack of probable cause allows us to deny absolute immunity to a state actor for the former function (fabrication of evidence) is that there is no common-law tradition of immunity for it, whether performed by a police officer or prosecutor.** The reason that we grant it for the latter function (malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not. **By insisting on an equation of the two functions merely because a prosecutor might be subject to liability for one but not the other, the dissent allows its particular policy concerns to erase the function test it purports to respect**.
>
> In general, the dissent's distress over the denial of absolute immunity for prosecutors who fabricate evidence regarding unsolved crimes, *post*, at 2622, like the holding of the Court of Appeals, seems to conflate the question whether a § 1983 plaintiff has stated a cause of action with the question whether the defendant is entitled to absolute immunity for his actions.

*Buckley v. Fitzsimmons,* 509 U.S. 259, 275, n. 5 (1993) (emphasis added).

The Court does not cite a single allegation in Plaintiff's Amended Complaint in support of its argument – taken from the Prosecutor Defendants' letter – that Plaintiff's allegations are deficient or allege conduct that does not support a claim for violations of his constitutional rights, indeed it cannot. (Doc. 128, p. 8) In fact, the only support the Court points to for this argument is a Seventh Circuit case three decades old which **did not analyze absolute immunity.** *See generally Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir.1994). Instead, it was the Supreme Court of the

21

United States that analyzed whether the prosecutor in *Buckley* was entitled to absolute immunity. *See Buckley v. Fitzsimmons,* 509 U.S. 259 (1993). There, as noted *supra,* the Supreme Court found that the *Buckley* prosecutor was **not** absolutely immune for fabricating evidence during the investigation of a case in order to indict the Plaintiff. *Id.* at 274. After this finding, the case was remanded for a determination on a set of separate allegations, specifically whether "the prosecutors violated [the Plaintiff's] rights under the Due Process Clause" for additional allegations that prosecutors "extract[ed] statements implicating him by coercing two witnesses and paying them money." *Id.* at 279. The Seventh Circuit then analyzed these additional allegations and the viability of Plaintiff's claims, ultimately holding that the actions of the prosecutor in coercing and paying witnesses did not violate Plaintiff's rights and where they did, the prosecutor was entitled to qualified immunity. *Buckley,* 20 F.3d at 792-794.

This holding is irrelevant here as Defendants did not raise either the failure to state a claim or qualified immunity in their Motion to Dismiss. (*See generally* Doc. 118). Regardless, the Seventh Circuit has recently distinguished its holding in *Buckley* from cases like the one at bar, and ruled that a §1983 Plaintiff's claim for coercion and fabrication of evidence are viable claims against a prosecutor and that the prosecutor is not immune from such conduct. *See Whitlock v. Brueggemann,* 682 F.3d 567, 584 (7th Cir. 2012) (distinguishing *Buckley* and holding prosecutor was not immune for fabricating witness statement as evidence to be used against Plaintiff and that Plaintiff alleged actionable due process violation). Notably, the Third Circuit has now endorsed the holding of *Whitlock,* ruling that "[t]o the best of our knowledge, every court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating evidence to charge or convict the defendant has answered the question in the affirmative. *See Whitlock v. Brueggemann,* 682 F.3d 567, 585 (7th Cir.2012) (collecting court of appeals cases). We join these courts in expressly adopting this principle." *Halsey v. Pfeiffer,* 750

F.3d 273, 292 (3d Cir. 2014); *see also Black v. Montgomery Cnty.*, 835 F.3d 358, 370, n. 10 (3d Cir. 2016), as amended (Sept. 16, 2016) (same). Accordingly, the Court's reliance on an out-of-circuit case that did not even analyze absolute immunity and that has since been distinguished in similar cases, warrants reconsideration.

### D.  CONCLUSION

In light of the above, Plaintiff submits that certain evidence and controlling decisions of law were overlooked and/or that manifest injustice would result if the Court's Order on the Prosecutor Defendants' absolute immunity was not reconsidered. Thus, Plaintiff requests that the Court grant Plaintiff's Motion for Reconsideration as any one of the afore-mentioned issues "might reasonably have resulted in a different conclusion." *Rodriguez v. City of Philadelphia,* No. CV 14-4435, 2018 WL 3036283, at *3 (E.D. Pa. June 18, 2018)

## II.    Alternative to Reconsideration 1 – Rule 54(b) Certification

If the Court is not disposed to reconsider and amend its previous Order, Plaintiff requests that it be allowed to initiate an immediate appeal to the Third Circuit upon all claims and parties dismissed by the Court's Order. Rule 54 provides a mechanism for such a proceeding:

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

This case fits within the plain language of Rule 54. Here, Plaintiff has sued multiple parties for multiple independent claims. As the Court recognized in its August 11, 2023 Order, several claims against different Defendants remain pending in this action, separate and distinct from the

claims against Desiderio and Abraham. The Supreme Court has stated that "[t]his power is largely discretionary, to be exercised in light of 'judicial administrative interests as well as the equities involved,' and giving due weight to 'the historic federal policy against piecemeal appeals. . . .'" *Reiter v. Cooper*, 507 U.S. 258, 265 (1993) (citations omitted) (*quoting Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956); *Curtiss-Wright Corp. v. General Electric Co*., 446 U.S. 1, 8, 10 (1980)). Here, the Court's Order creates a judgment that removes several Defendants from the suit entirely, and aside from the request for reconsideration that is made above, sets them beyond Plaintiff's reach until the conclusion of the lawsuit. Because of the complexity involved in this wrongful conviction action, where the discovery and trial preparation may be lengthy, and the trial will involve significant expenditures of time and energy by all parties and the Court, a more equitable, efficient, and just result would be to finalize the judgment with respect to the parties and claims dismissed from the suit by the Court's Order so that an immediate appeal may be taken.

In this case, the lone question as to both the dismissed defendants and claims from the August 11, 2023 Order is whether the Prosecutor Defendants are entitled to absolute immunity. In short, no decision by the court of appeals could or would impugn the merits of the claims themselves, rather, the decision would decide *whether* Defendants were rightly given immunity from suit. Moreover, the next appeal to occur (if one occurred at all) would almost certainly be after a trial, at which point, absolute immunity would no longer be an issue. *See, e.g., Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (internal quotations omitted) ("Because qualified immunity is an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial").

Accordingly, Plaintiff requests that the Court certify that "there is no just reason for delay" under Fed. R. Civ. P. 54(b) and allow an immediate appeal on the absolute immunity of the Prosecutor Defendants.

**III.**     <u>**Alternative to Reconsideration 2 – U.S.C. § 1292(b) Certification**</u>

If the Court is disposed neither to reconsider and amend its Order, nor to certify an immediate appeal under Federal Rule 54(b) as to all dismissed parties and claims from the August 11, 2023 Order, Plaintiff urges the Court to provide a written statement setting forth a limited issue for interlocutory appeal.

The Court seems to be of the opinion that the intentionally coerced and fabricated statement of James White, a witness and suspect in the Anderson/Reynolds Murders, could only be acted upon in the civil rights context if the statement occurred *before* he was charged or offered a plea deal – which was coerced and fabricated itself. Despite the Court's admonition that the timing of the action is not dispositive, it reiterates that because it was obtained *after* White – not Plaintiff – was charged and during "plea" discussions, it is absolutely immune. Plaintiff, however, asserts that a coerced and fabricated witness statement, used against Plaintiff before he is charged or arrested, in order to obtain probable cause, is not prosecutorial conduct, but either investigative in nature or outside the prosecutorial scope entirely, and thus exempt from absolute immunity. This disagreement frames a pure legal question and the resolution of it may decide whether Plaintiff's claims against Defendants Desiderio and Abraham can go forward. Accordingly, this Order raises "one or more difficult and pivotal questions of law not settled by controlling authority." *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013) (quoting *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008)).

The most economical resolution of this question would be for the Court to reconsider and amend its Order. However, 28 U.S.C. § 1292(b) provides another avenue:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

If the Court is not amenable to reconsidering and amending its Order and Memorandum in Support (Docs. 128 and 129), Plaintiff asks that the Court enter a written statement, appended to the Order, expressing the opinion that the question of law above, is "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

This litigation may proceed to a very complicated trial involving experts, many fact witnesses, and the parties have already exchanged upwards of 50,000 pages of evidentiary record. If an interlocutory appeal is not allowed, or this question is not appropriately and definitively settled at this point by other means, the trial on the remaining claims, including for malicious prosecution, fabrication of evidence, and others may be followed by an appeal and then a second trial of comparable complexity and length. The waste caused by such a scenario would be tremendous. All the claims in this case are based on the same voluminous set of evidence. To invite a situation where that evidence might have to be presented twice, when an interlocutory appeal at this juncture could limit this complicated case to a single trial, seems to be exactly the sort of exceptional situation § 1292(b) was intended to address.  Accordingly, Plaintiff requests the Court to provide a written statement setting forth a limited issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**IV.    Stay of Proceedings**

If the Court declines to reconsider and amend its Order but does elect, within its discretion, to authorize an appeal under either of the two alternatives advanced by Plaintiff, Plaintiff requests that the Court stay further proceedings at the district level while the appeal is taken. While a stay of proceedings is not automatic, § 1292(b) specifically contemplates the likelihood that one may, in some circumstances, be appropriate. "[A]pplication for an appeal hereunder shall not stay

proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). Moreover, a "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *See, e.g., Clinton v. Jones,* 520 U.S. 681, 706-07 (1997) (*citing Landis v. North American Co.,* 299 U. S. 248, 254 (1936)). Here, the Court has already granted a partial stay in regard to two of the Officer Defendants, Frank Jastrzembski and Manual Santiago, due to ongoing criminal proceedings and thus a temporary stay as to the remaining Defendants pending an appeal would not be unduly prejudicial. (*See* Doc. 71)

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Reconsideration, or in the alternative, for a Certification of Leave to Appeal and a Stay in the Court Pending the Outcome of the Appeal.

Date:  August 25, 2023

Respectfully submitted,

By: /s/ *Alana McMullin*
Michael J. Abrams (Admitted *Pro Hac Vice*)
Kimberly K. Winter (Admitted *Pro Hac Vice*)
Alana McMullin (Admitted *Pro Hac Vice*)
Jackson R. Hobbs (Admitted *Pro Hac Vice*)
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Telephone: (816) 292-2000
michael.abrams@lathropgpm.com
kim.winter@lathropgpm.com
alana.mcmullin@lathropgpm.com
jackson.hobbs@lathropgpm.com

and

Francesco P. Trapani
KREHER & TRAPANI LLP
Two Penn Center Plaza
1500 John F. Kennedy Blvd., Suite 900
Philadelphia, PA  19102
Telephone: (215) 907-7289
frank@krehertrapani.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2023, I caused a true and correct copy of the foregoing Plaintiff's Motion to be served via CM/ECF filing upon counsel for all parties.

/s/ *Alana McMullin*
One of the Attorneys for Plaintiff